IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 14 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| THE DOGWOOD INSTITUTE, TRUSTEE OF THE DOGWOOD TRUST, individually and on behalf of classes similarly situated, and ROBERT J. FULLER, | § § § § § § |
| Plaintiffs | § § |
| v. | § § |
| A.G. EDWARDS & SONS, INC., EATON VANCE GROUP OF FUNDS, PHOENIX INVESTMENT PARTNERS, LTD., VAN KAMPEN INVESTOR SERVICES, INC., CARLA ULRICHHERRING, DENNIS CAPRIGLIONE, JAMES WOODROW FULLER, JR., individually and as Trustee of the Red River Trust, and MELISSA FULLER, | § § § § § § § § § § § § |
| Defendants. | § |

CIVIL ACTION NO. **3-06 CV 1454 - K**
3158

**ORIGINAL**

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, and 1446, 15 U.S.C. §§ 77p(c) and 78bb(f)(2); Local Civil Rule LR 81.1; the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 ("SLUSA"); and the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 ("CAFA"), Defendants A.G. Edwards & Sons, Inc. ("AGE") and Carla Ulrichherring ("Ulrichherring") (collectively, the "AGE Defendants") submit this Notice of Removal to remove this civil action from the 95th Judicial District Court, Dallas County, Texas to the United States District Court for the Northern District of Texas. The AGE Defendants would respectfully show the Court as follows:

## I.    The State Court Lawsuit

1.    On June 24, 2006, Plaintiffs The Dogwood Institute, Trustee of The Dogwood Trust (the "Institute"), individually and on behalf of classes similarly situated, and Robert J. Fuller (collectively, the "Plaintiffs") commenced a civil action by filing Plaintiffs' Original Petition (the "Petition") in the 95th Judicial District Court of Dallas County, Texas (the "State Court"), styled as *The Dogwood Institute, Trustee of The Dogwood Trust, individually and on behalf of classes similarly situated, and Robert J. Fuller v. A.G. Edwards & Sons, Inc., Eaton Vance Group of Funds, Phoenix Investment Partners, Ltd., Van Kampen Investor Services, Inc., Carla Ulrichherring, Dennis Capriglione, James Woodrow Fuller, Jr., individually and as Trustee of the Red River Trust, and Melissa Fuller*, Cause No. 06-06976 (the "Action").

2.    The Action involves the alleged refusal of AGE and other Defendants to execute purchase and sale orders relating to a brokerage account (the "Account")[1] pending the completion of allegedly "unnecessary and unreasonable" documentation relating to the responsible person for the account.  The causes of action include declaratory relief, injunctive relief, civil conspiracy, conversion, breach of fiduciary duties, breach of contract, fraud in stock transactions, negligence, and gross negligence.

3.    Robert J. Fuller ("Fuller") is allegedly acting (1) as the representative of The Dogwood Institute, which Fuller alleges is the rightful trustee of The Dogwood Trust (the "Trust"), and (2) as the assignee of certain rights and claims as a beneficiary of the Trust by Fuller's mother, Fuller's sister and her husband, and Fuller's stepdaughter. The Institute is allegedly acting putatively on behalf of all customers of Defendants AGE, Eaton Vance Group of Funds ("Eaton Vance"), Phoenix Investment Partners, Ltd. ("Phoenix"), and Van Kampen

---

[1] The trustee who originally opened the Account signed account opening documents that contained a valid, binding arbitration clause.  The AGE Defendants do not waive their right to move to compel this matter to arbitration.



Investor Services, Inc. ("Van Kampen") who, within the past four years, have been asked for certain documentation to reflect a new responsible party or person authorized to act with respect to their account(s) (the "Class Members").

4.    The AGE Defendants were served with the Petition, along with their respective individual citations, on July 24, 2006. Because the AGE Defendants are filing this Notice of Removal within thirty days of being served with the initial pleading, this Notice of Removal is timely under 28 U.S.C. §1446(b).

5.    A jury demand has been made in the Action.

6.    All Defendants who have been properly served at the time of filing this Notice of Removal have consented in writing to removal, as evidenced by their signatures below.

## II.    Original Jurisdiction

7.    Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, this Action is removable to this Court because this Court has original jurisdiction over the Action under 28 U.S.C. §§ 1332(a), 1332(d), 15 U.S.C. §§ 77p(c), and 78bb(f)(2). This case is properly removed to this Court, the United States District Court for the Northern District of Texas, Dallas Division, under 28 U.S.C. § 1446(d) as the district and division embracing the place where the Action is pending.

### A.    28 U.S.C. § 1332(a)—Diversity of Citizenship

8.    The Action could have been filed in this Court pursuant to 28 U.S.C. § 1332(a), in that there is complete diversity of citizenship between Plaintiffs and the Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.    The alleged amount in controversy in the Action, exclusive of interest and costs, is in excess of $10 million. (See Petition, "Exhibit D" at 3).

10. Plaintiff Institute is now, and was at the time the Action was filed, a Texas non-profit corporation with its only place of business located in Dallas County, Texas. (Petition, ¶ 2). Therefore, Plaintiff Institute is now, and was at the time the Action was filed, a citizen of the state of Texas. Plaintiff Fuller is now, and was at the time the Action was filed, a citizen of Texas. (Petition, ¶ 3).

11. Defendant AGE is now, and was at the time the Action was filed, a Delaware corporation with its principal place of business in Missouri. Therefore, AGE is now, and was at the time the Action was filed, a citizen of the states of Delaware and Missouri.

12. Defendant Eaton Vance is now, and was at the time the Action was filed, a foreign corporation with its principal place of business in Rhode Island. (Petition, ¶ 5). Therefore, Eaton Vance is now, and was at the time the Action was filed, a citizen of the state of Rhode Island.

13. Defendant Phoenix is now, and was at the time the Action was filed, a Delaware corporation with its principal place of business in Connecticut. (Petition, ¶ 6). Therefore, Phoenix is now, and was at the time the Action was filed, a citizen of the states of Delaware and Connecticut.

14. Defendant Van Kampen is now, and was at the time the Action was filed, a Delaware corporation (Petition, ¶ 7) with its principal place of business in New York. Therefore, Van Kampen is now, and was at the time the Action was filed, a citizen of the states of Delaware and New York.

15. Defendant Dennis Capriglione is now, and was at the time the Action was filed, a citizen of Missouri. (Petition, ¶ 8).

16.     Defendant James Woodrow Fuller, Jr. is now, and was at the time the Action was filed, a citizen of Virginia. (Petition, ¶ 9).

17.     Defendant Melissa Fuller is now, and was at the time the Action was filed, a citizen of Virginia. (Petition, ¶ 10).

18.     Although Defendant Ulrichherring is now, and was at the time of action was filed, a citizen of the state of Texas, her joinder does not preclude removal because she was improperly or fraudulently joined[2] in the Action and her citizenship is thus disregarded for purposes of 28 U.S.C. §§ 1332(a) and 1441(b).

19.     In order to establish improper joinder, the removing party must prove: either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiffs to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 571 (5th Cir. 2004), citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).

20.     Plaintiffs have not established—and have no possibility of establishing—a cause of action against Ulrichherring in the Action. Ulrichherring was the AGE broker who allegedly asked Fuller for certain account documents on behalf of AGE. Under Texas law, for an employee of a corporation to be held personally liable, the plaintiff must establish that the employee took some affirmative action which injured the plaintiff or that the employee was directly responsible for insuring the plaintiff's safety. *McIntire v. Rollins, Inc.*, 888 F. Supp. 68, 69 (S.D. Tex. 1995) (citing *Maxey v. Citizens Nat'l Bank,* 507 S.W.2d 722, 725 (Tex. 1974)). Under Texas law, an agent is not liable on contracts made on behalf of his principal if the agent

---

[2] The Fifth Circuit has adopted the term "improper joinder" in lieu of the term "fraudulent joinder," although the meaning is the same. *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 571 (5th Cir. 2004). For purposes of this Notice of Removal, the term "improper joinder" will be used, and should be considered to incorporate "fraudulent joinder."



was acting within the scope of his authority. *Arzehgar v. Dixon*, 150 F.R.D. 92, 94 (S.D. Tex. 1993) (citing *Corpus Christi Dev. Corp. v. Carlton*, 644 S.W.2d 521, 523 (Tex. App.—Corpus Christi 1982, no writ)).

21.    Defendant Ulrichherring's requests of Fuller with respect to the documents were in compliance with and required by AGE policies and procedures. In handling Fuller's requests, Ulrichherring did not act outside the scope of her employment at AGE or take any affirmative action that injured Plaintiffs. Plaintiffs have admitted, "Carla [Ulrichherring] and Dennis are employees of Edwards and at all relevant times were acting within the scope of that employment." (Petition, ¶ 19).

**B.    28 U.S.C. § 1331—SLUSA (15 U.S.C. §§ 77p(c) and 78bb(f)(2))**

22.    Pursuant to SLUSA, any "covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which it is pending . . ." 15 U.S.C. § 77p(c);  *see also* § 78bb(f)(2).

23.    The Action is removable because:

> (a)    it is a "covered class action" in that it is a single lawsuit in which: (i) damages[3] are sought on behalf of more than 50 persons or prospective class members, and Plaintiff Fuller alleges that questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; and/or (ii) Plaintiff seeks to recover damages on a representative basis on behalf of itself and other unnamed parties allegedly similarly situated, and Plaintiff alleges that questions of law or fact common to those persons or members predominate over any questions

---

[3] Plaintiff Institute seeks damages in excess of $10 million and a permanent injunction on behalf of Class Members requiring each Defendant to send a notice to each of its present account holders . . . informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and of the possibility that they may have a claim for damages against the defendant . . . and explaining how the class member can bring suit against the Defendant for damages. (Petition, ¶¶ 42A and 42B).

affecting only individual persons or members. *See* 15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B);

(b) Plaintiff alleges, among other things, that AGE, Eaton Vance, Phoenix, and Van Kampen used or employed manipulative or deceptive devices or contrivances in connection with the purchase and/or sale of the mutual funds in the Account. *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1);

(c) the Petition involves "covered securities," including but not limited to mutual funds maintained by investment companies as defined by Investment Company Act of 1940. *See* 15 U.S.C. §§ 77r(b), 78bb(f)(5)(E); and

(d) the putative class action purportedly is based on the statutory or common law of Texas. *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1).

## C. 28 U.S.C. § 1331—CAFA (28 U.S.C. § 1332(d))

24. CAFA grants the federal courts jurisdiction over class actions in which (1) the aggregate amount in controversy exceeds $5,000,000; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant; (3) the primary defendants are not states, state officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; (4) the number of members of the plaintiff class is 100 or more; and (5) less than two-thirds of all proposed plaintiff classes in the aggregate are citizens of the state in which the action was originally filed, and the primary defendants are not citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(2), (d)(4), and (d)(5).

25. The Action is removable because:

(a) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2), (d)(6);

(b) there is at least one putative Class Member who is a citizen of a State different from at least one of the Defendants. *See* 28 U.S.C. § 1332(d)(2)(A);

(c) the primary Defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief. *See* 28 U.S.C. § 1332(d)(5)(A);

    (d)    the number of members of the putative Class Members in the aggregate is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B);

    (e)    less than two-thirds of all putative Class Members in the aggregate are citizens of Texas, where the Action was originally filed, and the primary Defendants are not citizens Texas. *See* 28 U.S.C. § 1332(d)(4)(B).

### III.   Notice

26.    Written notice of the filing of this Notice of Removal will be given promptly to Plaintiffs, as required by 28 U.S.C. § 1446(d).  The AGE Defendants will promptly file this Notice of Removal with the 95th Judicial District Court of Dallas County, Texas, pursuant to 28 U.S.C. § 1446(d).

### IV.   Attachments

27.    Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule LR 81.1, true and correct copies of the following documents are submitted together with this Notice of Removal:

1.    An original and one copy of a completed Civil Cover Sheet;
2.    An original and one copy of a completed Supplemental Civil Cover Sheet;
3.    An index of all documents on file in the Action, attached as Exhibit A;
4.    A copy of all documents on file in the Action, including pleadings, process, and orders, attached as Exhibit B;
5.    A copy of the docket sheet in the Action, attached as Exhibit C; and
6.    A separately-signed Certificate of Interested Persons.

In conformity with the requirements of 28 U.S.C. §§ 1441 and 1446, and Local Civil Rule LR 81.1, Defendants A.G. Edwards & Sons, Inc. and Carla Ulrichherring hereby remove the Action to this Court.  The AGE Defendants request that the Court assume jurisdiction of this cause as if it had been originally filed here, and that further proceedings in the Action be stayed. The AGE Defendants request such other and further relief to which they may be entitled.

Respectfully submitted,

JENKENS & GILCHRIST,
*A Professional Corporation*

By:     *Ellen B. Sessions*

          Ellen B. Sessions
          Texas Bar No. 00796282
          Rodney Acker
          Texas Bar No. 00830700
          Alison McCormack
          Texas Bar No. 24032717

1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 855-4500
Telecopy: (214) 855-4300

ATTORNEYS FOR A.G. EDWARDS & SONS,
INC. and CARLA ULRICHHERRING

# CONSENTS TO REMOVAL

JENKENS & GILCHRIST,
*A Professional Corporation*

By: _____

Ellen B. Sessons
Texas Bar No. 00796282
Rodney Acker
Texas Bar No. 00830700
Alison McCormack
Texas Bar No. 24032717

1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 855-4500
Telecopy: (214) 855-4300

ATTORNEYS FOR DENNIS CAPRIGLIONE

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

By: _____

Michael D. Napoli
Texas Bar No. 14803400

2828 North Harwood Street, Suite 1800
Dallas, TX 75201-2139
Telephone: (214) 939-4900
Telecopy: (214) 939-4949

ATTORNEYS FOR EATON VANCE GROUP OF
FUNDS

## CONSENTS TO REMOVAL (cont'd)

THOMPSON & KNIGHT LLP

By: _Greg Curry_ w/ permission _Wh. D. Session_
     Greg W. Curry
     Texas Bar No. 05270300
     Katharine B. Richter
     Texas Bar No. 24046712

1700 Pacific Avenue, Suite 3300
Dallas, TX  75201
Telephone:     (214) 969-1251
Telecopy:      (214) 880-3228

ATTORNEYS FOR PHOENIX INVESTMENT
PARTNERS, LTD.

DEWEY BALLANTINE LLP

By: _Mike Stenglein_ w/ permission _Wh. D. Session_
     Mike Stenglein
     Texas Bar No. 00791729

401 Congress Avenue, Suite 3200
Austin, Texas  78701-3788
Telephone:     (512) 226-0300
Telecopy:      (512) 226-0333

ATTORNEYS FOR VAN KAMPEN INVESTOR
SERVICE, INC.

## CONSENTS TO REMOVAL (cont'd)

KANE RUSSELL COLEMAN & LOGAN PC

By: *Brian W. Clark w/ permission*

Brian W. Clark
Texas Bar No. 24032075

1601 Elm Street, Suite 3700
Dallas, TX 75201
Telephone:     (214) 777-4200
Telecopy:      (214) 777-4299

ATTORNEYS FOR DEFENDANTS JAMES W.
FULLER, JR. AND MELISSA FULLER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following by certified mail, return receipt request on the 14th day of August, 2006.

Robert J. Fuller
8587 Southwestern Blvd. #2429
Dallas, TX  75206

Michael D. Napoli
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
2828 North Harwood Street, Suite 1800
Dallas, TX  75201-2139

Greg W. Curry
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX  75201

Mike Stenglein
DEWEY BALLANTINE LLP
401 Congress Avenue, Suite 3200
Austin, Texas  78701-3788

Brian W. Clark
KANE RUSSELL COLEMAN & LOGAN PC
1601 Elm Street, Suite 3700
Dallas, TX  75201

_Mike D. Sessin_

RECYCLED

80000 SERIES
30% P C W

NO. 06-06976

| | | |
|---|---|---|
| THE DOGWOOD INSTITUTE, | § | IN THE DISTRICT COURT |
| TRUSTEE OF THE DOGWOOD TRUST, | § | |
| individually and on behalf of classes | § | |
| similarly situated, and ROBERT J. | § | |
| FULLER, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | OF DALLAS COUNTY, TEXAS |
| | § | |
| A.G. EDWARDS & SONS, INC., EATON | § | |
| VANCE GROUP OF FUNDS, PHOENIX | § | |
| INVESTMENT PARTNERS, LTD., VAN | § | |
| KAMPEN INVESTOR SERVICES, INC., | § | |
| CARLA ULRICHHERRING, DENNIS | § | |
| CAPRIGLIONE, JAMES WOODROW | § | |
| FULLER, JR., individually and as Trustee | § | 95TH JUDICIAL DISTRICT |
| of the Red River Trust, and MELISSA | § | |
| FULLER, | § | |
| | § | |
| Defendants. | § | (Jury Trial Demanded) |

## INDEX OF DOCUMENTS FILED IN STATE COURT

| | **Date Filed** | **Document Description** |
|---|---|---|
| 1. | 7/24/06 | Plaintiff's Original Petition |
| 2. | 7/24/06 | Dallas County Civil District Court Cover Sheet |
| 3. | 7/24/06 | Demand for Jury |
| 4. | 7/26/06 | Citation and Affidavit of Service on A.G. Edwards & Sons Inc. |
| 5. | 7/26/06 | Citation and Affidavit of Service on Carla Ulrichherring |
| 6. | 8/01/06 | Plaintiff's Motion for Temporary Injunction and Sanctions |
| 7. | 8/08/06 | Service Letter for Plaintiff's Motion for Temporary Injunction and Sanctions |





NO. _____

THE DOGWOOD INSTITUTE, § IN THE DISTRICT COURT
TRUSTEE OF THE DOGWOOD TRUST, §
individually and on behalf of classes §
similarly situated, and §
ROBERT J. FULLER, § D-95th
§
Plaintiffs § _____TH JUDICIAL DISTRICT
§
vs. §
§
A. G. EDWARDS & SONS, INC., EATON § DALLAS COUNTY, TEXAS
VANCE GROUP OF FUNDS, PHOENIX §
INVESTMENT PARTNERS, LTD., VAN §
KAMPEN INVESTOR SERVICES, INC., §
CARLA ULRICHHERRING, DENNIS §
CAPRIGLIONE, JAMES WOODROW §
FULLER, JR., individually and as Trustee §
of the Red River Trust, and MELISSA §
FULLER §
§
Defendants. § JURY DEMANDED

## PLAINTIFF'S ORIGINAL PETITION

Plaintiffs, The Dogwood Institute ("Institute"), in its capacity as trustee of the

Dogwood Trust ("the Trust"), and Robert J. Fuller ("Bob"), file this original petition

against Defendants, A. G. Edwards & Sons, Inc. ("Edwards"), Eaton Vance Group of

Funds ("Eaton"), Phoenix Investment Partners, Ltd. ("Phoenix"), Van Kampen Investor

Services, Inc. ("Kampen"), Carla Ulrichherring ("Carla"), Dennis Capriglione

("Dennis"), James Woodrow Fuller, Jr., individually and as trustee of the Red River

Trust ("Jim"), and Melissa Fuller ("Melissa"), and in support thereof would respectfully

show this Honorable Court as follows:

Plaintiffs' Original Petition - page 1

1.  Discovery is intended to be conducted under Level 2 of Tex. R. Civ. P. 190.1 and 190.3.

## PARTIES, JURISDICTION AND VENUE

2.  Plaintiff Institute is a Texas non-profit corporation with its only place of business located in Dallas County, Texas.   Institute is currently the sole trustee of the Trust, which is a Texas trust established by Bob as grantor under a trust agreement dated March 5, 1997.  A true copy of the trust agreement is attached hereto as Exhibit A and incorporated by reference herein.  Defendants Edwards, Eaton, Phoenix and Kampen hold and have held for several years the assets of the Trust in a fiduciary capacity with respect to the Trust.  Institute brings this suit both on the individual claims of the Trust and on behalf of certain classes of persons and entities whose assets are held by these defendants, as more fully explained hereinafter.

3.  Plaintiff Bob is an individual who resides in Dallas County, Texas.

4.  Defendant Edwards is a Delaware corporation which maintains a place of business at 13727 Noel Road, Suite 100; Dallas, Texas 75240, where it may be served by serving its employee and agent, Defendant Carla, who may also be served individually at that address.

5.  Defendant Eaton is a non-Texas corporation that does business in Texas but does not have a registered agent for service of process in Texas.  Eaton may be served by service on the Texas Secretary of State pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code.  The Secretary of State may send the notice required by Section 17.045 to Eaton Vance Group of Funds, 101 Sabin Street, Pawtucket RI 02860.

6.  Defendant Phoenix is a non-Texas corporation that does business in Texas but

**Plaintiffs' Original Petition - page 2**

does not have a registered agent for service of process in Texas. Phoenix may be served by service on the Texas Secretary of State pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code. The Secretary of State may send the notice required by Section 17.045 to Phoenix Investment Partners, Ltd., P. O. Box 8301, Boston MA 02266-8301.

7. Defendant Van Kampen is a Delaware corporation that does business in Texas and may be served through its registered agent, C T Corporation, 1021 Main Street, Suite 1150, Houston TX 77002.

8. Defendant Dennis is an individual who is an attorney employed by Edwards in St. Louis, MO, who has taken certain illegal actions directed to a former trustee of the Trust in Dallas County, Texas and thereby subjected himself to the jurisdiction of this Court, and who may be served by service on the Texas Secretary of State pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code. The Secretary of State may send the notice required by Section 17.045 to Dennis Capriglione, A. G. Edwards & Sons, Inc., One North Jefferson, St. Louis MO 63103.

9. Defendant Jim is an individual who resides in Richmond Virginia, who has taken certain illegal actions directed to Dallas County, Texas and thereby subjected himself to the jurisdiction of this Court, who is sued herein both in his individual capacity and as trustee of the Red River Trust, and who may be served by service on the Texas Secretary of State pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code. Jim's attorney in Richmond VA has confirmed that he is authorized and willing to accept service of the summons and petition in this matter on behalf of Jim. Therefore, the Secretary of State may send the notice required by Section 17.045 to

**Plaintiffs' Original Petition - page 3**

James Woodrow Fuller, Jr. c/o John B. Catlett, Jr., Sands Anderson Marks & Miller, 801 E. Main Street, Suite 1800, Richmond, VA 23219-2906.

10. Defendant <u>Melissa is</u> an individual who resides in Richmond Virginia, who is a beneficiary of both the Trust and the Red River Trust and thus has certain interests that will be affected by the outcome of these proceedings, and who may be served by service on the Texas Secretary of State pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code. Melissa's attorney in Richmond VA has confirmed that he is authorized and willing to accept service of the summons and petition in this matter on behalf of Melissa. Therefore, the <u>Secretary of State</u> may send the notice required by Section 17.045 to Melissa Fuller c/o John B. Catlett, Jr., Sands Anderson Marks & Miller, 801 E. Main Street, Suite 1800, Richmond, VA 23219-2906.

11. This Court has jurisdiction over the parties and claims set forth in this petition. Most of the events giving rise to this petition occurred in Dallas County. Venue of this action is proper in Dallas County under §15.002(a) and §15.011 of the Texas Civil Practice and Remedies Code.

FACTUAL BACKGROUND

12. The facts recited in the letters attached as Exhibits B and C hereto are incorporated by reference as if set forth word for word here.

13. The beneficiaries of the Trust are designated in Article I of Exhibit A, to wit: Jim, Melissa, Bob's mother, Bob's sister and her husband, and Bob's stepdaughter. All of the beneficiaries except for Jim and Melissa have assigned all of their rights and claims as beneficiaries of the Trust to Bob, who asserts those claims in this lawsuit [except for the claims of Bob's sister, which have been assigned to Bob but are not

**Plaintiffs' Original Petition - page 4**

asserted herein in deference to her wish not to give the appearance of taking sides in the dispute between her brothers]. Accordingly, all parties who have an interest in the Trust are before this Court.

14. The following persons and entities have been trustee of the Trust during the dates indicated: (1) Michael Ginsburg [Bob's attorney who helped Bob draft and establish the trust] inception to 10/21/98, (2) Jim 10/21/98 to 6/25/01, (3) Lilith Company [a now defunct Texas corporation of which Bob was the sole officer and director] 6/25/01 to 4/11/06, (4) Jan M. Kamei [an individual who resides in Garland TX] 4/11/06 to 6/01/06, and (5) the Dogwood Institute 6/02/06 to present.

15. At this time, and without waiving the right to amend this petition to assert any claims that may be revealed through discovery, no claims for money damages are asserted herein against Melissa. Melissa has been joined as a defendant because the declaratory and injunctive relief requested herein will affect her rights as a beneficiary of both the Trust and the Red River Trust.

16. Prior to the establishment of the Trust, and again prior to his appointment as trustee of the Trust, Jim entered into a binding oral agreement with Bob in which Jim promised to faithfully follow Bob's instructions with respect to the investments and distributions of the Trust's assets. Jim made these contractual promises in recognition of the facts that Bob had funded the Trust from his personal funds, that Bob understood investments, and that Jim had little or no knowledge or experience with respect to investments. Jim also promised Bob that Jim would repay to the Trust any distributions made to Jim as soon as Jim was financially able to do so, and that, in the event that Bob needed some or all of the funds that Bob had used to establish the Trust, Jim would

**Plaintiffs' Original Petition - page 5**

distribute the funds to himself and then give them to Bob. Bob reasonably relied on these promises in establishing the Trust and then again in asking Ginsberg to resign and appoint Jim as trustee of the Trust. Due to their closeness [at that time] as brothers and the trust and confidence that Bob felt with respect to Jim and his promises, the relationship between Jim and Bob was a fiduciary relationship in fact and in law such that Jim owed fiduciary duties to Bob.

17. Jim is a practicing PhD psychotherapist and from time to time has purported to give Bob advice and counseling with respect to Bob's psychological condition. Jim's attempts to diagnose and counsel Bob have been neither invited nor appreciated by Bob, who believes that Jim lacks the objectivity [and perhaps the competence] to diagnose or treat Bob. Bob has expressly and repeatedly instructed Jim to stop trying to act as Bob's therapist and to maintain absolute confidentiality as to all third parties with regard to Jim's purported diagnoses of Bob. Bob's alleged psychological condition is not relevant to any conceivable claim or defense in this lawsuit. Bob's rights with respect to the therapist/patient privilege are asserted here and nothing in this petition or otherwise is intended to waive, in whole or in part, Bob's right to maintain that privilege. However, on information and belief, Jim has repeatedly violated that privilege by disclosing to persons other than Bob Jim's purported diagnoses of Bob.

18. The claims against Edwards, Carla, Eaton, Phoenix and Kampen arise out of a common core of corporate greed and subterfuge. These financial institutions make most of their money on "float" [using their clients' money to make income for themselves], fees charged to manage their clients' investments, and commissions. They have developed written and unwritten corporate policies and practices that maximize

**Plaintiffs' Original Petition - page 6**

their income from these sources, often to the detriment of their clients to whom they owe fiduciary and contractual duties. One of the ways that these institutions increase their income is by making unnecessary and unreasonable demands for additional documentation before they will act on properly documented and transmitted instructions from their clients to liquidate and deliver their assets. These demands serve no useful business purpose other than the unspoken but dominant purpose of delaying the release of their clients' monies so that these institutions can make more float, fee and commission income. Meanwhile, their clients are deprived of the use of their funds, which frequently results in consequential damages of varying types and amounts. For the most part, their clients suffer these deprivations in silence or ineffectual grumbling without realizing that they have a remedy at law and that this conduct constitutes breaches of fiduciary duties, breaches of contracts, and conversion of the clients' funds.

19. Carla and Dennis are employees of Edwards and at all relevant times were acting within the scope of that employment. Accordingly, Edwards is fully liable for the actions and omissions of Carla and Dennis under the doctrine of *respondeat superior*. Dennis has been joined as an individual defendant herein because he ignored and refused to comply with Bob's request and instruction to Edwards not to communicate directly with the former trustee of the Trust, Jan Kamei, and instead to direct all such communication to Bob as Jan's attorney. Attached as Exhibit D and incorporated by reference is an email sent by Bob on May 7, 2006 to the officer of Edwards who was at that time in charge of this matter. That communication plainly stated: "Please do not contact Ms. Kamei directly. As I am her attorney on this matter, all communication must be directed to or through me." Exhibit D also plainly stated that a lawsuit would be filed

**Plaintiffs' Original Petition - page 7**

soon against Edwards regarding the assets of the Trust. Moreover, prior correspondence to Edwards from Bob and from Jan had made it clear that Jan was represented by Bob with respect to this matter. Attached hereto as Exhibit E and incorporated by reference is a letter sent by Dennis directly to Jan [without even a courtesy copy to her attorney Bob] on May 23, 2006, in flagrant violation of the Texas and Missouri rules governing the ethical conduct of attorneys. Exhibit E is a blatant attempt to obtain pre-lawsuit discovery directly from a represented party by circumventing her attorney and is - on its face - outrageous. In addition to the relief requested hereinafter against Dennis and Edwards for this unethical conduct, Bob requests that this Court hold a hearing to determine appropriate sanctions against Dennis and Edwards for this unethical conduct, and that the jury in this matter be informed at the outset of the trial that such conduct occurred and is unethical.

20. In 1999, despite his agreements with Bob not to do so, Jim disavowed the power of attorney he had given Bob and personally assumed control of the Trust's investments, which he proceeded to horribly mismanage. Bob, who was appalled and saddened by this betrayal, demanded Jim's resignation. The two brothers exchanged bitter communications via fax and email for two years.

21. When Jim finally resigned as trustee of the Trust and assigned all of his rights and powers under the Trust to Bob in 2001, the value of the Trust's assets that Jim returned to the custody of Edwards was less than half of the value of the Trust's assets before Jim wrested control of the assets from Bob, despite the fact that no distributions had been made during that time period. Bob notified Carla of Jim's resignation and assignment and of Bob's appointment of Lileth Company as successor trustee, and

**Plaintiffs' Original Petition - page 8**

requested that Carla make the appropriate changes to the Edwards records for the Trust's accounts. Carla chose to ignore that notice and request and insisted on receiving a "blue ink" original of Jim's resignation and assignment, despite the fact that the document expressly provided that "the facsimile of this document may be treated as an original for all purposes." Assuming *arguendo* that Carla had some doubt as to whether Jim's resignation and assignment had been executed, she had Jim's address and telephone number and could have easily called or written Jim to verify the facts and to request whatever documents she wanted, but apparently she never made the slightest effort to do that. Bob does not recall receiving a "blue ink" original of the document and was unable to locate one. Bob and Jim were not talking to each other due to their dispute over the Trust, and thus Bob was unable to obtain from Jim the document that Carla requested. In short, by demanding delivery of a document that she did not really need and that Bob was not in a position to provide, and by refusing to take the slightest initiative to obtain that document from Jim, Carla was able to effectively freeze the Trust's investment accounts and make it impossible for the new trustee to manage those investments. At the same time, Carla was able to secure for Edwards and its co-conspirators [Eaton, Phoenix and Kampen] an uninterrupted source of float and fee income from the Trust's investments [all of which had been chosen on Carla's recommendation and which, unknown to the trustees of the Trust, provided kickbacks from Eaton, Phoenix and Kampen to Edwards]. This situation persisted for five years, during which time the Trust's assets were unavailable to the trustee and the trustee had no means of making distributions to any of the beneficiaries or of paying the federal taxes owed by the Trust for the meager income received on the investments [Carla had recommended investments that benefitted

**Plaintiffs' Original Petition - page 9**

Edwards and its co-conspirators but were not suited to the Trust's objectives and interests].

22. Finally, due to signs that the market might be entering a significant downturn and his growing concern over the Trust's tax delinquencies, Bob wrote to Jim in April 2006 and asked that Jim supply to Carla a "blue ink" original of the document that she allegedly wanted. Jim refused to give Bob even the courtesy of a response to that letter, and instead apparently telephoned Carla. Despite repeated requests, Carla has refused to disclose to Bob the substance of that telephone conversation. From her subsequent correspondence, it appears that Carla was trying to find a way to reinstate Jim as trustee so that she could prevent Bob from closing the Trust's accounts at Edwards and thereby cutting off Edwards' float and fee income from the Trust's investments. On information and belief, Jim conspired with Carla and the other defendants herein to prolong the freeze on the Trust's assets and assisted them in breaching their fiduciary and contractual duties to the Trust.

23. One of the ploys that Carla used to prolong the freeze on the Trust's investments was her contention that Lileth Company was not a proper trustee because it was allegedly too closely related to Bob. Although that contention had no merit or validity, Bob removed Lileth Company and appointed Jan Kamei as successor trustee. Jan then sent a letter to Carla enclosing documentation of her appointment as trustee and demanding delivery of the Trust's assets. Carla ignored that demand and refused to reply to it. Jan then made similar demands on Eaton, Phoenix and Kampen, each of which made different demands for various forms of documentation, none of which was reasonable or necessary. Nevertheless, Jan complied with those demands. Defendants

**Plaintiffs' Original Petition - page 10**

still refused to deliver the Trust's assets to the trustee.

24. Because Jan did not want to become involved in this lawsuit, she resigned as trustee and Bob appointed the Institute as successor trustee. The Institute then made demands on Edwards, Eaton, Phoenix and Kampen for delivery of the Trust's assets. Each of these defendants refused to deliver the assets to the new trustee. As of the time that this petition is filed, all of the Trust's assets are still frozen and unavailable to the current trustee, who consequently has no way to manage the Trust's investments, to make distributions to the beneficiaries, or to pay the back taxes owed by the Trust.

## INDIVIDUAL CLAIMS

### COUNT I - DECLARATORY RELIEF

25. Pursuant to the Texas Declaratory Judgment Act, plaintiffs ask for a declaratory judgment that includes the following pronouncements:

    a. That Institute is the sole current trustee of the Trust.

    b. That Institute is entitled to sole possession of all assets of the Trust.

    c. That Jim's actions in removing the Trust's assets to the Red River Trust were wrongful and a breach of his fiduciary duties to the Trust, and that all such assets, and all proceeds thereof, have remained at all times the property of the Trust.

    d. That each of the defendants' demands for additional documentation was unreasonable and unnecessary.

### COUNT II – INJUNCTIVE RELIEF

26. Plaintiffs seek temporary and permanent injunctive relief as follows:

    a. Prohibiting Jim from pretending to be the trustee of the Trust or the holder of any rights or powers under the Trust, and from otherwise interfering with the contractual

**Plaintiffs' Original Petition - page 11**

relationships of the Trust or with the assets of the Trust.

   b.  Requiring Edwards, Eaton, Phoenix, and Kampen to immediately liquidate all assets of the Trust and deliver the proceeds to Institute.

   c.  Prohibiting Dennis from directly contacting persons whom he knows to be represented by counsel with respect to the subject of the contact and from otherwise violating the ethical rules governing attorneys.

   d.  Requiring Jim to marshal all assets of the Trust and all proceeds thereof in his possession or control, including but not limited to all assets which were transferred to the Red River Trust in 2001, and to immediately deliver all such assets and proceeds to Institute.

   e.  Requiring all defendants to change their records to reflect the fact that Institute is the sole trustee of the Trust and that Bob has the sole power to remove and appoint trustees of the Trust.

   f.  Prohibiting Jim from purporting to act as Bob's therapist, from discussing with anyone [including his attorneys] Jim's alleged views of Bob's past or present psychological condition, and from violating the therapist/patient privilege with respect to any of Jim's patients.

## COUNT III - CIVIL CONSPIRACY

   27.  Each of the defendants [except for Melissa] has conspired with the other defendants to accomplish illegal, improper and immoral purposes through illegal, improper and immoral means.  Institute and Bob [both directly and in his capacity as assignee of the claims of beneficiaries of the Trust] have been damaged as a proximate result of acts committed pursuant to that conspiracy.  Each of the defendants [except for

**Plaintiffs' Original Petition - page 12**

Melissa] is jointly and severally liable to Institute and Bob for all such damages, regardless of the extent of the participation of that defendant in the conspiracy. Punitive damages should be imposed against each defendant for their acts committed in furtherance of this civil conspiracy.

## COUNT IV – CONVERSION

27.  Edwards, Eaton, Phoenix, Kampen, and Jim have each converted assets of the Trust.  On behalf of the Trust, Institute is entitled to recover from these defendants the value of the converted assets, together with punitive damages for the defendants' intentional conduct in converting those assets.

## COUNT V - BREACH OF FIDUCIARY DUTIES

28.  Jim has breached his fiduciary duties to the Trust and to Bob, both of which have suffered direct and consequential damages as a result of those breaches.  Jim is liable to Institute and Bob for all such damages.  Punitive damages should also be imposed against Jim for breaching his fiduciary duties.

29.  Edwards, Eaton, Phoenix, and Kampen have breached their respective fiduciary duties to the Trust, which has suffered direct and consequential damages as a result of those breaches.  Each of these defendants is liable to Institute for all such damages.  Punitive damages should be imposed against each of these defendants for breaching their respective fiduciary duties.

## COUNT V - BREACH OF CONTRACT

30.  Jim has breached his contractual duties to the Trust and to Bob, both of which have suffered direct and consequential damages as a result of those breaches.  Jim is liable to Institute and Bob for all such damages. Institute and Bob are entitled to recover

**Plaintiffs' Original Petition - page 13**

their attorney fees from Jim.

31.    Edwards, Eaton, Phoenix, and Kampen have breached their respective contractual duties to the Trust, which has suffered direct and consequential damages as a result of those breaches.   Each of these defendants is liable to Institute for all such damages. Institute and Bob are entitled to recover their attorney fees from these defendants, jointly and severally.

## COUNT VI - FRAUD IN STOCK TRANSACTIONS

32.  The conduct of Edwards, Eaton, Phoenix, Kampen, and Jim described above violated Section 27.01 of the Tex. Bus. & Com Code, which entitles Institute to recover from these defendants, jointly and severally, its damages, attorney's fees, expert witness fees, costs for copies of depositions, and costs of court.

## COUNT VII – NEGLIGENCE, GROSS NEGLIGENCE AND INTENTIONAL CONDUCT

33.  Plaintiffs have suffered direct and consequential damages as a proximate result of defendants' negligence, gross negligence and intentional conduct, and are entitled to recover from defendants [except for Melissa], jointly and severally, all such damages. Also, because the defendants acted with gross negligence and intentional disregard for the harm that they knew or reasonably should have known would result from their conduct, plaintiffs are entitled to recover punitive damages from each of the defendants [except for Melissa].

**Plaintiffs' Original Petition - page 14**

## CLASS CLAIMS

### PREFACE

34. Institute seeks certification of plaintiff classes under Rule 42 (b) (2) of the Tex. R. Civ. P., and seeks final injunctive and declaratory relief on behalf of such classes. Institute does NOT seek damage awards on behalf of the class members. Because no claims of the putative class members could conceivably be foreclosed by this action, the proposed classes should be mandatory rather than "opt out" classes, and thus no notice prior to certification will be necessary.

35. The allegations of paragraph 18 above are reasserted here. The common core of corporate greed and subterfuge described in that paragraph underlies conduct by defendants that is generally applicable to the putative classes, thereby making final injunctive and declaratory relief appropriate with respect to the classes. On information and belief, each of the plaintiff classes is so numerous that joinder of all putative class members as individual parties herein would be impractical.

36. Plaintiffs' counsel [Bob] is very experienced in the litigation of class actions and can fairly and adequately represent the proposed classes.

### CLASS A

37. Institute seeks certification of a class of plaintiffs consisting of all customers of Edwards who have requested within the past four years that Edwards change its records to reflect a new responsible party or person authorized to act with respect to the account and from whom Edwards has requested documentation other than, or in addition to, a sworn, notarized statement of the change.

**Plaintiffs' Original Petition - page 15**

## CLASS B

38. Institute seeks certification of a class of plaintiffs consisting of all customers of Eaton who have requested within the past four years that Eaton change its records to reflect a new responsible party or person authorized to act with respect to the account and from whom Eaton has requested documentation other than, or in addition to, a sworn, notarized statement of the change.

## CLASS C

39. Institute seeks certification of a class of plaintiffs consisting of all customers of Phoenix who have requested within the past four years that Phoenix change its records to reflect a new responsible party or person authorized to act with respect to the account and from whom Phoenix has requested documentation other than, or in addition to, a sworn, notarized statement of the change.

## CLASS D

40. Institute seeks certification of a class of plaintiffs consisting of all customers of Kampen who have requested within the past four years that Kampen change its records to reflect a new responsible party or person authorized to act with respect to the account and from whom Kampen has requested documentation other than, or in addition to, a sworn, notarized statement of the change.

## CLASS DECLARATORY RELIEF

41. Institute seeks a declaration on behalf of each of the four classes as follows:

A. That a demand by the defendant for unnecessary documentation as a precondition to changing its records to reflect a new responsible party or person

Plaintiffs' Original Petition - page 16

authorized to act with respect to the account constitutes a breach of that defendant's contractual and fiduciary duties owed to the class members.

B.  That it is unnecessary and unreasonable for the defendant to demand anything other than, or in addition to, a sworn, notarized statement of the change as a precondition to changing its records to reflect a new responsible party or person authorized to act with respect to the account.

### CLASS INJUNCTIVE RELIEF

42.  Institute seeks a permanent injunction on behalf of each of the four classes against Edwards, Eaton, Phoenix and Kampen as follows:

A.  Requiring each defendant to send a notice to each of its present account holders, and to each person and entity who has been an account holder within the past four years, informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and of the possibility that they may have a claim for damages against the defendant if they have been the victim of an unreasonable or unnecessary demand for documentation.

B.  Requiring each defendant to send a notice to each member of the class pertaining to that defendant, informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein, stating that the defendant's liability to that class member has been decided in favor of the class member, and explaining how the class member can bring suit against that defendant for damages.

C.  Prohibiting each defendant, under penalty of criminal contempt, from demanding unreasonable or unnecessary documentation as a pre-condition to changing the holder of record of accounts or to liquidating and delivering to the current owner of

the account, promptly and without unnecessary delay, at the owner's request, the assets held in the account.

## JURY DEMAND

43. Plaintiffs request a trial by jury on all claims in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for class certifications and for judgment against defendants as follows:

1. Declaratory judgments as set forth above;

2. Injunctive relief as set forth above;

3. Judgment for direct and consequential damages;

4. Judgment for punitive damages;

5. Judgment for attorney's fees and expenses, both with respect to the individual claims and with respect to the class claims;

6. Judgment for expert witness fees, costs for copies of depositions, and costs of court under Section 27.01 of the Tex. Bus. & Com Code.

7. Costs, pre-judgment and post-judgment interest, and all other relief to which plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

By: _____

Robert J. Fuller
TBA No. 07523980
8587 Southwestern Blvd # 2429
Dallas, Texas 75206
(972) 834-0852

ATTORNEY FOR PLAINTIFFS

Plaintiffs' Original Petition - page 18

# TRUST AGREEMENT ESTABLISHING THE

## THE DOGWOOD TRUST

## ROBERT J. FULLER, GRANTOR

---

**TRUST AGREEMENT** made this 5Th day of March, 1997 between **ROBERT J. FULLER**, as grantor (hereinafter, sometimes referred to as the "Grantor"), and **MICHAEL D. GINSBERG**, as trustee (hereinafter, sometimes referred to as the "Trustee"):

## WITNESSETH:

**WHEREAS,** the Grantor intends to create a separate and distinct trust for the benefit of the persons named or described in Article I hereof,

**NOW, THEREFORE,** in consideration of the premises, the Grantor hereby declares and establishes this separate, irrevocable trust, to be held by the Trustee, in trust, for the uses and purposes, and subject to all terms, covenants, conditions, provisions, and stipulations hereof, and hereby absolutely and irrevocably gives and delivers to the Trustee, as Trustee of the Trust, the sum of One Thousand and No/100 Dollars ($1,000.00), and the Trustee agrees to hold, administer, and distribute the trust estate of the Trust as is hereinafter set forth. Grantor or any other person or persons may by instrument in writing, by will or otherwise, deliver to the Trustee at any time and from time to time additional assets and properties, which additional assets and properties shall be held, administered and distributed as is hereinafter set forth.

## ARTICLE I

### Designation of Trust and Beneficiaries

A separate trust which shall be known as the **"THE DOGWOOD TRUST"** is hereby created (herein, sometimes referred to as the "Trust"). The Trust shall have as its beneficiaries the brother of the Grantor, James Woodrow Fuller, Jr., and under the circumstances set forth herein and subject to the power of appointment granted to James Woodrow Fuller, Jr., the Trust shall also have as its beneficiaries, the Grantor's mother, June Wynne Fuller, the Grantor's sister, Virginia Louise Johnson, the Grantor's sister's husband, Edwin E. Johnson, and the niece of the Grantor, Melissa Fuller, and the stepdaughter of the Grantor, Fallon Shelby Hayes; and such other persons or organizations as James Woodrow Fuller, Jr. may appoint pursuant to Section 3.3 hereof.

## ARTICLE II

### Appointment and Succession of Fiduciaries

2.1 **Succession of Trustees.** James Woodrow Fuller, Jr. shall have the power to remove the Trustee and to designate a successor Trustee (other than the Grantor). Any Trustee serving shall have the power to resign, and shall have the power to designate successor Trustees (other than the Grantor). In the event of a vacancy in the trusteeship, James Woodrow Fuller, Jr. shall be the successor Trustee. In the event of a vacancy in the trusteeship of James Woodrow Fuller, Jr., the Grantor's sister, Virginia Louise Johnson, shall be the successor Trustee. Upon the creation of the Melissa Fuller Trust and the Fallon Shelby Hayes Trust pursuant to Section 3.4 hereof and provided the beneficiary thereof shall be living and have attained the age of thirty (30) years, such beneficiary shall become the sole Trustee of her Trust and shall have the power to designate successor Trustees with respect to her trusteeship and the trustee then serving, if any, shall resign immediately.

2.2 **Power to Designate Successor Trustees.** The "power to designate successor Trustees" shall mean the right of a person (herein sometimes referred to as the "designator") to determine the appointment and succession of successor Trustees on the terms set forth in this Section. The successor Trustee to fill any vacancy in the trusteeship (and each further successor Trustee) shall be such person, persons, corporation or combination thereof who shall be designated by name or by plan of succession established by the designator. A successor Trustee may be given the power to designate successor Trustees, provided, however that a successor Trustee shall not be deemed to have the power to designate successor Trustees unless such power was affirmatively granted by the designator in the writing naming such successor Trustee. Any designation of a successor Trustee shall be effective only to supplement and not to contravene any previous designation. Any such designation shall be made either (a) by an instrument in writing signed by the designator and delivered to the adult beneficiaries of the trust or to the parent or legal guardian of the minor beneficiaries of the trust or (b) by the designator's valid Will or Codicil thereto duly admitted to probate in any jurisdiction within three (3) months after his death. If no successor Trustee has been designated within thirty (30) days of a vacancy (or within three [3] months of the designator's death, whichever occurs later), then the designator shall be conclusively presumed to have failed to have made a designation.

2.3 **Waiver of Bond.** The Trustee shall not be required to give any bond or other security for the faithful performance of his duties.

## ARTICLE III

### Administration

The Dogwood Trust shall be held, administered, and distributed as follows:

3.1 **Limited Withdrawals.** At the time of any transfer of cash or property to the Trust created hereunder, the donor of such cash or property may give the Trustee a contemporaneously

written notice to the effect that the cash or property so transferred (or some specified amount or portion thereof) shall be subject to withdrawal under the provisions of this Section by the beneficiary or beneficiaries of the Trust designated in such written notice. Each beneficiary so designated in such written notice (or, if no specific beneficiaries are designated in such notice, all beneficiaries) shall have the right within a one (1) month period commencing on the date of transfer to withdraw in cash or property (specifically including any insurance policy owned by or purchased by the Trustee) from the principal of the Trust an amount equal to either the amount of cash specified in the donor's notice or the value of the transferred property or portion thereof as specified in the donor's notice, or if no amount is specified in the donor's notice, each beneficiary's proportionate share of the value of the transferred property. The total amount which may be withdrawn shall not be cumulative, and to the extent that such right to withdraw shall not be exercised by the end of the one (1) month period, it shall lapse forever. The right to withdraw shall be exercisable only by a written instrument executed by the beneficiary, provided, that if the beneficiary is then under legal disability of any kind, the instrument may be executed by his legal guardian or parent (other than the donor) acting solely on behalf of such beneficiary's benefit. The beneficiary having a right to withdraw with respect to any transfer of cash or property (or if he is then under legal disability, his guardian or parent) shall be kept reasonably informed by the Trustee of all such transfers made to the Trust subject to a right of withdrawal.

3.2     **Income and Principal During Lifetime of James Woodrow Fuller, Jr.**. During the lifetime of James Woodrow Fuller, Jr. the Trustee may, in his sole discretion and at any time, distribute to or for the benefit of James Woodrow Fuller, Jr. so much or all of the income, the principal, or both, of the Trust as the Trustee determines shall be necessary for his health, maintenance or support in a style and manner of living to which he is accustomed.

In the event of any disabling, medical illnesses afflict the Grantor's mother, June Wynne Fuller, the Grantor's sister, Virginia Louise Johnson, the Grantor's sister's husband, Edwin E. Johnson, the Trustee may , in his sole discretion and at any time, distribute to or for the benefit of such medically ill person so much or all of the income, the principal, or both, of the Trust as the Trustee determines shall be necessary to compensate for the costs or loss of income from such medical disability, taking into consideration their other financial resources and any degree to which their illness has impaired their ability to maintain their financial resources.

The Trustee may, in his sole discretion and at any time, distribute to or for the benefit of Melissa Fuller and Fallon Shelby Hayes so much or all of the income, the principal, or both, of the Trust as the Trustee determines shall be necessary to pay for their education, including room, board and books. In exercising the foregoing power to make distributions to Melissa Fuller and Fallon Shelby Hayes, the Trustee shall first take into consideration all other financial resources known by the Trustee to be reasonably available to such child for the stated purpose and the respective needs, capabilities, and requirements of each beneficiary.

3.3     **Limited Power of Appointment**. Subject to the limitations of Section 8.4 hereof, James Woodrow Fuller, Jr. may, at any time during his lifetime or at his death, appoint any part of the trust estate of the Trust to or for the benefit of any persons or organizations.

3.4 **Death of James Woodrow Fuller, Jr..** Upon the latter of the deaths of the Grantor or James Woodrow Fuller, Jr., the Trustee shall divide the trust estate of The Dogwood Trust then remaining into equal shares, one for the benefit of Melissa Fuller, if then living, and one for the benefit of Fallon Shelby Hayes, if then living, (each referred to herein as the "designated beneficiary"); provided, however, that if either designated beneficiary shall not be then living and shall have been survived by descendants who shall be then living, a share shall nevertheless be created for the benefit of such descendants. Each share created hereunder shall be retained by the Trustee as a separate trust bearing the name of the designated beneficiary for whom it was created (referred to generically herein as a "Child's Trust"), the beneficiary of which shall be the designated beneficiary or descendants of a deceased designated beneficiary for whom such Child's Trust was created, and shall be administered and distributed by the Trustee as follows:

(a) <u>Income and Principal</u>. The Trustee may, in his sole discretion, pay to or use for the benefit of each beneficiary of a Child's Trust as much of the income and principal as the Trustee determines to be required for such beneficiary's reasonable support, health, maintenance, and education, including room, board and books, adding any excess income to principal at the discretion of the Trustee. In exercising the foregoing powers to make distributions, the Trustee shall first take into consideration all other financial resources known by the Trustee to be reasonably available to such child for the stated purpose and the respective needs, capabilities, and requirements of each beneficiary.

(b) <u>Limited Power of Appointment</u>. Subject to the express limitations of Section 8.4 hereof, each designated beneficiary may, during lifetime or at her death, appoint any part or all of such Child's Trust to or for the benefit of any descendants of the designated beneficiary.

(c) <u>Death of Beneficiary</u>. In the event of the death of Melissa Fuller and Fallon Shelby Hayes, the trust estate of her Child's Trust then remaining unappointed shall be held in further trust for the benefit of her descendants, to whom the Trustee could make distributions pursuant to the standards of distribution set forth in Section 3.4(a) hereof, and after the expiration of twenty years following the death of Melissa Fuller and Fallon Shelby Hayes, respectively, the balance remaining in her Child's Trust shall be distributed as follows: (1) to her then living descendants, or if there shall be no then living descendants, then (2) to the then living descendants of the Grantor, or if there shall be no such living descendants of the Grantor, then (3) to the Grantor's heirs-at-law.

## ARTICLE IV

## Power to Substitute Property of Equivalent Value
## Irrevocable Character of the Trust

During his lifetime, the Grantor shall have the power, exercisable in a nonfiduciary capacity, to acquire any trust assets by substituting other property of equivalent value without the approval

or consent of any person in a fiduciary or nonfiduciary capacity. The Grantor may, by an instrument in writing, deliver to the Trustee and the beneficiaries of this Trust, at any time, renounce in whole the powers granted in this Article IV to substitute trust assets, and thereafter, this Trust shall be administered and distributed as if the power to substitute trust assets granted in this Article IV had never been granted. The express purpose of this Article IV is to cause the Trust to be a grantor type trust for purposes of Sections 671 and 675 of the Internal Revenue Code of 1986 (the "Code") or any successor provisions of the Code corresponding thereto until the power granted in this Article IV is renounced. To the extent that any common law right of reimbursement may exist in favor of the Grantor from the Trust for income taxes imposed on the Grantor but attributable to the income of the Trust, the Grantor hereby waives and relinquishes any such common right of reimbursement.

Subject to the foregoing power, the Trust hereby created is irrevocable. Neither the Trustee, nor the Grantor, nor any other person shall have the right to revoke, alter, or amend this Agreement or the terms of the Trust. The Grantor renounces, relinquishes, and disclaims any reversionary or remainder interest in the trust estate of the Trust.

## ARTICLE V

### Accumulations and Perpetuities

No separate trust or share shall be held in trust for longer than, and no estate or trust created by the exercise of any power of appointment shall terminate later than, twenty-one (21) years after the date of death of the last survivor of a group consisting of the Grantor, all descendants of the Grantor who are living on the effective date of this Trust Agreement, all persons who are mentioned by name in this Trust Agreement (as beneficiaries or otherwise) who are living on the effective date of this Trust Agreement, and all descendants of said mentioned persons who are living on the effective date of this Trust Agreement. If, at the expiration of such period, any separate trust or any share is still held in trust or any estate has not terminated, the Trustee shall immediately distribute the separate trust or share to the income beneficiary thereof, or if there shall be more than one income beneficiary, to the income beneficiaries in equal shares.

## ARTICLE VI

### Distributions to Beneficiaries

6.1    **Discretionary Distributions.** Whenever the Trustee is authorized, but not required, to make distributions from a trust, such authority may be exercised in the sole and absolute discretion of the Trustee. The Trustee may make such distribution in cash or in kind on a pro-rata or non-pro-rata basis, at any time and from time to time. This authority permits the Trustee to terminate such trust by such distributions. However, no distribution shall be made that has the effect of discharging a legal obligation (including the obligation of support) of any person other than the beneficiary to whom the distribution is made. In selecting assets for distribution the Trustee is not required to take into consideration the income tax consequences to the beneficiary or to make any

## ARTICLE VII

### Trustee Powers, Rights and Duties

7.1    **Powers of Trustee.**  In addition to the powers conferred by law upon trustees, and not by way of limitation thereof, the Trustee of each separate trust is hereby authorized to exercise the following powers:

      (a)    to determine the value of any property allocated, divided or distributed from the trust estate;

      (b)    to sell for cash or credit the property of the trust estate for such price and upon such terms as the Trustee shall determine;

      (c)    to lease or license the use of any personal property of the trust estate upon such terms as the Trustee shall determine;

      (d)    to borrow money, to extend or renew any existing indebtedness and to mortgage or pledge any property of the trust estate;

      (e)    to settle, compromise, contest, agree to arbitrate and be bound thereby, extend the time for payment, consent or abandon claims or demands in favor of or against the trust estate;

      (f)    to sell, convey, exchange, release, mortgage, encumber, lease, partition, improve, repair, manage, insure against loss, protect and subdivide any real estate of the trust estate;

      (g)    to invest in any types of assets, real or personal, within or without the United States of America, even if there is a statute or rule of law regarding investments by trustees indicating that such investment may constitute an excessive portion of the trust estate.  For example, the Trustee may invest in common stocks, bonds, notes, debentures, mortgages, preferred stock, interests in common trust funds, mutual funds, "open-end" or "closed-end" investment funds or trusts, real estate investments trusts or commodities;

      (h)    to invest in closely held businesses as shareholder, creditor, or limited partner and to participate in any incorporation, reorganization, merger, consolidation, recapitalization, liquidation or dissolution of such business;

      (i)    to abandon investments he deems to be worthless;

      (j)    to open accounts, including margin accounts, with brokerage firms, banks or others to hold the investments of the trust estate;

(k)     to employ and pay reasonable compensation to any person such as brokers, custodians, depositories, accountants, attorneys, investment counsel, appraisers or insurers (who may be the Trustee himself or any firm with which the Trustee is associated) as may be necessary or desirable in managing and protecting the trust estate;

(l)     to cause any securities, bank accounts, safety deposit boxes, vaults or other property which may at any time form a part of the trust estate to be issued, held or registered in the name of the Trustee;

(m)     to purchase and own insurance policies and annuity contracts on the life of any person and to exercise any and all rights, powers and privileges which the owner of such policies or contracts may have;

(n)     to make loans in such amounts, upon such terms (including with or without security), at such rates of interest (or without interest), and to any person as the Trustee may deem advisable;

(o) .     upon written request of a beneficiary, to render annual statements of the receipts and disbursements and of the financial condition of the trust to such beneficiary;

(p)     to charge and receive from the trust estate a fair and just compensation (or to waive such compensation) for services rendered as Trustee and be reimbursed from the trust estate for all reasonable expenses incurred in the management and distribution of the trust, including any tax or penalty paid by the Trustee during the existence of the Trust;

(q)     to delegate the authorities, discretions and powers herein conferred upon a Trustee, or the custody of any or all property comprising the trust estate, to any or one or more Co-Trustees then acting, by an instrument in writing signed by the Co-Trustees;

(r)     to release any of the powers herein conferred by an instrument in writing signed by the Trustee or Co-Trustee releasing such powers;

(s)     to transfer the situs of any or all trust assets to any other place whether within or without the United States;

(t)     to determine the manner in which expenses are to be borne and in which receipts are to be credited as between principal and income, and also to determine what shall constitute principal or income, and may withhold from income such reserves for depreciation or depletion as it may deem fair and equitable; and

(u)     upon a determination that a distribution or termination of an interest or power hereunder constitutes a distribution, termination, or direct skip subject to a generation-skipping tax, to augment any taxable distribution by an amount which the

Trustee estimates to be sufficient to pay such tax and charge the same to the Trust or share or portion thereof to which the tax relates without adjustment of the relative interests of the beneficiaries; to pay such tax, in the case of a taxable termination or direct skip, from the Trust or share or portion thereof to which the tax relates without adjustment of the relative interests of the beneficiaries; provided, however, that if said tax is imposed in part by reason of the Trust property hereunder and in part by reason of other property, the Trustee shall pay only the portion of such tax attributable to the taxable termination or direct skip hereunder taking into consideration deductions, exemptions, credits, and other factors which the Trustee deems advisable; and to postpone final termination of the Trust or share or portion thereof and to withhold all or any portion of the Trust property until the Trustee is satisfied it no longer has any liability to pay any generation-skipping tax with reference to the Trust or its termination;

7.2 **Majority Determination**. If at any time there shall be more than one Trustee of any trust created hereunder, the provisions of this Section 7.2 shall apply. In the event of a disagreement among the Trustees, the views of the majority shall prevail. The affirmative vote of a majority of those authorized to vote on any matter shall constitute a majority. If only two Trustees shall be authorized to vote on a matter, the affirmative vote of both shall be required. Failure to obtain a majority shall be treated as if the Trustees failed to act. All votes shall be taken within thirty (30) days of the date of the event which required a decision to be made. Any Trustee who casts a vote in opposition to an action thereafter taken by the Trustees shall in no wise be liable or responsible for such action. Likewise, any Trustee who casts a vote in favor of an action that is thereafter not taken by the Trustees shall in no wise be liable or responsible for such failure to act.

7.3 **Corporate Trustee**. When a bank or trust company shall at any time be acting as Corporate Trustee or Co-Trustee of a separate trust, the adult beneficiary of such trust (or if there shall be more than one, the adult beneficiaries acting jointly and unanimously) may remove the Corporate Trustee with or without cause by delivering to the Corporate Trustee a written instrument, signed by the beneficiary or beneficiaries; provided, that such written instrument shall concurrently appoint a successor corporate trustee.

7.4 **Merger of Trusts**. In the event any trusts are created by the Grantor, the terms, duration, and beneficiaries of which are identical to any trust created hereunder, the Trustee is hereby expressly authorized to, but shall not be required to, merge the assets of any trust created hereunder with the assets of such trust created by the Grantor having the identical terms, duration, and beneficiaries in order to consolidate trust administration and to minimize expenses.

## ARTICLE VIII

### Powers of Appointment

8.1 **Manner of Exercise**. The donee of a power of appointment may exercise such power by making appointments from the trust estate in cash or kind, including a direction of the Trustee

to distribute specific property, outright to, or to a trustee or trustees to hold in trust for the exclusive benefit of, any one or more of the objects of the power. The donee may impose lawful spendthrift restrictions and other lawful conditions upon any appointment provided that no one other than an object of the power of appointment is benefitted thereby. The donee may also exercise any power of appointment by creating life estates for any one or more objects of the power with remainder to others of said objects or by creating in any object of the power either a general or a limited power of appointment. The donee of a lifetime power of appointment hereunder may exercise such power at any time and from time to time by an instrument in writing delivered to the Trustee during the lifetime of such donee.

8.2  **Testamentary Powers.** The donee of a power of appointment exercisable on the death of such donee shall exercise such power only in a valid Will or Codicil. No Trustee of any separate trust shall incur any liability to any person in relying on any instrument admitted to probate in any jurisdiction as the valid Will or Codicil of a donee of a testamentary power of appointment, or in acting upon the assumption that said donee failed to exercise such power of appointment if, within three (3) months after the date of death of said donee, the Trustee has no notice or knowledge of the existence of a valid Will or Codicil of said donee.

8.3  **Renunciation or Release.** Any power of appointment granted hereunder may be renounced or released in whole or in part by the donee of such power and may be reduced by the donee of such power in such manner as to reduce or limit the objects in whose favor the power would be otherwise exercisable. Such renunciation, release or reduction of a power of appointment may be made by an instrument in writing signed by the donee of such power and delivered to the Trustee. Solely for purposes of this Section 8.3, the word "power" shall include (without limiting the generality of the meaning of such word) any power of a Trustee of a separate trust which constitutes a power of appointment within the meaning of the United States Internal Revenue Code from time to time in force, and the word "donee" shall include said Trustee.

8.4  **Restriction of Exercise of Limited Powers of Appointment.**  No power of appointment granted hereunder shall be exercised or exercisable to any extent in favor of the donee of such power, or the estate, the creditors, or the creditors of the estate of said donee, or to discharge or satisfy a legal obligation of said donee, or for the pecuniary benefit of said donee.

### ARTICLE IX

### Construction

9.1  **Exculpatory Clause.** No fiduciary acting hereunder shall be liable for any loss occasioned by acts in good faith in the administration of his duties hereunder, or in reliance of an opinion of counsel. Such fiduciary shall be liable only for willful wrongdoing, or gross negligence, but not for honest errors of judgment.

9.2  **Survivorship.** Except as otherwise expressly provided herein to the contrary, in the event of any beneficiary's right to receive any property hereunder is dependent on his survivorship

of some person and such beneficiary shall die within thirty (30) days after the death of such person, such beneficiary shall be deemed not to have survived such person.

9.3 **Successor Fiduciaries.** Any reference herein to any fiduciary shall mean, refer to and include any successor to such fiduciary when required by the facts. Every successor fiduciary shall, upon assumption of the duties of the office, have all the title, powers, rights and discretions given herein to the original fiduciary automatically and without any conveyance, transfer or order of court.

9.4 **Trust Estate.** As used herein, the term "trust estate" shall include all property received initially by the Trustee with respect to any separate trust, all additions thereto received by the Trustee from any other source, all investments and reinvestments of such property or such additions thereto, and all accrued and undistributed income of the Trust.

9.5 **Corporate Fiduciary.** Reference herein to any bank or trust company shall include any successor thereto (whether by merger, consolidation, or otherwise) and this Trust Agreement shall be read accordingly. Any corporate fiduciary may utilize its own services and otherwise deal with itself without thereby being considered to be engaging in self-dealing.

9.6 **Descendants.** As used herein, the terms "descendant" or "descendants" shall mean those persons in being at the time they must be ascertained to give effect to the reference regardless of whether they were born before or after the death of the person executing this instrument or the death of any other person. An adopted child who shall not have attained the age of twenty-one (21) years prior to adoption and the descendants of any such adopted child shall be regarded for all purposes herein as the descendants of the adopting parent or parents. A posthumous child shall be considered as living at the death of his or her parent. Except for discretionary distributions which may be made unequally among a group of beneficiaries, whenever a distribution is to be made to the descendants of any person, or whenever the descendants of any person are to become beneficiaries of a such person's interest in any separate trust or share of a trust, the property to be distributed to such descendants, or the trust estate or share thereof of which such descendants are to become beneficiaries, shall be divided into as many shares as there are living children of such person and deceased children of such person who left then living descendants. Each living child (if any) shall take one share and the share of each deceased child shall be divided among his or her then living descendants in the same manner.

9.7 **Heirs-At-Law.** As used herein, the term "heirs-at-law" of a specified person shall mean only those persons, other than creditors, who would receive the personal property of the specified person under the laws of the state of such specified person's domicile then in force, as if such specified person had died intestate, unmarried, and domiciled in said state.

9.8 **Number and Gender.** As used herein, the masculine, feminine, and neuter gender each includes the others; the singular and plural each includes the other; and this instrument shall be read accordingly when required by the facts.

9.9 **Titles.** The titles of Articles and Sections used herein are for general information only and this Trust Agreement shall not be construed by reference thereto.

9.10 **Interpretation.** This document and each separate trust created herein shall be construed and administered and the validity thereof determined in accordance with the laws of the State of Texas.

**IN WITNESS WHEREOF**, the Grantor, Robert J. Fuller, and Michael D. Ginsberg, as Trustee, have executed this Trust Agreement Establishing The Dogwood Trust on the day and year first above written.

ROBERT J. FULLER, GRANTOR

MICHAEL D. GINSBERG, TRUSTEE

H:\DOCS\3800S\3847\01\D\TRUST.WPD

**Robert J. Fuller**
1510 Cranford Drive
Garland TX 75041

April 7, 2006

Carla Ulrichherring
A, G. Edwards & Sons, Inc.
13727 Noel Road, Suite 100
Dallas, TX 75240

Carla,

I received your letter of April 5, 2006. It is inaccurate and misleading in several respects. In addressing the primary inaccuracies, I will briefly review for you certain relevant facts.

I formed the Dogwood Trust ("the Trust") in March, 1997, and funded it entirely with my personal funds. I drafted the Trust Agreement with the assistance of Michael Ginsburg, my attorney and the original trustee. I defined the term "Grantor" in the first paragraph of the Trust Agreement as "Robert J. Fuller", i.e., as me, an individual and natural person. In Article II, section 2.1 of the Trust Agreement, I provided that "the Grantor" could not serve as trustee. Nowhere in the Trust Agreement is there any mention of the term "form of Grantor" used in your letter, nor does the context of the Trust Agreement in any way suggest that such a term would or should be implied as an expansion of the defined term "Grantor." Therefore, the Trust Agreement does NOT prohibit "a company form related to the Grantor" (whatever that vague phrase in your letter may mean) from serving as trustee. Even if there was some arguable ambiguity in this regard (which there is not), Texas law is well settled that the Trust Agreement must be construed to give effect to the intention of the drafter, i.e., me. I am the only person who can speak to that intent and assure you that the intent was to exclude only me, a natural person, from serving as trustee, and not to exclude any related entities from so serving.

As trustee, Ginsberg charged fees. To avoid that expense, I asked Ginsberg to resign and asked my brother, James W. Fuller, Jr. ("Jim") to serve as trustee. You may recall that, in the summer of 1999, Jim and I had a dispute about the handling of the trust and that Jim moved the Trust assets to a Richmond VA broker in or about August 1999. You may also recall that Jim and you concealed that move from me until I called you to inquire about the non-receipt of account statements. In the summer of 2001, Jim and I resolved that dispute in the following manner: (1) about 40% of the assets of the Trust were transferred to a newly formed trust in Virginia (the Red River Trust) with Jim as trustee and with Jim and his daughter as beneficiaries of the Red River Trust, (2) the remainder of the Trust's assets were transferred back to A. G. Edwards, and (3) Jim signed and faxed to me a document in which he resigned as trustee of the Trust and irrevocably assigned to me all of his rights and powers under the Trust (other than his rights and powers as the trustee prior to resignation), "including but not limited to all rights and powers under Article II of the Trust, all rights and powers under Section 3.3 of the Trust,

Carla Ulrichherring
April 7, 2006

and all rights and powers under Article VIII of the Trust."   On June 25, 2001, I executed a document in which I accepted the assignment of rights and powers from Jim, acknowledged his resignation as trustee, and appointed Lilith Company, a Texas corporation, as the successor trustee.  On August 4, 2001, I faxed to you copies of these two documents and requested that you change the A. G. Edwards records to reflect the new trustee.  Notwithstanding the fact that Jim's resignation and assignment of rights and powers stated:  "Delivery of this document to Robert Jack Fuller shall be complete upon transmission by facsimile to him, and the facsimile of this document may be treated as an original of this document for all purposes", you declined to change the A. G. Edwards records unless and until you received a signed (blue ink) original of Jim's resignation and assignment of rights and powers.  I thought at the time that Jim had also mailed an original of that document to me and told you that I would look for it.  In the meantime, the Trust's remaining assets were in your hands and I saw no urgency to supplying the original document.

I never found the original document.  Perhaps it was lost in my move to Garland.  I was reluctant to contact Jim in 2001 to request another original because the dispute and its resolution were acrimonious and personally painful to me.  However, with the passage of time and recent developments in the market, I decided that the records must be cleared so that the Trust's assets can be appropriately managed.  To that end, I recently wrote to Jim and requested that he send to you an original of the document that he signed in 2001.  I gather from your letter that he called you upon receipt of my request.  I do not know whether in that conversation, Jim acknowledged or denied having signed the resignation and assignment of rights and powers in 2001.  Please confirm in your reply to this letter what Jim said about that subject.

As you should know from handling the accounts of Lilith Company, its stock is and always has been owned by the Trust, not by me personally.  The implication in your letter that Lilith could be considered to be a "form of the Grantor" is absurd and has no basis in law, and your reference to the Patriot Act (which was not passed until after the events at issue) is unnecessarily offensive.  In any event, I intend to appoint a different trustee as soon as you acknowledge my power to do so.  That trustee will then move all of the Trust's assets to a new broker.

I am sending a copy of this letter to Jim.  Hopefully, Jim and you can resolve the documentation issue to your satisfaction, and you will notify me in the near future that the issue is resolved.  However, if I do not receive by May 1, 2006, notice from you that the issue has been resolved and that you will accept my appointment of a new trustee (conditioned, of course, upon your receipt of originals of that appointment and the new trustee's acceptance thereof), I will have no alternative to joining both Jim and A. G. Edwards in a declaratory judgment action to secure a judicial resolution of the issue.  I

Carla Ulrichherring
April 7, 2006

would prefer not to have to do so, among other reasons because that action would cost Jim and you attorney's fees and costs, both for your own attorneys and for mine under the Texas Declaratory Judgment Act.

Sincerely,

Robert J. Fuller

Cc. James W. Fuller, Jr.
2410 Larkwood Road
Richmond VA 23294

# Jan M. Kamei
1510 Cranford Drive
Garland TX 75041

April 20, 2006

Douglas L. Kelly                           via Certified Mail, RRR
Director of Law and Compliance
A. G. Edwards & Sons, Inc.
One North Jefferson
St. Louis MO 63103

> Re: Irresponsible conduct of your agent, Carla Ulrichherring, with respect
> to the Dogwood Trust

Dear Mr. Kelly,

It is my understanding that AG Edwards has held and invested the assets of a Texas trust, known as the Dogwood Trust, since its inception in 1997. Carla Ulrichherring got this business due to her personal friendship with the Grantor of the trust, Robert J. Fuller ("Bob"), who is also my attorney. As the recently appointed trustee and as assistant to one of the most respected estates and trust lawyers in Texas, I have reviewed the history of the handling of this account and am frankly astounded and appalled. Ms. Ulrichherring's bizarre and grossly negligent conduct with respect to this account, and her refusal to timely respond to communications and reasonable requests for information and action regarding this account, have occasioned this letter to you. For the reasons set forth below, I ask that Ms. Ulrichherring be immediately removed from all power and responsibility with respect to this account and that a more rational person take charge of this matter on behalf of AG Edwards.

I have enclosed copies of prior correspondence to assist you in understanding this matter and will briefly summarize its history for you. Shortly after the trust's inception, Bob asked the original trustee (Bob's attorney) to resign and appointed Bob's brother, James W. Fuller, Jr. ("Jim"), as trustee to avoid the fees charged by the original trustee every time he handled a document. Jim is a psychologist who lives in Virginia. Jim gave Bob a broad power of attorney to act on his behalf and signed a number of blank authorization forms for trading in the trust's account because Jim has no experience or understanding of trusts or investments. Also, because Bob had funded the trust entirely from his earnings as a commercial litigator (including a myriad of federal and state securities fraud cases and NASD arbitrations he has handled over the past two decades) and was a sophisticated investor, Jim agreed that Bob should make all the decisions with respect to this account. Bob set up the trust's balance sheets and worked with his accountant to prepare the trust's first federal tax return.

Jim and Bob had been extremely close, even for brothers, since the 60's. Unfortunately, a few months after Jim was appointed trustee, Jim got mad at Bob. In the summer of

1999, at a time when Jim knew that Bob was incommunicado on a horsepack trip into the Idaho wilderness, Jim had Ms. Ulrichherring move the trust assets to a Virginia brokerage and somehow convinced Ms. Ulrichherring to help Jim conceal that move from Bob until Bob called Ms. Ulrichherring several months later to inquire about the non-receipt of account statements and Ms. Ulrichherring had no option but to admit to what she and Jim had done. As you can only imagine, Bob was both livid and hurt. The fight between these two former best friends and brothers was bitter, emotional and protracted.

In the summer of 2001, Jim and Bob resolved their dispute over the handling of the trust's assets in the following manner: (1) about 40% of the assets of the Trust were transferred to a newly formed trust in Virginia with Jim as trustee and with Jim and his daughter as beneficiaries, (2) the remainder of the Trust's assets were transferred back to Ms. Ulrichherring at AG Edwards, and (3) Jim signed and faxed to Bob a document in which Jim resigned as trustee of the Dogwood Trust and irrevocably assigned to Bob all of his rights and powers under that trust, including the power to remove and appoint successor trustees. On June 25, 2001, Bob executed a document in which he accepted the assignment of rights and powers from Jim, acknowledged Jim's resignation as trustee, and appointed Lilith Company, a Texas corporation, as the successor trustee. On August 4, 2001, Bob faxed to Ms. Ulrichherring copies of these two documents and requested that she change the A. G. Edwards records to reflect the new trustee. At that time, Bob was the president of Lilith Company (which is now defunct).

Notwithstanding the fact that Jim's resignation and assignment of rights and powers stated: "Delivery of this document to Robert Jack Fuller shall be complete upon transmission by facsimile to him, and the facsimile of this document may be treated as an original of this document for all purposes", Ms. Ulrichherring refused to change the AG Edwards records unless and until she received a signed (blue ink) original of Jim's resignation and assignment of rights and powers. However, despite the fact that – at a minimum - Ms. Ulrichherring had notice that the trustee had been changed, she apparently never contacted Jim – the person that her records listed as the trustee – to verify his continuing authority (or lack thereof) to act on behalf of the trust, or to request that Jim send to her the blue ink original that she supposedly needed. Jim and Bob were not communicating with each other and Bob was unable to locate a blue ink original of Jim's resignation and assignment of rights and powers.

Now this sad tale gets really bizarre. For almost five years, Ms. Ulrichherring did absolutely nothing to remedy this situation, Jim took no actions that might have implied that he thought he was still the trustee, and Bob felt helpless to do anything because Jim wasn't communicating with him and Ms. Ulrichherring was similarly uncooperative. During that time, AG Edwards continued to earn fees on Ms. Ulrichherring's recommended investments of the trust's assets, but the new trustee (Lilith) had no way to mange the trust's investments or even to pay federal income taxes for the trust from its funds. Finally, due to his concern over recent developments in the market vis-à-vis the trust's investments, as well as the fact that the trust hadn't paid taxes in five years, Bob wrote to Jim and requested that he send to Ms. Ulrichherring a blue ink original of the

document that Jim signed in 2001.    Copies of that letter and of the ensuing correspondence are enclosed.    It appears from her April 5 letter to Bob that Jim telephoned Ms. Ulrichherring when Jim received Bob's letter, but Ms. Ulrichherring has ignored Bob' repeated requests to disclose the substance of that telephone conversation. As pointed out in Bob's response, Ms. Ulrichherring's letter of April 5, 2006 was inaccurate, misleading and plainly offensive.    Her motives for her bizarre conduct are not readily apparent, but it does raise unsavory suspicions about what she and Jim have been plotting behind Bob's back.

On April 11, 2006, I was appointed successor trustee, accepted that appointment and sent a certified letter to Ms. Ulrichherring demanding the immediate delivery of all assets of the trust in her possession or control.    Nine days have now passed without even the courtesy of a response from her.

I am sure that you will understand why, given the history of this matter, without waiving any other claims on behalf of the trust, I will hold AG Edwards responsible for any diminution in market value of the trust assets after the receipt by Ms. Ulrichherring of my demand letter.    Due to his past friendship with Ms. Ulrichherring, Bob has urged me to avoid suing you, but his patience is wearing thin and I have no friendship with her to restrain me.    Perhaps your prompt action might defuse this situation before it ends up in the court.

Sincerely,

Jan M. Kamei, Trustee of the Dogwood

Trust

Cc. Attorney Robert J. Fuller w/o enclosures
    Carla Ulrichherring w/o enclosures

email to Wingmueller
As AttachmentAs Inline TextMove to Folder-----
Folders ------InboxDraftsSentTrashBulk Mail---- My
Folders ----


Message is not flagged. [ Flag for Follow Up ]
Message has been forwarded in the past.

Date:   Sun 07 May 2006 06:52:30 PM EDT
From:   bob <robertjfuller@myway.com>
[ Add to Address Book | Block Address | Report as Spam ]
To:     <websupport@agedwards.com>
Subject:  Please forward to Jerry Wingbermuehle,
Associate Vice President & Service Representative


Mr. Wingbermuehle,

I received a copy of your May 3, 2006 letter to
Jan M. Kamei, the current trustee of the Dogwood
Trust [your client]. In that letter you stated
that you would contact her in the near future.
Please do not contact Ms. Kamei directly. As I am
her attorney on this matter, all communication
must be directed to or through me.

Ms. Kamei's letter to Doug Kelley of April 20 was
apparently referred to you. I have personal
knowledge of all facts set forth in Ms. Kamei's
letter and can assure you that those facts are
both true and provable. Ms. Ulrichherring has
still not responded to Ms. Kamei's letter of April
11 demanding delivery of the trust's assets.
Instead, Ms. Ulrichherring has apparently recently
changed the address to which the trust's
statements from Eaton Vance, Phoenix Funds and Van
Kampen are delivered so that the current trustee
[Ms. Kamei] will no longer receive those
statements, which will now be delivered instead to
the former trustee [James Woodrow Fuller, Jr., who
resigned in 2001]. This was done in spite of Ms.
Kamei's explicit direction to Ms. Ulrichherring
that she take no action with respect to the trust
other than to dleiver its assets.

Despite my former friendship with Ms.
Ulrichherring, my patience with her irrational
conduct has ended. I am preparing a petition which
will be filed in state court in Dallas TX within
the next week or so, which will include claims
against A G Edwards and Ms. Ulrichherring for
breach of fiduciary duty, gross negligence,
conversion, civil conspiracy and securities fraud,
and which will seek both compensatory and punitive
damages from a Texas jury, in addition to a
declaratory judgment regarding the rights of the
current trustee and the 2001 assignment of the
powers of appointment and removal of trustees. In
your reply to this email, please provide the name
and address of your registered agent for service
of process in Texas, or if you prefer, I will
serve the A G Edwards summons on Ms. Ulrichherring

Page 2

email to Wingmueller
as your agent at the same time that she is served
personally.

From my experience in both representing and suing
brokerage firms, I suspect that you may be asked
to evaluate your firm's potential exposure in this
matter. I can provide some guidance in this
regard. In 23 years of trying jury cases, I have
never had a jury not do what I asked them to do
and I think a Dallas jury will love this case.

I have attached a brief cv which reflects my
experience and includes all of my contact
information. My very first jury trial - in 1983,
six months out of law school - was against a
regional broker/dealer in Arkansas. They did not
take me seriously, possibly because I was not an
experienced trial lawyer at that time. That was a
mistake. About 2 years later I had the pleasure of
representing that firm's creditors in its SIPIC
liquidation and buying some of its fancy
furnishings at the auction.

When I moved to Dallas in 87, I had the honor of
representing Bear Stearns and several regional
brokerage firms, and I have sued most of the other
national firms at one time or another [although
this is my first suit against your firm].
Currently, I am semi-retired and thus have a lot
of time to devote to this case. I highly recommend
that you budget several hundred thousand dollars
for the defense of this case as I am sure that you
will need it. You should also consider my time at
my normal hourly rate of $300 as a part [albeit a
small part] of your exposure. My best estimate at
this early stage is that your total exposure
excedes $1 million and could exceed $10 million if
punitive damages are imposed.

You may be thinking that the arbitration clause in
your standard client agreement will prevent this
case from getting to a Texas jury. Think again.
Neither James Fuller nor Ms. Kamei signed that
agreement. To enforce that agreement against the
current trustee under a successsor theory, you
would first have to concede that Ms. Kamei is the
current trustee, something that Ms. Ulrichherring
seems determined to deny. Moreover, under the
facts of this case, that concession would amount
to a judicial admission of liability [which would
reduce your defense costs but would also hasten
the day that a jury decides the amount of damages
and punitive damages which should be imposed
against your firm]. Even if you were to make that
judicial admission, I seriously doubt that any
arbitration agreement would be enforced under the
facts in this case, and even it was enforced, I
have had good success in getting NASD arbitrators
to impose punitive damages given compelling facts
[which this
case has in abundance].

If you had timely responded to Ms. Kamei's

Page 3

email to Wingmueller
letters, it is possible that this litigation could
have been avoided. Since you chose to act in the
dilatory manner that is so typical of your
industry, you will now have to pay the price for
doing so. I look forward to seeing you or your
representative in court.

Robert J. Fuller

ps. I prefer to communicate by email as this
avoids the delays inherent in "snail mail". If you
would accommodate this preference by emailing your
reply to me, I would be most appreciative.

---

No banners. No pop-ups. No kidding.
Make My Way your home on the Web -
http://www.myway.com

Attachment: fullerresume.doc (44 KB)      [ Download
]

As AttachmentAs Inline TextMove to Folder-----
Folders ------InboxDraftsSentTrashBulk Mail---- My
Folders ----

< Prev Next >    Back to SentPrint View  Full Header

Make My Way Your Home Page  |  Spread the Word  |  We're
Hiring

My Settings: Overview | Search | Email | Chat |
Portfolio | Calendar | Groups | Profile

IMPORTANT: We do not present our users with pop-ups or any
other non-contextual advertising. Nor do we send email to
our users. If you see or receive one of these items, it is
coming from an outside source, either as a result of something

A.G. EDWARDS & SONS, INC.
One North Jefferson
St. Louis, MO 63103

314/955-3000



EDWARDS.

May 23, 2006

Jan M. Kamei
1510 Cranford Drive
Garland, Texas 75041

   Re: The Dogwood Trust

Dear Ms. Kamei:

I have had a chance to review your correspondence as well as the file in the above-referenced matter. I find no documents in the file to suggest that James Fuller ever resigned as Trustee in this matter. In addition, James Fuller has recently acknowledged that he wishes to remain as the Trustee in this matter. As such, A.G. Edwards cannot recognize you as a successor Trustee. If you have documents proving you were properly appointed as a successor Trustee in this matter, please forward them immediately.

If I do not receive such documents from you within the next thirty (30) days, I can only assume that you have no such documents and I will close this inquiry. Please direct any future comments or correspondence regarding this matter to me.

Very truly yours,

Dennis J. Capriglione
Litigation Counsel

DJC/bwe



# DALLAS COUNTY CIVIL DISTRICT COURT COVER SHEET

~~FILED~~

STYLED *Dogwood Institute v. AG Edwards* ~~2006 JUL 26 AM 10:05~~

This Civil Cover Sheet must be completed, filed and served with every petition. The information should be the best available at the time of filing, understanding that the information may change before trial. <u>This information does not constitute a discovery request, response, or supplementation, and is not admissible at trial.</u> Check (✔) all applicable boxes.

DALLAS CO., TEXAS
DEPUTY

| Plaintiff(s) | Defendant(s) (list separately) |
|---|---|
| ☐ Pro Se *The Dogwood Institute et al* | *A.G. Edwards & Sons, Inc* |
| Address *8587 Southwestern Blvd 2429* | *et al* |
| *Dallas TX 75206* | |
| Telephone/Fax *972-834-0852* | |
| E-mail *robert.fuller@myway.com* | |
| ☐ Attorney for Plaintiff(s) | |
| State Bar No. *07523980* | |
| Address *8587 Southwestern Blvd 2429* | |
| *Dallas TX 75206* | |
| Telephone/Fax *972-834-0852* | |
| E-mail *robert.fuller@myway.com* | |

---

## PARTIES *MUST* CHECK ONE CASE TYPE AND MAY CHECK ONE SUB-TOPIC

| | | |
|---|---|---|
| ☐ Administrative Appeal | ☐ **Termination** | ☐ Partition |
| ☐ Bill of Review | ○ Other Employment | ☐ Quiet Title |
| ☐ Certiorari | ☐ Foreclosure | ☐ Trespass/Try Title |
| ☐ Code Violations | ☐ R 736 | ○ Other Property |
| ☐ Condemnation | ☐ Other than R 736 | ☐ Prejudgment Remedy |
| ☐ Construction | ☐ Foreign Judgment | ☐ Seizure/Forfeiture |
| ☐ Debt/Contract | ☐ Insurance | ☐ Tax |
| ☐ Defamation | ☐ Mass Tort/MDL/Rule 11 | |
| ☑ Other Commercial Dispute | ☐ Asbestos | ☐ Tax Appraisal |
| ☐ Antitrust/Unfair Comp | ☐ Baycol | ☐ Tax Delinquency |
| ☐ Consumer/DTPA | ☐ Breast Implant | ☐ Tax Land Bank |
| ☐ Franchise | ☐ Firestone | ☐ Tax Personal |
| ☐ Fraud/Misrep | ☐ Phen-Fen | ☐ Tax Real |
| ☐ Intellectual Property | ☐ Silica | ☐ Workers Comp |
| ☐ Non-Competes | ○ Other Multi-Party | ☐ Other |
| ☐ Partnership | ☐ Motor Vehicle Accident | |
| ☐ Securities/Stock | ☐ Other Personal Injury | **ADDITIONAL SUB-TOPICS** |
| ☐ Tortious Interference | ☐ Assault/Battery | ☐ Attachment |
| ☑ Other Commercial | ☐ Product | ☐ Bill of Discovery |
| ☐ Discipline | ☐ Premises | ☐ Class Action |
| ☐ Discovery | ☐ Other Personal Injury | ☐ Declaratory Judgment |
| ☐ Rule 202 Depositions | ☐ Name Change | ☐ Garnishment |
| ☐ Commissions | ☐ Post-Judgment | ☐ Interpleader |
| ☐ Subpoena | ☐ Professional Liability | ☐ License |
| ☐ Letters Rogatory | ☐ Accounting | ☐ Mandamus |
| ○ Other Discovery | ☐ Legal | ☐ Receiver |
| ☐ Employment | ☐ Med/Mal | ☐ Sequestration |
| ☐ Discrimination | ☐ Other Prof. Liab. | ☐ Severance |
| ☐ Retaliation | ☐ Property | ☐ TRO/Injunction |
| | | ☐ Turnover |

---

## DISCOVERY LEVEL    ☐ Level 1    ☑ Level 2    ☐ Level 3

### Local Rule 1.08 Certification (Must be completed and signed)

☑ This case is not subject to transfer pursuant to Local Rule 1.07, OR

☐ This case is related to another case filed or disposed of in Dallas County:

Court: _____ Style: _____ Case No. _____

*[signature]*

Attorney's Signature

RECYCLED ®

80000 SERIES
30% P C W

**JIM HAMLIN**
DALLAS COUNTY DISTRICT COURT



FILED

2006 JUL 24 AM 10: 11



JIM HAMLIN
DISTRICT CLERK
DALLAS CO. TEXAS
DEPUTY

CAUSE NO. _06-06.976_

| | | |
|---|---|---|
| _The Dogwood Institute, et al_ | * | IN THE DISTRICT COURT |
| **PLAINTIFF** | * | |
| | * | |
| VS | * | _95th_ JUDICIAL DISTRICT |
| | * | |
| _AG Edwards & Sons Inc., et al_ | * | |
| **DEFENDANT** | * | DALLAS COUNTY, TEXAS |

## ENTER DEMAND FOR JURY

JURY FEE PAID BY:

<u>PLAINTIFF</u>  /  **DEFENDANT**

FEE PAID:  $ 30.00

RECORDED IN VOLUME __J23__  PAGE __54__

RECYCLED♻

80000 SERIES
30% P.C.W

# AFFIDAVIT OF SERVICE

**State of Texas**                          **County of Dallas**                    **95th District Court Court**

Case Number: DC-06-06976-D

2006 JUL 26 PM 1:27

~~HAMLIN~~
~~DISTRICT CLERK~~
~~DALLAS CO. TEXAS~~
~~DEPUTY~~

Plaintiff:
**THE DOGWOOD INSTITUTE, ETAL**
vs.
Defendant:
**A.G. EDWARDS & SONS INC. ETAL**

For:
Robert Fuller
Robert J. Fuller Attorney At Law
329 Brooks Lane
Coppell, TX 75019

Received by BARRERA'S PROCESS SERVICE on the 24th day of July, 2006 at 11:00 am to be served on **A.G. Edwards & Sons Inc. Carla Ulrichherring, 13727 Noel Rd., Dallas, TX 75240**.

I, Amos E. Martinez, being duly sworn, depose and say that on the **24th day of July, 2006** at **3:10 pm**, I:

**INDIVIDUAL/PERSONAL:** served by delivering a true copy of the **Citation and Original Petition** to: **A.G. Edwards & Sons Inc. Carla Ulrichherring** at the address of: **13727 Noel Rd., Dallas, TX 75240** with the date and hour of service endorsed thereon by me, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I can edit this block to my area's standards and have seven different declarations if need be.

Subscribed and Sworn to before me on the 25th day
of July, 2006 by the affiant who is personally known to
me.

_____
NOTARY PUBLIC

> STEPHANIE A. SMITH
> Notary Public, State of Texas
> My Commission Expires
> April 13, 2009

_____
**Amos E. Martinez**
Process Server

**BARRERA'S PROCESS SERVICE**
**3024 Tennessee St.**
**Dallas, TX 75224**
**(214) 577-0375**

Our Job Serial Number: 2006000451

Service Fee: $50.00

Copyright © 1992-2006 Database Services, Inc - Process Server's Toolbox V5 9g

# FORM NO. 353-3 – CITATION
## THE STATE OF TEXAS

**To:**
**A. G. EDWARDS & SONS INC**
**13727 NOEL RD**
**DALLAS TX 75240**

2006 JUL 26 PM 1:28

JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **95th District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said Plaintiff being **THE DOGWOOD INSTITUTE, ET AL**

Filed in said Court **on this the 24th day of July, 2006** against

**A. G. EDWARDS & SONS INC, ETAL**

For suit, said suit being numbered **DC-06-06976-D**, the nature of which demand is as follows:
Suit On COMMERCIAL DISPUTE etc. as shown on said petition , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.
WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this **24th day of July, 2006**

By _____, Deputy
RICHARDSON

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas, County Texas

---

ATTY

# CITATION

No. : **DC-06-06976-D**

**THE DOGWOOD INSTITUTE, ETAL**
vs.
**A. G. EDWARDS & SONS INC, ETA**

ISSUED
**on this the 24th day of July, 2006**

JIM HAMLIN
Clerk District Courts,
Dallas County, Texas

By **EVA RICHARDSON**, Deputy

Attorney for Plaintiff
**ROBERT J FULLER**
**329 BROOKS LANE**
**COPPELL    TX   75019**
**972-834-0852**

DALLAS COUNTY CLERK
FEES
PAID



## AFFIDAVIT OF SERVICE

**State of Texas**          **County of Dallas**          FILED  95th District Court Court

Case Number: DC-06-06976-D

2006 JUL 26 PM 1: 27

Plaintiff:
**THE DOGWOOD INSTITUTE, ETAL**
vs.
Defendant:
**A.G. EDWARDS & SONS INC. ETAL**

~~HAMLIN~~
~~DISTRICT CLERK~~
~~DALLAS CO. TEXAS~~
~~DEPUTY~~

For:
Robert Fuller
Robert J. Fuller Attorney At Law
329 Brooks Lane
Coppell, TX 75019

Received by BARRERA'S PROCESS SERVICE on the 24th day of July, 2006 at 11:00 am to be served on **Carla Ulrichherring, 13727 Noel Rd., Suite 100, Dallas, TX 75240**.

I, Amos E. Martinez, being duly sworn, depose and say that on the **24th day of July, 2006 at 3:10 pm, I:**

**INDIVIDUAL/PERSONAL:** served by delivering a true copy of the **Citation and Original Petition** to: **Carla Ulrichherring** at the address of: **13727 Noel Rd., Suite 100, Dallas, TX 75240** with the date and hour of service endorsed thereon by me, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I can edit this block to my area's standards and have seven different declarations if need be.

Subscribed and Sworn to before me on the 25th day
of July, 2006 by the affiant who is personally known to
me.

_____
NOTARY PUBLIC

```
STEPHANIE A. SMITH
Notary Public, State of Texas
My Commission Expires
April 13, 2009
```

_____
**Amos E. Martinez**
Process Server

**BARRERA'S PROCESS SERVICE**
**3024 Tennessee St.**
**Dallas, TX 75224**
**(214) 577-0375**

Our Job Serial Number: 2006000452

Service Fee: $50.00

Copyright © 1992-2006 Database Services, Inc - Process Server's Toolbox V5 9g

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To:**
CARLA ULRICHHERRING
13727 NOEL ROAD SUITE 100
DALLAS TX 75240

2006 JUL 26 PM 1:27

JIM HAMLIN
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

**GREETINGS:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **95th District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said Plaintiff being **THE DOGWOOD INSTITUTE**

Filed in said Court **on this the 24th day of July, 2006** against

**A. G. EDWARDS & SONS INC, ETAL**

For suit, said suit being numbered **DC-06-06976-D**, the nature of which demand is as follows:
Suit On COMMERCIAL DISPUTE etc. as shown on said petition , a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this **24th day of July, 2006**

ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas

By_____, Deputy
EVA RICHARDSON

---

**ATTY**

# CITATION

No. : **DC-06-06976-D**

**THE DOGWOOD INSTITUTE, ETAL**
*vs.*
**A. G. EDWARDS & SONS INC, ETAL**

ISSUED
**on this the 24th day of July, 2006**

JIM HAMLIN
Clerk District Courts,
Dallas County, Texas

By **EVA RICHARDSON**, Deputy

Attorney for Plaintiff
**ROBERT J FULLER**
**8587 SOUTHWESTERN BLVD.,**
**#2429**
**DALLAS, TX 7506**
**972-834-0852**

DALLAS COUNTY CONSTABLE
FEES
PAID

FEES NOT
PAID

NO. 06-06976

| | | |
|---|---|---|
| THE DOGWOOD INSTITUTE, | § | IN THE DISTRICT COURT |
| TRUSTEE OF THE DOGWOOD TRUST, | § | |
| individually and on behalf of classes | § | |
| similarly situated, and | § | |
| ROBERT J. FULLER, | § | |
| | § | 95TH JUDICIAL DISTRICT |
| Plaintiffs | § | |
| vs. | § | |
| | § | |
| A. G. EDWARDS & SONS, INC., EATON | § | DALLAS COUNTY, TEXAS |
| VANCE GROUP OF FUNDS, PHOENIX | § | |
| INVESTMENT PARTNERS, LTD., VAN | § | |
| KAMPEN INVESTOR SERVICES, INC., | § | |
| CARLA ULRICHHERRING, DENNIS | § | |
| CAPRIGLIONE, JAMES WOODROW | § | |
| FULLER, JR., individually and as Trustee | § | |
| of the Red River Trust, and MELISSA | § | |
| FULLER | § | |
| | § | |
| Defendants. | § | JURY DEMANDED |

## PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION AND SANCTIONS

Plaintiffs, The Dogwood Institute ("Institute"), in its capacity as trustee of the Dogwood Trust ("the Trust"), and Robert J. Fuller ("Bob"), file this motion for temporary injunction against Defendants, A. G. Edwards & Sons, Inc. ("Edwards"), Eaton Vance Group of Funds ("Eaton"), Phoenix Investment Partners, Ltd. ("Phoenix"), Van Kampen Investor Services, Inc. ("Kampen"), Carla Ulrichherring ("Carla"), Dennis Capriglione ("Dennis"), and James Woodrow Fuller, Jr., individually and as trustee of the Red River Trust ("Jim"), and for sanctions against Defendants Edwards and Dennis, and in support thereof would respectfully show this Honorable Court as follows:

## FACTUAL BACKGROUND

1. The facts recited in the letters attached as Exhibits A and B hereto are incorporated by reference as if set forth word for word here.

2. The following persons and entities have been trustee of the Trust during the dates indicated: (1) Michael Ginsburg [Bob's attorney who helped Bob draft and establish the trust] inception to 10/21/98, (2) Jim 10/21/98 to 6/25/01, (3) Lilith Company [a now defunct Texas corporation of which Bob was the sole officer and director] 6/25/01 to 4/11/06, (4) Jan M. Kamei [an individual who resides in Garland TX] 4/11/06 to 6/01/06, and (5) the Dogwood Institute 6/02/06 to present.

2 Prior to the establishment of the Trust, and again prior to his appointment as trustee of the Trust, Jim entered into a binding oral agreement with Bob in which Jim promised to faithfully follow Bob's instructions with respect to the investments and distributions of the Trust's assets. Jim made these contractual promises in recognition of the facts that Bob had funded the Trust from his personal funds, that Bob understood investments, and that Jim had little or no knowledge or experience with respect to investments. Jim also promised Bob that Jim would repay to the Trust any distributions made to Jim as soon as Jim was financially able to do so, and that, in the event that Bob needed some or all of the funds that Bob had used to establish the Trust, Jim would distribute the funds to himself and then give them to Bob. Bob reasonably relied on these promises in establishing the Trust and then again in asking Ginsberg to resign and appoint Jim as trustee of the Trust. Due to their closeness [at that time] as brothers and the trust and confidence that Bob felt with respect to Jim and his promises, the relationship between Jim and Bob was a fiduciary relationship in fact and in law such

**Plaintiffs' Motion for Temporary Injunction and for Sanctions - Page 2**

that Jim owed fiduciary duties to Bob.

3. Jim is a practicing PhD psychotherapist and from time to time has purported to give Bob advice and counseling with respect to Bob's psychological condition. Jim's attempts to diagnose and counsel Bob have been neither invited nor appreciated by Bob, who believes that Jim lacks the objectivity [and perhaps the competence] to diagnose or treat Bob. Bob has expressly and repeatedly instructed Jim to stop trying to act as Bob's therapist and to maintain absolute confidentiality as to all third parties with regard to Jim's purported diagnoses of Bob. Bob's alleged psychological condition is not relevant to any conceivable claim or defense in this lawsuit. Bob's rights with respect to the therapist/patient privilege are asserted here and nothing in this petition or otherwise is intended to waive, in whole or in part, Bob's right to maintain that privilege. However, on information and belief, Jim has repeatedly violated that privilege by disclosing to persons other than Bob Jim's purported diagnoses of Bob.

4. Carla and Dennis are employees of Edwards and at all relevant times were acting within the scope of that employment. Accordingly, Edwards is fully liable for the actions and omissions of Carla and Dennis under the doctrine of *respondeat superior*. Dennis ignored and refused to comply with Bob's request and instruction to Edwards not to communicate directly with the former trustee of the Trust, Jan Kamei, and instead to direct all such communication to Bob as Jan's attorney. Attached as Exhibit C and incorporated by reference is an email sent by Bob on May 7, 2006 to the officer of Edwards who was at that time in charge of this matter. That communication plainly stated: "Please do not contact Ms. Kamei directly. As I am her attorney on this matter, all communication must be directed to or through me." Exhibit C also plainly stated that

**Plaintiffs' Motion for Temporary Injunction and for Sanctions - Page 3**



a lawsuit would be filed soon against Edwards regarding the assets of the Trust. Moreover, prior correspondence to Edwards from Bob and from Jan had made it clear that Jan was represented by Bob with respect to this matter. Attached hereto as Exhibit D and incorporated by reference is a letter sent by Dennis directly to Jan [without even a courtesy copy to her attorney Bob] on May 23, 2006, in flagrant violation of the Texas and Missouri rules governing the ethical conduct of attorneys. Exhibit D is a blatant attempt to obtain pre-lawsuit discovery directly from a represented party by circumventing her attorney and is - on its face - outrageous. Bob requests that this Court determine appropriate sanctions against Dennis and Edwards for this unethical conduct, and that the jury in this matter be informed at the outset of the trial that such conduct occurred and is unethical.

5. The Institute made demands on Edwards, Eaton, Phoenix and Kampen for delivery of the Trust's assets. Each of these defendants refused to deliver the assets to the new trustee. As of the time that the petition in this case was filed, all of the Trust's assets were still frozen and unavailable to the current trustee, who consequently has no way to manage the Trust's investments, to make distributions to the beneficiaries, or to pay the back taxes owed by the Trust.

TEMPORARY INJUNCTIVE RELIEF

6. Plaintiffs seek temporary injunctive relief as follows:

a. Prohibiting Jim from pretending to be the trustee of the Trust or the holder of any rights or powers under the Trust, and from otherwise interfering with the contractual relationships of the Trust or with the assets of the Trust.

b. Requiring Edwards, Eaton, Phoenix, and Kampen to immediately liquidate all

**Plaintiffs' Motion for Temporary Injunction and for Sanctions - Page 4**

assets of the Trust and deliver the proceeds to Institute.

c. Prohibiting Dennis from directly contacting persons whom he knows to be represented by counsel with respect to the subject of the contact and from otherwise violating the ethical rules governing attorneys.

d. Requiring Jim to marshal all assets of the Trust and all proceeds thereof in his possession or control, including but not limited to all assets which were transferred to the Red River Trust in 2001, and to immediately deliver all such assets and proceeds to Institute.

e. Requiring all defendants to change their records to reflect the fact that Institute is the sole trustee of the Trust and that Bob has the sole power to remove and appoint trustees of the Trust.

f. Prohibiting Jim from purporting to act as Bob's therapist, from discussing with anyone [including his attorneys] Jim's alleged views of Bob's past or present psychological condition, and from violating the therapist/patient privilege with respect to any of Jim's patients.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for temporary injunctive relief and for sanctions as set forth above, and for all other relief to which plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

By _____
Robert J. Fuller
TBA No. 07523980
8587 Southwestern Blvd # 2429
Dallas, Texas 75206
(972) 834-0852

### ATTORNEY FOR PLAINTIFFS

### AFFIDAVIT

I, Robert J. Fuller, being duly sworn, affirm under oath that I have personal knowledge of the facts set forth in the foregoing motion and that those facts are true.

_____
Robert J. Fuller

Subscribed and sworn to before me this 1st day of August, 2006.

_____
Notary Public



ZACH ARMSTRONG
Notary Public
STATE OF TEXAS
My Comm Exp. November 7, 2009

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been sent by certified mail, return receipt requested, to each of the defendants at their addresses listed in paragraphs 4 through 10 of Plaintiffs' Original Petition herein, on this 1st day of August, 2006.

_____
Robert J. Fuller

### NOTICE OF HEARING

Defendants are hereby notified that a hearing on the foregoing motion has been set in the 95th District Court of Dallas County, Texas, commencing at 1:30 p.m. on September 14, 2006.

**Plaintiffs' Motion for Temporary Injunction and for Sanctions - Page 6**

## CERTIFICATE OF CONFERENCE

Because no attorneys have yet entered an appearance in this action, and because attempting to confer with non-lawyers regarding legal issues before they have the opportunity to retain counsel would be inappropriate, no conference with regard to the facts and legal issues raised in the foregoing motion has yet been held. However, the undersigned counsel for plaintiffs promises to initiate communications regarding the facts and relief requested to determine if stipulations can be made within two business days of receiving notice of defendants' counsels' appearances.

Robert J. Fuller

1510 Cranford Drive
Garland TX 75041

April 7, 2006

Carla Ulrichherring
A, G. Edwards & Sons, Inc.
13727 Noel Road, Suite 100
Dallas, TX 75240

Carla,

I received your letter of April 5, 2006. It is inaccurate and misleading in several respects. In addressing the primary inaccuracies, I will briefly review for you certain relevant facts.

I formed the Dogwood Trust ("the Trust") in March, 1997, and funded it entirely with my personal funds. I drafted the Trust Agreement with the assistance of Michael Ginsburg, my attorney and the original trustee. I defined the term "Grantor" in the first paragraph of the Trust Agreement as "Robert J. Fuller", i.e., as me, an individual and natural person. In Article II, section 2.1 of the Trust Agreement, I provided that "the Grantor" could not serve as trustee. Nowhere in the Trust Agreement is there any mention of the term "form of Grantor" used in your letter, nor does the context of the Trust Agreement in any way suggest that such a term would or should be implied as an expansion of the defined term "Grantor." Therefore, the Trust Agreement does NOT prohibit "a company form related to the Grantor" (whatever that vague phrase in your letter may mean) from serving as trustee. Even if there was some arguable ambiguity in this regard (which there is not), Texas law is well settled that the Trust Agreement must be construed to give effect to the intention of the drafter, i.e., me. I am the only person who can speak to that intent and assure you that the intent was to exclude only me, a natural person, from serving as trustee, and not to exclude any related entities from so serving.

As trustee, Ginsberg charged fees. To avoid that expense, I asked Ginsberg to resign and asked my brother, James W. Fuller, Jr. ("Jim") to serve as trustee. You may recall that, in the summer of 1999, Jim and I had a dispute about the handling of the trust and that Jim moved the Trust assets to a Richmond VA broker in or about August 1999. You may also recall that Jim and you concealed that move from me until I called you to inquire about the non-receipt of account statements. In the summer of 2001, Jim and I resolved that dispute in the following manner: (1) about 40% of the assets of the Trust were transferred to a newly formed trust in Virginia (the Red River Trust) with Jim as trustee and with Jim and his daughter as beneficiaries of the Red River Trust, (2) the remainder of the Trust's assets were transferred back to A. G. Edwards, and (3) Jim signed and faxed to me a document in which he resigned as trustee of the Trust and irrevocably assigned to me all of his rights and powers under the Trust (other than his rights and powers as the trustee prior to resignation), "including but not limited to all rights and powers under Article II of the Trust, all rights and powers under Section 3.3 of the Trust,

and all rights and powers under Article VIII of the Trust." On June 25, 2001, I executed a document in which I accepted the assignment of rights and powers from Jim, acknowledged his resignation as trustee, and appointed Lilith Company, a Texas corporation, as the successor trustee. On August 4, 2001, I faxed to you copies of these two documents and requested that you change the A. G. Edwards records to reflect the new trustee. Notwithstanding the fact that Jim's resignation and assignment of rights and powers stated: "Delivery of this document to Robert Jack Fuller shall be complete upon transmission by facsimile to him, and the facsimile of this document may be treated as an original of this document for all purposes", you declined to change the A. G. Edwards records unless and until you received a signed (blue ink) original of Jim's resignation and assignment of rights and powers. I thought at the time that Jim had also mailed an original of that document to me and told you that I would look for it. In the meantime, the Trust's remaining assets were in your hands and I saw no urgency to supplying the original document.

I never found the original document. Perhaps it was lost in my move to Garland. I was reluctant to contact Jim in 2001 to request another original because the dispute and its resolution were acrimonious and personally painful to me. However, with the passage of time and recent developments in the market, I decided that the records must be cleared so that the Trust's assets can be appropriately managed. To that end, I recently wrote to Jim and requested that he send to you an original of the document that he signed in 2001. I gather from your letter that he called you upon receipt of my request. I do not know whether in that conversation, Jim acknowledged or denied having signed the resignation and assignment of rights and powers in 2001. Please confirm in your reply to this letter what Jim said about that subject.

As you should know from handling the accounts of Lilith Company, its stock is and always has been owned by the Trust, not by me personally. The implication in your letter that Lilith could be considered to be a "form of the Grantor" is absurd and has no basis in law, and your reference to the Patriot Act (which was not passed until after the events at issue) is unnecessarily offensive. In any event, I intend to appoint a different trustee as soon as you acknowledge my power to do so. That trustee will then move all of the Trust's assets to a new broker.

I am sending a copy of this letter to Jim. Hopefully, Jim and you can resolve the documentation issue to your satisfaction, and you will notify me in the near future that the issue is resolved. However, if I do not receive by May 1, 2006, notice from you that the issue has been resolved and that you will accept my appointment of a new trustee (conditioned, of course, upon your receipt of originals of that appointment and the new trustee's acceptance thereof), I will have no alternative to joining both Jim and A. G. Edwards in a declaratory judgment action to secure a judicial resolution of the issue. I

would prefer not to have to do so, among other reasons because that action would cost Jim and you attorney's fees and costs, both for your own attorneys and for mine under the Texas Declaratory Judgment Act.


                              Sincerely,


                              Robert J. Fuller


Cc.  James W. Fuller, Jr.
2410 Larkwood Road
Richmond VA 23294

# Jan M. Kamei
1510 Cranford Drive
Garland TX 75041

April 20, 2006

Douglas L. Kelly                                    via Certified Mail, RRR
Director of Law and Compliance
A. G. Edwards & Sons, Inc.
One North Jefferson
St. Louis MO 63103

Re: Irresponsible conduct of your agent, Carla Ulrichherring, with respect
to the Dogwood Trust

Dear Mr. Kelly,

It is my understanding that AG Edwards has held and invested the assets of a Texas trust,
known as the Dogwood Trust, since its inception in 1997. Carla Ulrichherring got this
business due to her personal friendship with the Grantor of the trust, Robert J. Fuller
("Bob"), who is also my attorney. As the recently appointed trustee and as assistant to
one of the most respected estates and trust lawyers in Texas, I have reviewed the history
of the handling of this account and am frankly astounded and appalled. Ms.
Ulrichherring's bizarre and grossly negligent conduct with respect to this account, and
her refusal to timely respond to communications and reasonable requests for information
and action regarding this account, have occasioned this letter to you. For the reasons set
forth below, I ask that Ms. Ulrichherring be immediately removed from all power and
responsibility with respect to this account and that a more rational person take charge of
this matter on behalf of AG Edwards.

I have enclosed copies of prior correspondence to assist you in understanding this matter
and will briefly summarize its history for you. Shortly after the trust's inception, Bob
asked the original trustee (Bob's attorney) to resign and appointed Bob's brother, James
W. Fuller, Jr. ("Jim"), as trustee to avoid the fees charged by the original trustee every
time he handled a document. Jim is a psychologist who lives in Virginia. Jim gave Bob
a broad power of attorney to act on his behalf and signed a number of blank authorization
forms for trading in the trust's account because Jim has no experience or understanding
of trusts or investments. Also, because Bob had funded the trust entirely from his
earnings as a commercial litigator (including a myriad of federal and state securities
fraud cases and NASD arbitrations he has handled over the past two decades) and was a
sophisticated investor, Jim agreed that Bob should make all the decisions with respect to
this account. Bob set up the trust's balance sheets and worked with his accountant to
prepare the trust's first federal tax return.

Jim and Bob had been extremely close, even for brothers, since the 60's. Unfortunately,
a few months after Jim was appointed trustee, Jim got mad at Bob. In the summer of

1999, at a time when Jim knew that Bob was incommunicado on a horsepack trip into the Idaho wilderness, Jim had Ms. Ulrichherring move the trust assets to a Virginia brokerage and somehow convinced Ms. Ulrichherring to help Jim conceal that move from Bob until Bob called Ms. Ulrichherring several months later to inquire about the non-receipt of account statements and Ms. Ulrichherring had no option but to admit to what she and Jim had done. As you can only imagine, Bob was both livid and hurt. The fight between these two former best friends and brothers was bitter, emotional and protracted.

In the summer of 2001, Jim and Bob resolved their dispute over the handling of the trust's assets in the following manner: (1) about 40% of the assets of the Trust were transferred to a newly formed trust in Virginia with Jim as trustee and with Jim and his daughter as beneficiaries, (2) the remainder of the Trust's assets were transferred back to Ms. Ulrichherring at AG Edwards, and (3) Jim signed and faxed to Bob a document in which Jim resigned as trustee of the Dogwood Trust and irrevocably assigned to Bob all of his rights and powers under that trust, including the power to remove and appoint successor trustees. On June 25, 2001, Bob executed a document in which he accepted the assignment of rights and powers from Jim, acknowledged Jim's resignation as trustee, and appointed Lilith Company, a Texas corporation, as the successor trustee. On August 4, 2001, Bob faxed to Ms. Ulrichherring copies of these two documents and requested that she change the A. G. Edwards records to reflect the new trustee. At that time, Bob was the president of Lilith Company (which is now defunct).

Notwithstanding the fact that Jim's resignation and assignment of rights and powers stated: "Delivery of this document to Robert Jack Fuller shall be complete upon transmission by facsimile to him, and the facsimile of this document may be treated as an original of this document for all purposes", Ms. Ulrichherring refused to change the AG Edwards records unless and until she received a signed (blue ink) original of Jim's resignation and assignment of rights and powers. However, despite the fact that – at a minimum - Ms. Ulrichherring had notice that the trustee had been changed, she apparently never contacted Jim – the person that her records listed as the trustee – to verify his continuing authority (or lack thereof) to act on behalf of the trust, or to request that Jim send to her the blue ink original that she supposedly needed. Jim and Bob were not communicating with each other and Bob was unable to locate a blue ink original of Jim's resignation and assignment of rights and powers.

Now this sad tale gets really bizarre. For almost five years, Ms. Ulrichherring did absolutely nothing to remedy this situation, Jim took no actions that might have implied that he thought he was still the trustee, and Bob felt helpless to do anything because Jim wasn't communicating with him and Ms. Ulrichherring was similarly uncooperative. During that time, AG Edwards continued to earn fees on Ms. Ulrichherring's recommended investments of the trust's assets, but the new trustee (Lilith) had no way to mange the trust's investments or even to pay federal income taxes for the trust from its funds. Finally, due to his concern over recent developments in the market vis-à-vis the trust's investments, as well as the fact that the trust hadn't paid taxes in five years, Bob wrote to Jim and requested that he send to Ms. Ulrichherring a blue ink original of the

document that Jim signed in 2001. Copies of that letter and of the ensuing correspondence are enclosed. It appears from her April 5 letter to Bob that Jim telephoned Ms. Ulrichherring when Jim received Bob's letter, but Ms. Ulrichherring has ignored Bob' repeated requests to disclose the substance of that telephone conversation. As pointed out in Bob's response, Ms. Ulrichherring's letter of April 5, 2006 was inaccurate, misleading and plainly offensive. Her motives for her bizarre conduct are not readily apparent, but it does raise unsavory suspicions about what she and Jim have been plotting behind Bob's back.

On April 11, 2006, I was appointed successor trustee, accepted that appointment and sent a certified letter to Ms. Ulrichherring demanding the immediate delivery of all assets of the trust in her possession or control. Nine days have now passed without even the courtesy of a response from her.

I am sure that you will understand why, given the history of this matter, without waiving any other claims on behalf of the trust, I will hold AG Edwards responsible for any diminution in market value of the trust assets after the receipt by Ms. Ulrichherring of my demand letter. Due to his past friendship with Ms. Ulrichherring, Bob has urged me to avoid suing you, but his patience is wearing thin and I have no friendship with her to restrain me. Perhaps your prompt action might defuse this situation before it ends up in the court.

Sincerely,

Jan M. Kamei, Trustee of the Dogwood

Trust

Cc. Attorney Robert J. Fuller w/o enclosures
    Carla Ulrichherring w/o enclosures

email to Wingmueller
As AttachmentAs Inline TextMove to Folder-----
Folders ------InboxDraftsSentTrashBulk Mail---- My
Folders ----

Message is not flagged. [ Flag for Follow Up ]
Message has been forwarded in the past.

Date:  Sun 07 May 2006 06:52:30 PM EDT
From:  bob <robertjfuller@myway.com>
[ Add to Address Book | Block Address | Report as Spam ]
To:  <websupport@agedwards.com>
Subject:  Please forward to Jerry Wingbermuehle,
Associate Vice President & Service Representative

Mr. Wingbermuehle,

I received a copy of your May 3, 2006 letter to
Jan M. Kamei, the current trustee of the Dogwood
Trust [your client]. In that letter you stated
that you would contact her in the near future.
Please do not contact Ms. Kamei directly. As I am
her attorney on this matter, all communication
must be directed to or through me.

Ms. Kamei's letter to Doug Kelley of April 20 was
apparently referred to you. I have personal
knowledge of all facts set forth in Ms. Kamei's
letter and can assure you that those facts are
both true and provable. Ms. Ulrichherring has
still not responded to Ms. Kamei's letter of April
11 demanding delivery of the trust's assets.
Instead, Ms. Ulrichherring has apparently recently
changed the address to which the trust's
statements from Eaton Vance, Phoenix Funds and Van
Kampen are delivered so that the current trustee
[Ms. Kamei] will no longer receive those
statements, which will now be delivered instead to
the former trustee [James Woodrow Fuller, Jr., who
resigned in 2001]. This was done in spite of Ms.
Kamei's explicit direction to Ms. Ulrichherring
that she take no action with respect to the trust
other than to dleiver its assets.

Despite my former friendship with Ms.
Ulrichherring, my patience with her irrational
conduct has ended. I am preparing a petition which
will be filed in state court in Dallas TX within
the next week or so, which will include claims
against A G Edwards and Ms. Ulrichherring for
breach of fiduciary duty, gross negligence,
conversion, civil conspiracy and securities fraud,
and which will seek both compensatory and punitive
damages from a Texas jury, in addition to a
declaratory judgment regarding the rights of the
current trustee and the 2001 assignment of the
powers of appointment and removal of trustees. In
your reply to this email, please provide the name
and address of your registered agent for service
of process in Texas, or if you prefer, I will
serve the A G Edwards summons on Ms. Ulrichherring

Page 2

email to Wingmueller
as your agent at the same time that she is served
personally.

From my experience in both representing and suing
brokerage firms, I suspect that you may be asked
to evaluate your firm's potential exposure in this
matter. I can provide some guidance in this
regard. In 23 years of trying jury cases, I have
never had a jury not do what I asked them to do
and I think a Dallas jury will love this case.

I have attached a brief cv which reflects my
experience and includes all of my contact
information. My very first jury trial - in 1983,
six months out of law school - was against a
regional broker/dealer in Arkansas. They did not
take me seriously, possibly because I was not an
experienced trial lawyer at that time. That was a
mistake. About 2 years later I had the pleasure of
representing that firm's creditors in its SIPIC
liquidation and buying some of its fancy
furnishings at the auction.

When I moved to Dallas in 87, I had the honor of
representing Bear Stearns and several regional
brokerage firms, and I have sued most of the other
national firms at one time or another [although
this is my first suit against your firm].
Currently, I am semi-retired and thus have a lot
of time to devote to this case. I highly recommend
that you budget several hundred thousand dollars
for the defense of this case as I am sure that you
will need it. You should also consider my time at
my normal hourly rate of $300 as a part [albeit a
small part] of your exposure. My best estimate at
this early stage is that your total exposure
excedes $1 million and could exceed $10 million if
punitive damages are imposed.

You may be thinking that the arbitration clause in
your standard client agreement will prevent this
case from getting to a Texas jury. Think again.
Neither James Fuller nor Ms. Kamei signed that
agreement. To enforce that agreement against the
current trustee under a successsor theory, you
would first have to concede that Ms. Kamei is the
current trustee, something that Ms. Ulrichherring
seems determined to deny. Moreover, under the
facts of this case, that concession would amount
to a judicial admission of liability [which would
reduce your defense costs but would also hasten
the day that a jury decides the amount of damages
and punitive damages which should be imposed
against your firm]. Even if you were to make that
judicial admission, I seriously doubt that any
arbitration agreement would be enforced under the
facts in this case, and even it was enforced, I
have had good success in getting NASD arbitrators
to impose punitive damages given compelling facts
[which this
case has in abundance].

If you had timely responded to Ms. Kamei's

Page 3



email to Wingmueller
letters, it is possible that this litigation could
have been avoided. Since you chose to act in the
dilatory manner that is so typical of your
industry, you will now have to pay the price for
doing so. I look forward to seeing you or your
representative in court.

Robert J. Fuller

ps. I prefer to communicate by email as this
avoids the delays inherent in "snail mail". If you
would accommodate this preference by emailing your
reply to me, I would be most appreciative.

---

No banners. No pop-ups. No kidding.
Make My Way your home on the Web -
http://www.myway.com

Attachment: fullerresume.doc (44 KB)      [ Download
]

As AttachmentAs Inline TextMove to Folder-----
Folders ------InboxDraftsSentTrashBulk Mail---- My
Folders ----

< Prev Next >   Back to SentPrint View  Full Header

Make My Way Your Home Page  |  Spread the Word  |  We're
Hiring

My Settings: Overview | Search | Email | Chat |
Portfolio | Calendar | Groups | Profile

IMPORTANT: We do not present our users with pop-ups or any
other non-contextual advertising. Nor do we send email to
our users. If you see or receive one of these items, it is
coming from an outside source, either as a result of something

314/955-3000



May 23, 2006

**EDWARDS.**

Jan M. Kamei
1510 Cranford Drive
Garland, Texas 75041

     Re:   The Dogwood Trust

Dear Ms. Kamei:

I have had a chance to review your correspondence as well as the file in the above-referenced matter. I find no documents in the file to suggest that James Fuller ever resigned as Trustee in this matter. In addition, James Fuller has recently acknowledged that he wishes to remain as the Trustee in this matter. As such, A.G. Edwards cannot recognize you as a successor Trustee. If you have documents proving you were properly appointed as a successor Trustee in this matter, please forward them immediately.

If I do not receive such documents from you within the next thirty (30) days, I can only assume that you have no such documents and I will close this inquiry. Please direct any future comments or correspondence regarding this matter to me.

Very truly yours,

Dennis J. Capriglione
Litigation Counsel

DJC/bwc

# Law Offices of Robert J. Fuller
## 8587 Southwestern Boulevard # 2429
## Dallas, Texas 75206
## (972) 834-0852
## robertjfuller@myway.com

August 2, 2006

| | |
|---|---|
| Carla Ulrichherring<br>A. G. Edwards & Sons, Inc.<br>13727 Noel Road, Suite 100<br>Dallas, Texas 75240 | Eaton Vance Group of Funds<br>101 Sabin Street<br>Pawtucket RI 02860. |
| Dennis Capriglione<br>A. G. Edwards & Sons, Inc.<br>One North Jefferson<br>St. Louis MO 63103. | Phoenix Investment Partners, Ltd.<br>P. O. Box 8301<br>Boston MA 02266-8301 |
| James Woodrow Fuller, Jr.<br>Melissa Fuller<br>c/o John B. Catlett, Jr.<br>Sands Anderson Marks & Miller<br>801 E. Main Street, Suite 1800<br>Richmond, VA 23219-2906 | Van Kampen Investor Services, Inc.<br>C T Corporation<br>1021 Main Street, Suite 1150<br>Houston TX 77002. |
| ALL VIA CERTIFIED MAIL, RRR | |

Re: The Dogwood Institute, et al. v. A. G. Edwards & Sons, Inc., et al.,
Cause No. 06-06976 in the 95th District Court of Dallas County, Texas

Enclosed please find Plaintiffs' Motion for Temporary Injunction and Sanctions, which has been set for hearing at 1:30 p.m. CDT on September 14, 2006. You should give this letter and its enclosure to the attorney who will represent you in this lawsuit as soon as possible. Please do NOT call me with any questions or reply to this letter as I am not permitted to communicate with you beyond this service and notice.

Sincerely,

Robert J. Fuller

CC. w/o enclosures Terri Kilgore, Deputy District Clerk

RECYCLED
80000 SERIES
10% P C W

# CASE SUMMARY
## CASE NO. DC-06-06976

| | | | |
|---|---|---|---|
| THE DOGWOOD INSTITUTE<br>vs.<br>A. G. EDWARDS & SONS INC | § <br> § <br> § <br> § <br> § | Location:<br>Judicial<br>Officer:<br>Filed on: | **95th District Court**<br>**JOHNSON, KAREN**<br>**07/24/2006** |

---

### CASE INFORMATION

Case Type: **COMMERCIAL DISPUTE**
Sub Type: **OTHER COMMERCIAL**

---

### PARTY INFORMATION

*Lead Attorneys*

| | | |
|---|---|---|
| **PLAINTIFF** | **THE DOGWOOD INSTITUTE** | **FULLER, ROBERT J** 972-393-5878 |
| **DEFENDANT** | **A. G. EDWARDS & SONS INC** | |
| | **CAPRIGLIONE, DENNIS** | |
| | **EATON VANCE GROUP OF FUNDS** | |
| | **FULLER, JAMES WOODROW, Jr.** | |
| | **FULLER, MELISSA** | |
| | **PHOENIX INVESTMENT PARTNERS, LTD.,** | |
| | **ULRICHHERRING, `CARLA** | |
| | **VAN KAMPEN INVESTOR SERVICES, INC.,** | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 07/24/2006 | ORIGINAL PETITION (OCA) | |
| 07/24/2006 | ISSUE CITATION | |
| 07/24/2006 | ISSUE CITATION COMM OF INS OR SOS | |
| 07/24/2006 | JURY DEMAND (OCA) | |
| 07/24/2006 | ISSUE CITATION | |
| 07/24/2006 | ISSUE CITATION COMM OF INS OR SOS | |
| 07/24/2006 | JURY DEMAND (OCA)<br>  PLAINTIFF THE DOGWOOD INSTITUTE | *Vol./Book J23,<br>Page54, 1 pages* |
| 07/24/2006 | **CITATION**<br>A. G. EDWARDS & SONS INC     served  07/24/2006<br>ULRICHHERRING, `CARLA     served  07/24/2006 | |
| 07/26/2006 | **CITATION SOS/COI/COH/HAG**<br>EATON VANCE GROUP OF FUNDS     unserved<br>PHOENIX INVESTMENT PARTNERS,     unserved<br>LTD., | |

# CASE SUMMARY
## CASE NO. DC-06-06976

| | | |
|---|---|---|
| | CAPRIGLIONE, DENNIS | unserved |
| | FULLER, MELISSA | served 07/31/2006 |
| | FULLER, JAMES WOODROW, Jr. | unserved |
| 07/27/2006 | **CITATION**<br>VAN KAMPEN INVESTOR SERVICES, INC., | unserved |
| 08/01/2006 | MOTION - TEMPORARY INJUNCTION<br>PLAINTIFF THE DOGWOOD INSTITUTE | |
| 09/14/2006 | **Temporary Injunction** (1:30 PM)  (Judicial Officer: JOHNSON, KAREN) | |

| DATE | FINANCIAL INFORMATION | | |
|---|---|---|---|
| | **PLAINTIFF** THE DOGWOOD INSTITUTE | | |
| | Total Charges | | 709.00 |
| | Total Payments and Credits | | 709.00 |
| | **Balance Due as of 8/11/2006** | | **0.00** |
| 07/24/2006 | Charge | PLAINTIFF THE DOGWOOD INSTITUTE | 217.00 |
| 07/24/2006 | Charge | PLAINTIFF THE DOGWOOD INSTITUTE | 536.00 |
| 07/24/2006 | Adjustment | PLAINTIFF THE DOGWOOD INSTITUTE | (536.00) |
| 07/24/2006 | Charge | PLAINTIFF THE DOGWOOD INSTITUTE | 492.00 |
| 07/24/2006 | PAYMENT (CASE FEES)    Receipt # 43822-2006-DCLK | PLAINTIFF THE DOGWOOD INSTITUTE | (709.00) |

RECEIVED
AUG 1 4 2006

**CIVIL COVER SHEET**

&JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS

The Dogwood Institute, Trustee of The Dogwood Trust, individually and on behalf of classes similarly situated, and Robert J. Fuller

## DEFENDANTS

A.G. Edwards & Sons, Inc., Eaton Vance Group of Funds, Phoenix Investment Partners, Ltd., Van Kampen Investor Services, Inc., et al.

**(b)** County of Residence of First Listed Plaintiff _____ Dallas County, TX _____
(EXCEPT IN U.S. PLAINTIFF CASES)

ORIGINAL

County of Residence of First Listed Defendant _____ Saint Louis County, MO _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert J. Fuller, 8587 Southwestern Blvd. #2429, Dallas, TX 75206
972-834-0852

Attorneys (If Known)
See attachment.

**3-06CV1454-K**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment / ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a), 15 U.S.C. § 77p(c), 15 U.S.C. § 78bb(f)(2), 28 U.S.C. § 1332(d)
Brief description of cause:
Wrongful refusal to trade securities in brokerage account

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)
JUDGE _____
DOCKET NUMBER _____

DATE  8/14/06

SIGNATURE OF ATTORNEY OF RECORD  _Allen S. Sessions_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

ATTACHMENT

**Attorneys for A.G. Edwards & Sons, Inc.; Carla Ulrichherring; and Dennis Capriglione:**

Ellen B. Sessions
JENKENS & GILCHRIST, P.C.
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone:    214-855-4500
Telecopy:    214-855-4300

**Attorneys for Eaton Vance Group of Funds:**

Michael D. Napoli
Texas Bar No. 14803400
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201-2139
Telephone:    (214) 939-4900
Telecopy:    (214) 939-4949

**Attorneys for Phoenix Investment Partners, Ltd.:**

Greg W. Curry
Texas Bar No. 05270300
Katharine B. Richter
Texas Bar No. 24046712
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Telephone:    (214) 969-1251
Telecopy:    (214) 880-3228

**Attorneys for Van Kampen Investor Service, Inc.:**

Mike Stenglein
Texas Bar No. 00791729
DEWEY BALLANTINE LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701-3788
Telephone:    (512) 226-0300
Telecopy:    (512) 226-0333

**Attorneys for James Woodrow Fuller, Jr. and Melissa Fuller:**

Brian W. Clark
Texas Bar No. 24032075
KANE RUSSELL COLEMAN & LOGAN PC
1601 Elm Street, Suite 3700
Dallas, TX 75201
Telephone:     (214) 777-4200
Telecopy:      (214) 777-4299

# United States District Court
## Northern District of Texas

## Supplemental Civil Cover Sheet For Cases Removed
## From State Court

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.**

1.  **State Court Information:**

    Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

    | Court | Court Number |
    |---|---|
    | 95th Judicial District Court of Dallas County, Texas | 06-06976 |

2.  **Style of the Case:** *The Dogwood Institute, Trustee of The Dogwood Trust, individually and on behalf of classes similarly situated, and Robert J. Fuller v. A.G. Edwards & Sons, Inc., Eaton Vance Group of Funds, Phoenix Investment Partners, Ltd., Van Kampen Investor Services, Inc., Carla Ulrichherring, Dennis Capriglione, James Woodrow Fuller, Jr., individually and as Trustee of the Red River Trust, and Melissa Fuller,* 95th Judicial District Court of Dallas County, Texas, Cause No. 06-06976

    Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Cross-Claimant(s) and Third-Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

    | Party and Party Type | Attorney(s) |
    |---|---|
    | The Dogwood Institute, Trustee of The Dogwood Trust, individually and on behalf of classes similarly situated (Plaintiff) | Robert J. Fuller Texas Bar No. 07523980 8587 Southwestern Blvd. #2429 Dallas, TX 75206 (972) 834-0852 |
    | Robert J. Fuller (Plaintiff) | Robert J. Fuller Texas Bar No. 07523980 8587 Southwestern Blvd. #2429 Dallas, TX 75206 (972) 834-0852 |

**Supplemental Civil Cover Sheet**
**Page 2**

A.G. Edwards & Sons, Inc. (Defendant)

Ellen B. Sessions
Texas Bar No. 00796282
Jenkens & Gilchrist,
*A Professional Corporation*
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
(214) 855-4500

Eaton Vance Group of Funds (Defendant)

Michael D. Napoli
Texas Bar No. 14803400
Kirkpatrick & Lockhart Nicholson
Graham LLP
2828 North Harwood Street, Suite 1800
Dallas, TX 75201-2139
(214) 939-4900

Phoenix Investment Partners, Ltd.
(Defendant)

Greg W. Curry
Texas Bar No. 05270300
Katharine B. Richter
Texas Bar No. 24046712
Thompson & Knight LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
(214) 969-1251

Van Kampen Investor Services, Inc.
(Defendant)

Mike Stenglein
Texas Bar No. 00791729
Dewey Ballantine LLP
401 Congress Avenue, Suite 3200
Austin, Texas 78701-3788
(512) 226-0300

Carla Ulrichherring (Defendant)

Ellen B. Sessions
Texas Bar No. 00796282
Jenkens & Gilchrist,
*A Professional Corporation*
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
(214) 855-4500

**Supplemental Civil Cover Sheet**
**Page 3**

Dennis Capriglione (Defendant)

Ellen B. Sessions
Texas Bar No. 00796282
Jenkens & Gilchrist,
*A Professional Corporation*
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
(214) 855-4500

James Woodrow Fuller, Jr., individually
and as Trustee of the Red River Trust
(Defendant)

Brian W. Clark
Texas Bar No. 24032075
Kane Russell Coleman & Logan PC
1601 Elm Street, Suite 3700
Dallas, TX 75201
(214) 777-4200

Melissa Fuller (Defendant)

Brian W. Clark
Texas Bar No. 24032075
Kane Russell Coleman & Logan PC
1601 Elm Street, Suite 3700
Dallas, TX 75201
(214) 777-4200

3. **Jury Demand:**

Was a Jury Demand made in State Court?  ☒ Yes  ☐ No

If "*Yes*," by which party and on what date?

|  Plaintiffs  |  July 24, 2006  |
| --- | --- |
| Party | Date |

4. **Answer:**

Was an Answer made in State Court?  ☐ Yes  ☒ No

If "*Yes*," by which party and on what date?

|  N/A  |  |
| --- | --- |
| Party | Date |

**Supplemental Civil Cov Sheet**
**Page 4**

5.    **Unserved Parties:**

The following parties have not been served at the time this case was removed:

<table>
<tr><td align="center">**Party**</td><td align="center">**Reason(s) for No Service**</td></tr>
</table>

N/A

6.    **Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for that change:

<table>
<tr><td align="center">**Party**</td><td align="center">**Reason**</td></tr>
</table>

N/A

7.    **Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| **Party** | **Claim(s)** |
| --- | --- |
| Plaintiffs | declaratory relief, injunctive relief, civil conspiracy, conversion, breach of fiduciary duties, breach of contract, fraud in stock transactions, negligence, gross negligence |