IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE DOGWOOD INSTITUTE, TRUSTEE OF THE DOGWOOD TRUST, individually and on behalf of classes similarly situated, and ROBERT J. FULLER, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. 3-06CV1454-K ECF |
| A.G. EDWARDS & SONS, INC., EATON VANCE GROUP OF FUNDS, PHOENIX INVESTMENT PARTNERS, LTD., VAN KAMPEN INVESTOR SERVICES, INC., CARLA ULRICHHERRING, DENNIS CAPRIGLIONE, JAMES WOODROW FULLER, JR., individually and as Trustee of the Red River Trust, and MELISSA FULLER, | § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS A.G. EDWARDS & SONS, INC.'S, EATON VANCE GROUP OF FUNDS', AND PHOENIX INVESTMENT PARTNERS, LTD.'S, MOTION TO DISMISS PLAINTIFF'S ORIGINAL PETITION AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iv

INTRODUCTION ..........................................................................................................1

STATEMENT OF ALLEGED FACTS ...........................................................................1

ARGUMENT AND AUTHORITIES .............................................................................4

    I.   Applicable legal standards ..............................................................................4

        A.  Rule 9(b) ......................................................................................................4

        B.  Rule 12(b)(6)..............................................................................................4

    II.  Plaintiffs' Causes of Action Fail to State a Valid Claim .................................5

        A.  Plaintiffs Lack Standing To Bring Any Claims. ...................................5

            1.   Plaintiff Fuller Lacks Standing Because He Has Suffered No Injury And Cannot Act As Trustee. ....................................................................6

            2.   The Institute Also Lacks Standing Because It Cannot Act As Trustee. ......7

        B.  Each Of Plaintiffs' Causes Of Action Are Barred By Limitations.....................8

        C.  Plaintiffs' Claims Are Insufficient. ...................................................................9

            1.   Defendants' Alleged Demands For Documentation Were Reasonable As A Matter Of Law. ................................................................................9

            2.   Plaintiffs Have Failed to State Viable Claims For Negligence, Gross Negligence, and Breach of Fiduciary Duty. ................................................12

                i.   Plaintiffs Have Failed To Allege That Defendants Breached Any Duty They Owed To Plaintiffs...........................................................12

                ii.  Plaintiffs Have Failed To Allege Facts To Support A Causal Link To Any Damages They Allegedly Suffered.........................................14

            3.   Plaintiffs' Conversion Claims Are Fatally Deficient. ...............................15

            4.   Plaintiffs' Breach Of Contract Claim Is Insufficient To Withstand Dismissal. ..................................................................................................16

5. Plaintiffs' Claim of "Fraud In Stock Transactions" Is Insufficiently Particular And Fails To State A Claim. ....................................................17

    i. Plaintiffs' Claim is Insufficiently Particular.........................................17

    ii. Plaintiffs' Claims For "Fraud In Stock Transactions" Fail To State A Claim. ................................................................................................18

6. Plaintiffs' Civil Conspiracy Claim Also Fails As A Matter of Law. .........20

7. The Petition Does Not Allege The Requisite Culpability To Recover Punitive Damages. ....................................................................................22

D. SLUSA Preempts Institute's State Law Claims On Behalf Of The Putative Class. ..............................................................................................................23

1. The Putative Class Claims Constitute A "Covered Class Action". ............23

2. The Petition Alleges State Law Claims. ...................................................24

3. The Petition Involves A "Covered Security". ...........................................24

4. Institute Alleges That Defendants Made Misrepresentations And Used Manipulative Or Deceptive Devices Or Contrivances................................25

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ..........................................................................5

*Clark v. Amoco Prod. Co.*,
    794 F.2d 967 (5th Cir. 1986) ..........................................................................8

*Conley v. Gibson*,
    355 U.S. 41 (1957) .........................................................................................4

*Cordova v. Lehman Bros., Inc.*,
    413 F. Supp. 2d 1309 (S.D. Fla. 2006) .........................................................25

*De Kwiatkowski v. Bear Stearns & Co.*,
    306 F.3d 1293 (2d Cir. 2002) ........................................................................13

*In re Enron Corp. Sec. Litig.*,
    No. MDL-1446, 2003 U.S. Dist. LEXIS 25038 (S.D. Tex. Dec. 11, 2003) .....................13

*Florida Dept. of Ins. v. Chase Bank of Texas*,
    274 F.3d 924 (5th Cir. 2001) ......................................................................5, 6

*In re Franklin Mut. Funds Fee Litig.*,
    388 F. Supp. 2d 451 (D. N.J. 2005) ..............................................................25

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ...................................................................12, 22

*Greaves v. McAuley*,
    264 F. Supp. 2d 1078 (N.D. Ga. 2003) .........................................................24

*Hale v. Harney*,
    786 F.2d 688 (5th Cir. 1986) ...................................................................21, 22

*Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*,
    302 F.3d 552 (5th Cir. 2002) ...................................................................18, 19

*Hosein v. Gonzales*,
    452 F.3d 401 (5th Cir. 2006) ..........................................................................5

*Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Texas*,
    20 F.3d 1362 (5th Cir. 1994) ..........................................................................8

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
    199 F. Supp. 2d 993 (C.D. Cal. 2002) ............................................................25

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) .................................................................5, 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................5

*Martinez Tapia v. Chase Manhattan Bank*,
    149 F.3d 404 (5th Cir. 1998) ......................................................................13

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ......................................................................20

*Meritage Corp. v. Clarendon Nat'l Ins. Co., No. Civ. A. 3:03-CV-1439*,
    2004 WL 2254215 (N.D. Tex. Oct. 6, 2004)................................................14

*Miller v. Nationwide Life Ins. Co.*,
    391 F.3d 698 (5th Cir. 2004) ......................................................................23

*Miller v. Waste Mgmt., Inc. (In re Waste Mgmt., Inc.)*,
    194 F. Supp. 2d 590 (S.D. Tex. 2002) .......................................................23

*Nathenson v. Zonagen, Inc.*,
    267 F.3d 400 (5th Cir. 2001) ........................................................................4

*Ozee v. Am. Council on Gift Annuities*,
    888 F. Supp. 1318 (N.D. Tex. 1995) .............................................................7

*Powers v. Am. Express Fin. Advisors, Inc.*,
    82 F. Supp. 2d 448 (D. Md.), *aff'd*, 238 F.3d 414, (4th Cir. 2000) ...................11

*Rolf v. City of San Antonio*,
    77 F.3d 823 (5th Cir. 1996) .....................................................................4, 5

*Shushany v. Allwaste, Inc.*,
    992 F.2d 517 (5th Cir. 1993) ........................................................................4

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) .....................................................................4, 5

*Tuchman v. DSC Communications Corp.*,
    818 F. Supp. 971 (5th Cir. 1993), *aff'd.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ..............4, 20

*Wilson v. Budney*,
    976 F.2d 957 (5th Cir. 1992) ........................................................................21

## STATE CASES

*Anderson v. Cocheu*,
    176 S.W.3d 685 (Tex. App.—Dallas 2005, no pet.)......................................8

*Blanche v. First Nationwide Mortgage Co.*,
    74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.).....................................15

*Brosseau v. Ranzau*,
    81 S.W.3d 381 (Tex. App.—Beaumont 2002, pet. denied) .........................23

*D. Houston, Inc. v. Love*,
    92 S.W.3d 450 (Tex. 2002)..........................................................................14

*Dearing, Inc. v. Spiller*,
    824 S.W.2d 728 (Tex. App.—Fort Worth 1992, writ denied) ........................12

*Deaton v. United Mobile Networks, L.P.*,
    926 S.W.2d 756 (Tex. App.—Texarkana 1996), *rev'd on other grounds*,
    939 S.W.2d 146 (Tex. 1997).........................................................................21

*Denson v. T.D.C.J.-I.D.*,
    63 S.W.3d 454 (Tex. App.—Tyler 1999, pet. denied)....................................22

*Ebner v. First State Bank of Smithville*,
    27 S.W.3d 287 (Tex. App.—Austin 2000, pet. denied)..................................16

*Excel Corp. v. Apodaca*,
    81 S.W.3d 817 (Tex. 2002)...........................................................................14

*Firestone Steel Prods. Co v. Barajas*,
    927 S.W.2d 608 (Tex. 1996).........................................................................21

*Frost Nat'l Bank v. Burge*,
    29 S.W.3d 580 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ..................16

*General Motors Corp. v. Bloyed*,
    916 S.W.2d 949 (Tex. 1996).........................................................................15

*Graff v. Beard*,
    858 S.W.2d 918 (Tex. 1993).........................................................................12

*Greater Houston Transp. Co. v. Phillips*,

801 S.W.2d 523 (Tex. 1991)..........................................................................................12

*Green Int'l v. Solis*,
951 S.W.2d 384 (Tex. 1997)....................................................................................16, 22

*Grinnell v. Munson*,
137 S.W.3d 706 (Tex. App.—San Antonio 2004, no pet.).................................................7

*Grizzle v. Tex. Commerce Bank, N.A.*,
38 S.W.3d 265 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*,
96 S.W.3d 240 (Tex. 2002)..........................................................................................21

*Hand v. Dean Witter Reynolds, Inc.*,
889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied)...........................13

*Hawthorne v. Guenther*,
917 S.W.2d 924 (Tex. App.—Beaumont 1996, writ denied) ...........................................12

*Int'l Bankers Life Ins. Co. v. Holloway*,
368 S.W.2d 567 (Tex. 1963)........................................................................................22

*Interfirst Bank-Houston v. Quintana Petroleum Corp.*,
699 S.W.2d 864 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).........................6

*Massey v. Armco Steel Co.*,
652 S.W.2d 932 (Tex. 1983).........................................................................................20

*Mellon Serv. Co. v. Touche Ross & Co.*,
17 S.W.3d 432 (Tex. App.—Houston [1st Dist.] 1990, no writ).......................................8

*Meyer v. Cathey*,
167 S.W.3d 327 (Tex. 2005).........................................................................................12

*Ogle v. Craig*,
464 S.W.2d 95 (Tex. 1971)...........................................................................................16

*Ojeda v. Wal-Mart Stores*,
956 S.W.2d 704 (Tex. App.—San Antonio 1997, pet. denied) .......................................15

*Pinebrook Properties v. Brookhaven Lake*,
77 S.W.3d 487 (Tex. App.—Texarkana 2002, pet. denied) ............................................15

*Pooley v. Seal*,
802 S.W.2d 390 (Tex. App.—Corpus Christi 1990, writ denied) .....................................8

*Port Arthur Trust Co. v. Muldrow*,

291 S.W.2d 312 (Tex. 1956)...........................................................................7

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd*,
896 S.W.2d 156 (Tex. 1995).................................................................14

*RTLC AG Products, Inc. v. Treatment Equipment Co.*,
195 S.W.3d 824 (Tex. App.—Dallas 2006, no pet.)............................21

*Schlumberger Tech. Corp. v. Swanson*,
959 S.W.2d 171 (Tex. 1997)...........................................................12, 14

*Spurlock v. Johnson*,
94 S.W.3d 655 (Tex. App.—San Antonio 2002, no pet.)...................22

*Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.*,
65 S.W.3d 281 (Tex. App.—Dallas 2001, pet. denied) .....................16

*Tilton v. Marshall*,
925 S.W.2d 672 (Tex. 1996).................................................................21

*Trans-Gulf Corp. v. Performance Aircraft Serv., Inc.*,
82 S.W.3d 691 (Tex. App.—Eastland 2002, no pet.) ........................15

*Tri v. J.T.T.*,
162 S.W.3d 552 (Tex. 2005).................................................................21

*Triplex Communications, Inc. v. Riley*,
900 S.W.2d 716 (Tex. 1995).................................................................21

*United Mobile Networks v. Deaton*,
939 S.W.3d 146 (Tex. 1997).................................................................15

*Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*,
159 S.W.3d 266 (Tex. App.—Dallas 2005, no pet.).........................21

*Zapata v. Torres*,
464 S.W.2d 926 (Tex. Civ. App.—Dallas 1971, no writ) .................7

## FEDERAL STATUTES

15 U.S.C. § 77p(b) ............................................................................24, 25

15 U.S.C. § 77p(f)(2) ...............................................................................24

15 U.S.C. § 77r(b) .....................................................................................25

15 U.S.C. 78a, *et. seq* .................................................................................................10

15 U.S.C. § 78bb(f)(1) ...........................................................................................24, 25

15 U.S.C. § 78bb(f)(5)(b) .............................................................................................24

15 U.S.C. § 78bb(f)(5)(e) .............................................................................................25

17 C.F.R. § 201.192 (2004) ..........................................................................................10

17 C.F.R. § 240.17Ad-15 (2004) ..................................................................................11

FEDERAL RULE OF CIVIL PROCEDURE 9(B) ...........................................................4, 18

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ........................................................4, 8

## STATE STATUTES

TEX. BUS. & COMM. CODE § 8.306...............................................................................11

TEX. BUS. & COMM. CODE ANN. § 8.507 .....................................................................11

TEX. BUS. & COMM. CODE § 27.01..........................................................................8, 17

TEX. BUS. ORG. CODE § 2.106(A).................................................................................7

TEX. CIV. PRAC. & REM. CODE § 16.003 ......................................................................8

TEX. CIV. PRAC. & REM. CODE § 16.004 ......................................................................8

TEX. CIV. PRAC. & REM. CODE § 16.051 ......................................................................8

TEX. PROP. CODE § 112.008(A) ....................................................................................7

TEX. PROP. CODE § 112.009(C) ....................................................................................7

## MISCELLANEOUS

RESTATEMENT (SECOND) OF TRUSTS, §§ 281-82 .............................................................6

G. BOGERT, *The Law of Trusts and Trustees* § 869 (Rev. 2d Ed. 1982).........................6

National Association of Securities Dealers, Inc. Rule 11870 ....................................11

NYSE Regulation, Moving Financial Assets,
    What Every Customer Should Know (2006) ..................................................12

Defendants A.G. Edwards & Sons, Inc. ("A.G. Edwards"), Eaton Vance Group of Funds ("Eaton"), and Phoenix Investment Partners Ltd. ("Phoenix"), collectively referred to herein as "Defendants," hereby move to dismiss Plaintiff's Original Petition (the "Petition") under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure as follows:[1]

## INTRODUCTION

This dispute concerns assets the Dogwood Trust (the "Trust") owns and holds in an account at A.G. Edwards. These assets are—or in some cases, were—invested in several mutual funds that Eaton, Phoenix and Defendant Van Kampen Investor Services, Inc. ("Van Kampen") manage. Although Plaintiffs make the conclusory allegation that Defendants have unreasonably and unnecessarily requested documentation in connection with the alleged resignation and subsequent appointment of trustees for the Trust, the plead facts and the undisputed documents establish that Defendants acted appropriately.

Plaintiffs' claims have no validity because (1) Plaintiffs have no standing to assert them; (2) each of the causes of action are barred by the applicable statute of limitation; (3) each of the causes of action fails to state a valid claim because each is premised upon allegations that are legally insufficient; and (4) the class claims are preempted. Consequently, all Plaintiffs' claims should all be dismissed.

## STATEMENT OF ALLEGED FACTS

Robert J. Fuller ("Plaintiff Fuller"), a licensed Texas attorney, brought this case on behalf of himself and the Dogwood Institute ("Institute"), the Trust's alleged trustee. Plaintiff Fuller created the Trust in 1997 as an "absolute[] and irrevocable[]" trust for the benefit of several of his family members. Pet., Ex. A. The Trust designated Michael Ginsberg as the Trustee but

---

[1] Defendants make this Motion subject to, and without waiver of, their rights to compel Plaintiffs' claims to arbitration.

granted Plaintiff Fuller's brother (and named-defendant in this lawsuit) James Fuller ("Jim") the "power to remove the Trustee and to designate a successor Trustee (other than the Grantor [Plaintiff Fuller])."  *Id.* at ¶ 2.1.  The Trust also vested in "any Trustee serving" the "power to resign, and . . . designate successor Trustee (other than the Grantor [Plaintiff Fuller])."  *Id.*  The Trust was funded and it opened a non-discretionary account at A.G. Edwards in September of 1998 and deposited cash to invest in securities.  Defendant Carla Ulrichherring ("Ms. Ulrichherring"), an A.G. Edwards broker, was the broker of record on the Trust's account.[2]

On or about October 21, 1998, Jim replaced Mr. Ginsberg as the Trust's trustee.  Pet. ¶¶ 14, 16.  In the summer of 1999, Jim and Plaintiff Fuller allegedly had a dispute about Jim's handling of the Trust's assets.  Pet. ¶¶ 12, 20, Ex. B at 1.  That dispute allegedly was resolved, in part, by Jim allegedly signing a document in which he allegedly resigned as Trustee of the Trust and irrevocably assigned to Plaintiff Fuller all of his rights and powers under the Trust (the "Resignation").  *Id.*  On June 25, 2001, Plaintiff Fuller allegedly accepted Jim's resignation and appointed Lilith Company—for which Plaintiff Fuller served as President—as successor trustee.  Pet. ¶ 12, Ex. B at 2; Ex. C at 2.

In August of 2001, Plaintiff Fuller faxed a copy of the Resignation to Ms. Ulrichherring, and asked her to change Edwards' records to reflect Lilith Company as the new trustee.  *Id.*  The copy of the Resignation that Ms. Ulrichherring received from Plaintiff Fuller, however, did not contain Jim's signature.  App. at 1-6[3], which is a true and correct copy of the Resignation.  Instead, it was signed by Plaintiff Fuller who claimed to have the original Jim executed.  App. at 6.  Consequently, Ms. Ulrichherring declined to change Edwards' records allegedly until she

---

[2] Defendant Carla Ulrichherring has filed her own Motion to Dismiss.
[3] "App." refers to the Appendix In Support of Defendants A.G. Edwards & Sons, Inc.'s, Eaton Vance Group of Funds', and Phoenix Investment Partners, Ltd's Motion to Dismiss Plaintiff's Original Petition and Brief in Support.

received an originally signed copy of the Resignation.  Pet. ¶ 12, Ex. B at 2.  Plaintiff Fuller

promised to provide the original executed Resignation, but never did.  *Id.*

In fact, Plaintiff Fuller did not have an original executed Resignation.  In a letter written

later to Ms. Ulrichherring, Plaintiff Fuller admitted:

> I thought at the time that Jim had also mailed an original of [the Resignation] to
> me and told you that I would look for it.  In the meantime, the Trust's remaining
> assets were in your hands and I saw no urgency to supplying the original
> document.

*Id.* ¶ 12, Ex. B at 2.  He "never found the original document," which contained Jim's signature.

*Id.*  Nor did he bother to ask his brother Jim for the original executed Resignation.  *Id.*

True to his perceived lack of urgency, Plaintiff Fuller waited nearly five years to contact

Ms. Ulrichherring about the Trust or to request the original executed Resignation from Jim.  *Id.* ¶

12, Ex. B at 2 and C at 2.  In April of 2006, Plaintiff Fuller wrote to Ms. Ulrichherring again

demanding that Edwards recognize Jim's resignation and the appointment of Lilith Company as

successor trustee.  *Id.*  She again refused on the ground that she still did not have the original

executed Resignation that Plaintiff Fuller had promised years ago.  *Id.*

Sometime between April and July 2006, still without providing documentation of Jim's

alleged resignation as Trustee, Plaintiff Fuller purported to once again designate a new trustee,

this time purporting to appoint the named-Plaintiff Institute, allegedly a Texas non-profit

corporation, as trustee.  Between April and July 2006, Institute made demands on Defendants

A.G. Edwards, Eaton, Phoenix and Van Kampen for delivery of the Trust's assets.  Plaintiffs

alleged that at the time they filed the Petition, none of the Defendants had delivered the Trust's

assets to Institute.  Pet. ¶ 24.

## ARGUMENT AND AUTHORITIES

The Petition purports to allege causes of action against Defendants for declaratory relief, injunctive relief, civil conspiracy, conversion, breach of fiduciary duties, breach of contract, fraud in stock transactions, negligence, and "gross negligence and intentional conduct."  Because these claims are all fatally deficient, however, they should be dismissed.

## I.   APPLICABLE LEGAL STANDARDS

### A.   Rule 9(b)

Rule 9(b) requires a plaintiff alleging fraud to "plead with particularity the circumstances constituting the alleged fraud."  FED. R. CIV. PROC. 9(b).  To satisfy Rule 9(b), fraud allegations must:  (1) identify the speaker of the allegedly fraudulent statement or omission; (2) indicate the time and location of the statement or omission; and (3) explain why the statement or omission was fraudulent.  *See Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001).  Fraud allegations that are not sufficiently particularized must be dismissed for failure to state a claim.  *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004); *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993).  Moreover, Rule 9(b) does not permit a plaintiff to plead fraud against a group of individuals without enlightening each defendant as to its part in the alleged fraud.  *See Tuchman v. DSC Communications Corp.*, 818 F. Supp. 971, 977 (5th Cir. 1993), *aff'd.*, 14 F.3d 1061, 1068 (5th Cir. 1994).  "General allegations, which do not state with particularity what representations each defendant made, do not meet the particularity requirement."  *Id.*

### B.   Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if it appears that a plaintiff cannot prove a set of facts in support of its claims that would entitle it to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Rolf v. City of San Antonio*, 77

F.3d 823, 827 (5th Cir. 1996).  When considering a motion to dismiss, the court may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of  which the judge may take judicial notice.[4]  *Lovelace v. Software Spectrum, Inc.* 78 F.3d 1015, 1017-1018 (5th Cir. 1996).  While the Court must accept as true the well-pleaded factual allegations in the complaint, "conclusory allegations, unwarranted deductions and legal conclusions" will not prevent a motion to dismiss from being granted. *Southland Sec. Corp. v. Inspire Ins. Solutions*, 365 F.3d 353, 361 (5th Cir. 2004).  Nor should the Court "strain to find inferences favorable to the Plaintiff." *Id.*

## II.    PLAINTIFFS' CAUSES OF ACTION FAIL TO STATE A VALID CLAIM

### A.    Plaintiffs Lack Standing To Bring Any Claims.

For their claims to proceed, Plaintiffs must have standing.  *Florida Dept. of Ins. v. Chase Bank of Texas*, 274 F.3d 924, 928-29 (5th Cir. 2001).  They must, therefore, allege facts sufficient to establish that they have suffered an "injury in fact" as the result of Defendants' actions.  *Hosein v. Gonzales*, 452 F.3d 401, 403-04 (5th Cir. 2006).  An "injury in fact" requires the "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Moreover, to have standing, Plaintiffs must possess the rights that Defendants allegedly invaded.  *Lujan*, 504 U.S. at 563; *Hosein*, 452. F.3d at 404 ("Since Hosein has alleged no injury-in-fact to herself, she has alleged no actual controversy that would permit the federal courts to exercise jurisdiction").  Thus, the Court must "carefully examine whose injury is at issue and to whom the recovery will go."  *Florida Dept. of Ins.*, 274 F.3d at 929.  If the plaintiff

---

[4] The Court may also consider documents that a defendant attaches to a  motion to dismiss if they are referred to in the plaintiff's complaint and are central to plaintiff's claim.  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

is not the party who sustained the injury for which a remedy is provided, then he lacks standing. *Id.*

Here, the only party who has allegedly suffered an injury is the Trust.  The Trust, not Plaintiff Fuller or the Institute, owns the account at issue.  Pet. ¶ 2 and Ex. A ("Defendants [A.G.] Edwards, Eaton, Phoenix and Kampen hold and have held for several years the assets of the Trust in a fiduciary capacity with respect to the Trust.").  And Plaintiffs' claims arise solely out of the relationship between the Trust and Defendants.

Even if Plaintiffs' claims were valid, which they are not, it is the Trust whose interests were allegedly damaged.  And the Trust's valid trustee is the only individual who may assert any such claims:

> The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct.

G. BOGERT, *The Law of Trusts and Trustees* § 869 (Rev. 2d Ed. 1982) ("BOGERT"). Consequently, only the valid trustee has standing to assert the Trust's claims against third-parties such as Defendants. *Interfirst Bank-Houston v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (*citing* BOGERT, § 869); RESTATEMENT (SECOND) OF TRUSTS, §§ 281-82.

### 1.      Plaintiff Fuller Lacks Standing Because He Has Suffered No Injury And Cannot Act As Trustee.

Plaintiff Fuller is the grantor of the Trust, not its trustee.  Pet. ¶ 2.  In fact, the Trust agreement specifically prohibits Plaintiff Fuller from serving as the trustee of the Trust. *See* Pet., Ex. A, ¶ 2.1.  Nor does Plaintiff Fuller's claimed status as the alleged assignee of the rights of certain of the beneficiaries of the Trust grant him standing.  Pet. ¶ 13.  That Plaintiff Fuller has

no greater rights than the beneficiaries whose claims he allegedly received is axiomatic.  *See*

*Zapata v. Torres*, 464 S.W.2d 926, 929 (Tex. Civ. App.—Dallas 1971, no writ).  Since the

beneficiaries themselves lacked standing to assert the Trust's claims, so does Plaintiff Fuller.

*Grinnell v. Munson*, 137 S.W.3d 706, 714 (Tex. App.—San Antonio 2004, no pet.).  Therefore,

he has no individual claim and no standing, and cannot assert the Trust's claims or rights.

### 2.        The Institute Also Lacks Standing Because It Cannot Act As Trustee.[5]

For a corporation to serve as a trustee, it "must have the power to act as a trustee in this

state."  TEX. PROP. CODE § 112.008(a).  A corporation has the power to act as a trustee only if it

is chartered under a statute that permits it to do so, and only to the extent that is permitted by the

statute.  *Ozee v. Am. Council on Gift Annuities*, 888 F. Supp. 1318, 1327 (N.D. Tex. 1995)

(*citing Port Arthur Trust Co. v. Muldrow*, 291 S.W.2d 312, 314 (Tex. 1956)).  This is true for

both for-profit and non-profit corporations.  *Id.*

According to the Petition, the Institute is a Texas non-profit corporation.  Pet. ¶ 2.  A

non-profit corporation is allowed to serve as trustee only if it or another non-profit or charitable

organization is the beneficiary of the trust.  TEX. BUS. ORG. CODE § 2.106(a).  The beneficiaries

of the Trust are individual members of Plaintiff Fuller's family.  Pet. ¶ 13.  Neither the Institute

nor any other non-profit and/or charitable organization is a beneficiary.  *Id.*  Because the Institute

lacks the capacity to serve as a trustee, Plaintiff Fuller's attempted appointment of the Institute is

a nullity, and it has no standing to assert the Trust's alleged claims.[6]  TEX. PROP. CODE §

112.008(a); *Ozee*, 888 F. Supp. at 1325-26.

---

[5] Phoenix does not join in the standing argument relating to the Institute.
[6] Where the selected trustee lacks capacity to act as trustee, an alternative trustee named in the trust agreement or selected in accordance with its terms may accept the trust.  TEX. PROP. CODE § 112.009(c).  The Trust agreement provides that "[i]n the event of a vacancy in the trusteeship, [Jim] shall be the successor Trustee"  and that "[i]n the event of a vacancy in the trusteeship of [Jim], [Plaintiff Fuller's] sister, Virginia Louise Johnson, shall be the successor Trustee."  Pet., Ex. A, ¶ 2.1.  Thus, either Jim or Ms. Johnson is the current trustee.  If no alternative trustee exists, then a court must appoint a trustee on the petition of an interested person.  *Id.*

### B.    Each Of Plaintiffs' Causes Of Action Are Barred By Limitations.

Each of Plaintiffs' claims must be dismissed because, on the face of the Petition, they are barred by the applicable statutes of limitations.  When a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate.  *Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) (*citing Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

All of the causes of action Plaintiffs have asserted center around Plaintiffs' allegation that Defendants required "unnecessary and unreasonable" account documentation to effectuate a trustee change, effectively "freezing" the account at issue in order to generate more "float," fee, and commission income.   Pet. at ¶18.   Defendant A.G. Edwards allegedly asked for the "unreasonable and unnecessary" documentation on or about August 4, 2001 and Plaintiffs knew about it at that time.  Pet., Ex. B at 2.  Yet, Plaintiffs did not sue until July 24, 2006, almost five years later.

Because the alleged wrongdoing occurred almost five years ago, Plaintiffs are barred from bringing claims for negligence, "gross negligence and intentional conduct,"[7] civil conspiracy,[8] and conversion because each of those claims carry a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003.  Similarly, Plaintiffs' claims for breach of contract,[9] breach of fiduciary duty, and "fraud in stock transactions"[10] are barred because those claims carry a four-year statute of limitations.  *Id.* at §§ 16.004 and 16.051.

---

[7] *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 n.1 (Tex. App.—Houston [1st Dist.] 1990, no writ).

[8] *Id.*

[9] *Anderson v. Cocheu*, 176 S.W.3d 685, 689 (Tex. App.—Dallas 2005, no pet.).

[10] An action under the Fraud in Real Estate and Stock Transaction statute, TEX. BUS. & COM. CODE ANN. §27.01, is subject to a four-year limitation statute.  *Pooley v. Seal*, 802 S.W.2d 390, 393 (Tex. App.—Corpus Christi 1990, writ denied) (*citing* TEX. CIV. PRAC. & REM CODE ANN. §§ 16.004(a)(3) and 16.051).

C.    **Plaintiffs' Claims Are Insufficient.**

1.    **Defendants' Alleged Demands For Documentation Were Reasonable As A Matter Of Law.**

Plaintiffs' fundamental complaint is that Defendants made unreasonable demands for documentation of Jim's resignation as trustee and for the subsequent appointment of Lilith Company, Jan Kamei and the Institute as successor trustees.   Pet. ¶¶ 22-24.   By these unreasonable demands, Plaintiffs' allege, Defendants were able to "freeze" the account at issue in order to generate more "float," fee, and commission income for themselves.   *Id.*   It is these "unreasonable" demands that allegedly breach the contractual and tort duties Defendants allegedly owed to the Plaintiffs.   *Id.* ¶ 18 (alleging that Defendants' request(s) for additional documentation constituted "breaches of fiduciary duties, breaches of contracts, and conversion").   Because Defendants' requests for documentation were reasonable, however, Plaintiffs' claims must fail.

First, A.G. Edwards' demand for an originally-signed copy of the Resignation was reasonable as a matter of law. [11]   When Plaintiff Fuller asked A.G. Edwards to change the Trustee on the account from Jim to Lilith Company, the only document that Plaintiff Fuller provided was the Resignation—a document entitled "Resignation as Trustee and Assignment of Rights Under Trust" in which Jim purported to resign as Trustee and assign all his right and powers to appoint a new Trustee to Plaintiff Fuller.   App. at 6.   The Resignation that Plaintiff Fuller sent to A.G. Edwards, however, did not contain Jim's signature.   Instead, it contained only Plaintiff Fuller's hand-written statement that the "[e]xecuted original" was in his possession.   App. at 6.   The suggestion that A.G. Edwards should have changed the name of the trustee on the Trust's account—an action that would have effectively resulted in a change of ownership since the

---

[11] The Resignation is the only document Edwards are specifically alleged to have required.   Plaintiffs do not specify what documents any other Defendant required.

trustee, not the trust, holds title to trust property—on the basis of an unsigned copy of the Resignation strains credulity.  In any event, Plaintiffs' contention that A.G. Edwards' request for the originally-signed copy of the Resignation was unreasonable is untenable as a matter of law.

Second, by seeking to prohibit the types of documentation Defendants can request, Plaintiffs are inviting the Court to engage impermissibly in regulatory rulemaking.  The proper forum for seeking a change in Defendants' documentation requests is before the Securities and Exchange Commission ("SEC").  Congress created the SEC through the Securities Exchange Act of 1934 and empowered it with broad authority over all aspects of the securities industry, including the power to register, regulate, and oversee brokerage firms, transfer agents, and clearing agencies as well as the nation's securities self regulatory organizations (SROs).  *See* 15 U.S.C. 78a, *et. seq.*  The SEC has a specific regulatory process by which interested persons can seek to change the rules applicable to brokerage firms and SROs:

> any person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefore with the Secretary.  Such Petition shall include a statement setting forth the text or the substance of any proposed rule or amendment desired or specifying the rule the repeal of which is desired, and stating the nature of his or her interest and his or her reasons for seeking the issuance, amendment or repeal of the rule.

17 C.F.R. § 201.192 (2004).  This process, rather than the class action litigation mechanism Plaintiffs have chosen, is the means by which rules such as the one Plaintiffs propose are vetted and, if appropriate, adopted.

Third, Plaintiffs have not identified any rule, regulation or law that precludes Defendants from requiring "documentation other than, or in addition to, a sworn, notarized statement of the change" when they are asked to change the ownership of, or those who are authorized to give instructions concerning, an account.  In fact, Plaintiffs' demand that Defendants be so restricted is unreasonable as a matter of law.  When presented with instructions like Plaintiffs alleged they

gave Defendants—to change the trustee for an account and thereby transfer the ownership of the account from one trustee to another—Defendants are entitled to a "reasonable opportunity to assure [themselves] " that the instruction is "genuine and authorized." *See* TEX. BUS. & COMM. CODE ANN. § 8.507. This is especially true in light of cases where brokerage firms have been held liable for forged signatures even where they obtained a notarized signature—the very thing that Plaintiffs would limit Defendants to requiring. *See*, *e.g.*, *Powers v. Am. Express Fin. Advisors, Inc.*, 82 F. Supp. 2d 448, 452-53 (D. Md.), *aff'd*, 238 F.3d 414, (4th Cir. 2000) (firm held liable to one joint account holder for balance of account liquidated upon the purported instruction of both accountholders where one account holder's signature was forged).

Other types of documentation in excess of a notarization abound that are reasonable to authenticate a signature under these or similar circumstances. One example is a signature guarantee, which is a financial institution's or participating broker-dealer's warranty that (a) the signature at issue is genuine, (b) the signer is authorized to sign, and (c) the signer has legal capacity to sign. *See* TEX. BUS. & COMM. CODE § 8.306; *also* 17 C.F.R. § 240.17Ad–15 (2004).[12] Signature guarantees are perfectly reasonable, as evidenced by the fact that the regulations governing SROs such as the National Association of Securities Dealers and the New York Stock Exchange specifically contemplate them.[13] Consequently, they are now a routine part of the securities business. In fact, in a recent publication, the NYSE specifically cautioned customers that they may be required to obtain signature guarantees when transferring accounts.

---

[12] The major signature guarantee programs in the United States are the Securities Transfer Agents Medallion Program, Stock Exchanges Medallion Program and the New York Stock Exchange Medallion Signature Program. U.S. Securities and Exchange Commission, *Signature Guarantees: Preventing the Unauthorized Transfer of Securities, available at* http://www.sec.gov/answers/sigguar.htm (last visited Sept. 14, 2005). As the SEC notes, requiring a signature guarantee protects consumers by making it more difficult to forge signatures. *Id.*

[13] NASD Rule 11870, which governs the transfer of accounts from one institution to another, is illustrative. Under Rule 11870, a customer may initiate a transfer by providing his current broker/dealer with a transfer request in the form specified by the rule. NASD Rule 11870(b)(1). The model form provided by the NASD for transfers of interests in mutual funds specifically includes a signature guarantee. *See* NASD Rule 11870 at IM11870(c).

The firm to which you will be transferring the assets, known as the "receiving firm," will supply you with a Transfer Initiation Form. … Some firms will use a form requiring your manual signature and may also require a signature guarantee (a stamp confirming your identity that is available at most member organizations and at many banks).

NYSE Regulation, *Moving Financial Assets, What Every Customer Should Know* (2006), at 1,

*available at* http://www.nyse.com/pdfs/moving_financial_assets.pdf.

### 2.      Plaintiffs Have Failed to State Viable Claims For Negligence, Gross Negligence, and Breach of Fiduciary Duty.

Plaintiffs allege in the Petition that Defendants were negligent, grossly negligent, and that they breached fiduciary duties to Plaintiffs. The Petition is facially insufficient, however, to state a claim under any of these theories.

### i.      Plaintiffs Have Failed To Allege That Defendants Breached Any Duty They Owed To Plaintiffs.

The existence of a legally cognizable duty is a prerequisite to all tort liability. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) (*citing Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991)). Consequently, Plaintiffs' claims for negligence,[14] "gross negligence and intentional conduct"[15] and breach of fiduciary duty[16] must first establish that

---

[14]Negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314-15 (5th Cir. 2002).

[15] Gross negligence has two requirements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Great Plains Trust* 313 F. 3d at 315.

[16] To establish a claim for breach of fiduciary duty, the plaintiff must establish: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach proximately caused in injury to the plaintiff or benefit to the defendant. *Hawthorne v. Guenther*, 917 S.W.2d 924, 934-35 (Tex. App.—Beaumont 1996, writ denied); *Dearing, Inc. v. Spiller*, 824 S.W.2d 728, 733-34 (Tex. App.—Fort Worth 1992, writ denied). Further, to prove a fiduciary relationship in a business transaction, the fiduciary relationship must exist before and apart from the agreement that is the basis of the suit. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997).

Defendants owed them a duty and that the duty was breached.[17]  Plaintiffs, however, have failed to allege facts to support any of these claimed duties.

Because the Trust's account was non-discretionary, Defendants' duties were limited.  *See De Kwiatkowski v. Bear Stearns & Co.*, 306 F.3d 1293, 1306 (2d Cir. 2002) (as to a nondiscretionary account, "broker has narrowly defined duties that begin and end with each transaction"); *In re Enron Corp. Sec. Litig.*, No. MDL-1446, 2003 U.S. Dist. LEXIS 25038, at *31-33 (S.D. Tex. Dec. 11, 2003) (noting lack of fiduciary duties owed by stockbroker to nondiscretionary client).  Specifically, a broker's only duties with respect to such clients are to execute trades as instructed by the client and to refrain from making unauthorized trades.  *See Martinez Tapia v. Chase Manhattan Bank*, 149 F.3d 404, 412 (5th Cir. 1998); *De Kwiatkowski*, 306 F.3d at 1302 ("The client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention."); *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 493 n.5 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

In the Petition, Plaintiffs have merely alleged, in vague and conclusory fashion, that they "have suffered direct and consequential damages as a proximate result of defendants' negligence, gross negligence and intentional conduct," and that Defendants "breached their respective fiduciary duties to the Trust."  Pet. ¶¶ 29, 33.  Although Plaintiffs allege that Defendants required unnecessary documentation from Plaintiff Fuller, including an originally-signed copy of the Resignation, Plaintiffs have failed to plead any facts specifically delineating the nature of Defendants' alleged duty to them, how that duty arose to a fiduciary one,[18] or how Defendants

---

[17] One or more account documents executed at A.G. Edwards by the original trustee, which are binding on all successor trustees, contained choice of law provisions requiring the application of New York law to any dispute arising under the terms of those agreements.  Although A.G. Edwards has cited Texas law for purposes of this Motion, it does not waive their right to assert the argument that New York law governs all of Plaintiffs' claims pursuant to those agreements.

[18] For instance, there is no allegation that there was any fiduciary relationship between any of the Defendants prior to their relationship with the Trust, which is a prerequisite for turning what would otherwise be an

allegedly breach any such duties.[19]  In addition, Plaintiffs have not pleaded any allegations of "conscious indifference" that would support their allegation that Defendants were "grossly negligent."

### ii.    Plaintiffs Have Failed To Allege Facts To Support A Causal Link To Any Damages They Allegedly Suffered.

Plaintiffs also have failed to allege that Defendants' breaches of duty proximately caused them any damages.  Proximate cause requires both cause-in-fact and foreseeability.  *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  Foreseeability exists when "the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others." *Id.*  To show cause-in-fact (which is also described by the courts as "'but for cause'" or "'substantial factor' causation"), a plaintiff must prove that an act or omission was a substantial factor in bringing about an injury that would not have occurred without the act or omission. *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd*, 896 S.W.2d 156, 161 (Tex. 1995).

The Petition repeatedly recites the conclusory statement that "Plaintiffs have suffered direct and consequential damages."  Pet. ¶¶ 28-33.  However, nowhere in the Petition do Plaintiffs provide any indication of what these damages are, how they were incurred, or which of Defendants' alleged acts gave rise to the damages.  In fact, the only harm Plaintiffs even imply is that Defendants' additional documentation request deprived the Trust (and putative class members) of access to its funds, which is insufficient. Pet. ¶ 18.

---

arms-length relationship into a fiduciary one.  *See Schlumberger,* 959 S.W.2d at 176.; *Meritage Corp. v. Clarendon Nat'l Ins. Co.*, No. Civ. A. 3:03-CV-1439, 2004 WL 2254215, at *7 (N.D. Tex. Oct. 6, 2004) (Plaintiff's breach of fiduciary duty claim dismissed because the facts alleged by the plaintiff were "not sufficient to transform [an] arms-length dealing into a fiduciary relationship to support a breach of fiduciary duty claim" because there was no relationship that existed "prior to and apart from the agreement on which the suit [was] based.").

[19] At the same time, Plaintiffs admit that Plaintiff Fuller did not want to approach Jim for the documents Defendants requested because the two men were not on good terms.  Pet. ¶¶ 20, 21.  Thus, the only failure to act was Plaintiff Fuller's, who admittedly chose to make no effort to provide the original document.

This is especially true with regard to Plaintiffs' negligence claim since, to the extent they have even properly pleaded any damages at all (which Defendants deny), and they have pleaded only damages for economic loss. Under Texas law, the economic loss doctrine bars negligence claims where the only alleged injury is economic loss. *Trans-Gulf Corp. v. Performance Aircraft Serv., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.); *Blanche v. First Nationwide Mortgage Co.*, 74 S.W.3d 444, 452-53 (Tex. App.—Dallas 2002, no pet.). Diminution in market value is an "economic loss." *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949 (Tex. 1996) (describing diminished market value as economic damages). Thus, to maintain a cause of action for negligence, a plaintiff must plead and prove either a personal injury or property damage. As explained above, however, the Petition does not allege any personal injuries. Because Plaintiffs have failed to establish the existence of a duty and proximate cause, their negligence claim should be dismissed.

Further, Plaintiffs' request for injunctive relief fails because a plaintiff must show: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Pinebrook Properties v. Brookhaven Lake*, 77 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. denied). Here, Plaintiffs do not even mention any of the four required elements in its request for injunctive relief. Therefore, its claim for such relief must be dismissed.

### 3.    Plaintiffs' Conversion Claims Are Fatally Deficient.

To state a claim for conversion, the plaintiff must establish that (1) the plaintiff owned, possessed, or had the right to immediate possession of the property; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. *Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997); *United Mobile Networks v. Deaton*, 939 S.W.3d 146, 148 (Tex. 1997); *Ojeda v. Wal-Mart*

*Stores*, 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied).   To establish malicious conversion (the requisite for recovery of exemplary damages), a plaintiff must show more than bad faith and wrongful conduct; the plaintiff must show the wrongful act was of a "wanton and malicious nature."  *Green Int'l*, 951 S.W.2d at 391; *Ogle v. Craig*, 464 S.W.2d 95, 97 (Tex. 1971).

Plaintiffs' allegations do not support a conversion claim as a matter of law.  As demonstrated above, neither of the Plaintiffs owned, possessed, or had the right of immediate possession of the assets in the Trust's account because those assets belong to the Trust, and neither of the Plaintiffs are the proper parties to bring the Trust's claims.  In addition, Defendants' requests for documentation under these circumstances were reasonable as a matter of law.  Consequently, Defendants did not wrongfully exercise dominion or control over the assets in the Account.

### 4.    Plaintiffs' Breach Of Contract Claim Is Insufficient To Withstand Dismissal.

Likewise, Plaintiffs' claim for breach of contract must  fail because Plaintiffs have not properly pled the existence of any contractual provision that Defendants allegedly breached.  To establish a breach of contract claim, a plaintiff must plead (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach.  *Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.*, 65 S.W.3d 281, 285 (Tex. App.—Dallas 2001, pet. denied); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The concept that to prevail on a breach-of-contract claim the plaintiff must establish that a contract existed that the defendant breached is fundamental.   *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 304 (Tex. App.—Austin 2000, pet. denied).

Here, Plaintiffs have merely alleged, in vague and conclusory fashion, that Defendants "have breached their respective contractual duties to the Trust, which has suffered direct and consequently damages as a result of those breaches."  Pet. ¶ 31.  Nowhere in the Petition, however, do Plaintiffs identify the source of these alleged "contractual duties," how the alleged breaches occurred, or what damages resulted from these alleged breaches.  As a result, Plaintiffs' conclusory allegations, unsupported by any factual assertions, should be dismissed.

> ### 5.      Plaintiffs' Claim of "Fraud In Stock Transactions" Is Insufficiently Particular And Fails To State A Claim.
>
> ### i.      Plaintiffs' Claim is Insufficiently Particular.

Plaintiffs have alleged a claim against A.G. Edwards, Eaton, Phoenix, and Van Kampen for "fraud in stock transactions" in violation of Section 27.01 of the Texas Business and Commerce Code.  Plaintiffs' "fraud in stock transaction" claim fails to meet the specificity requirements of F.R.C.P. 9(b).  In a one-sentence allegation, Plaintiffs vaguely state that "[t]he conduct of [A.G.] Edwards, Eaton, Phoenix, [Van] Kampen, and Jim described above violated Section 27.01 of the TEX. BUS. & COM. CODE . . ."  Pet. ¶ 32.

The only factual allegations against Defendants are that Defendants required "unnecessary and unreasonable" account documentation to effectuate a trustee change, effectively "freezing" the account at issue in order to generate more "float," fee, and commission income.  Pet. ¶18.  Plaintiffs specifically do not plead that these acts constitute fraud, alleging instead that Defendants' request(s) for additional documentation constituted "breaches of fiduciary duties, breaches of contracts, and conversion . . .."  Pet. ¶18.  Thus, in stating their factual allegations against Defendants, Plaintiffs have failed to identify an individual representative of Defendants who engaged in either a fraudulent statement or an omission, the time and location of the statement or omission, and why any statement or omission by any

individual representative of the Defendants was fraudulent. These claims are thus not pleaded with the required specificity to satisfy Federal Rule of Civil Procedure 9(b).

Plaintiffs' claim also fails to meet the requirements of Rule 9(b) because Plaintiffs have lumped all of Defendants together and have not specified which Defendant(s) allegedly engaged in which fraudulent conduct. As stated above, Plaintiffs allege that "Defendants" required "unnecessary and unreasonable" account documentation to effectuate a trustee change, effectively "freezing" the account at issue in order to generate more "float," fee, and commission income. Pet. ¶18. Plaintiffs do not make any particularized claims as to the individual Defendants anywhere in the Petition, as to fraud or otherwise. Thus, Plaintiffs have failed to enlighten each Defendant as to its part in the alleged fraud as required under the *Tuchman* holding, *discussed supra*.

> ii.     **Plaintiffs' Claims For "Fraud In Stock Transactions" Fail To State A Claim.**

Plaintiffs' alleged claim against A.G. Edwards, Eaton, Phoenix, and Van Kampen for "fraud in stock transactions" or violation of Section 27.01 of the Texas Business and Commerce Code must be dismissed because it fails fail to state a claim upon which relief may be granted.

To state a viable claim for fraud in real estate and stock transactions under Section 27.01 of the Texas Business and Commerce Code, a plaintiff must allege either, (1) that the defendant made a false representation of a past or existing material fact to the plaintiff with the purpose of inducing that person to enter into a contract *and* relied upon that person in entering into that contract, or (2) the defendant made a false promise to do an act, and the false promise was (a) material, (b) made with the intention of not fulfilling it, (c) made to the plaintiff for the purpose of inducing that person to enter into a contract, *and* (d) relied on by the plaintiff in entering into that contract. TEX. BUS. & COM. CODE § 27.01 (emphasis added); *Herrmann Holdings Ltd. v.*

*Lucent Technologies, Inc.* 302 F.3d 552, 565 (5th Cir. 2002). In order to adequately plead the fraudulent intent element of Section 27.01, "a plaintiff must set forth specific facts to support an inference of fraud." *Herrmann*, 302 F.3d 552, 565 (5th Cir. 2002) (*citing Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1018 (5th Cir. 1996)). "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Id.*

In a one-sentence allegation, Plaintiffs vaguely state that "[t]he conduct of [A.G.] Edwards, Eaton, Phoenix, [Van] Kampen, and Jim described above violated Section 27.01 of the Tex. Bus. & Com. Code . . ." Pet. ¶32. The facts of Plaintiffs' case do not meet either of the two types of fraud Section 27.01 is designed to protect against.

First, nowhere in the Petition have Plaintiffs alleged (and Plaintiffs cannot allege) that Plaintiffs detrimentally relied on a false representation that was made by Defendants to induce Plaintiffs to enter into a contract. Plaintiffs allege that Defendants required "unnecessary and unreasonable" account documentation to effectuate a trustee change, effectively "freezing" the account at issue in order to generate more "float," fee, and commission income. Pet. ¶18. In other words, Defendants would not liquidate or sell when Plaintiffs allege they should have, using the "unnecessary paperwork" as an excuse. These facts do not involve a false misrepresentation, detrimental reliance, or any contract that Defendants could have induced Plaintiffs to enter into.

Similarly, Plaintiffs have not alleged (and they cannot allege) that they detrimentally relied on a false promise made by Defendants that was material, made with the intention of Defendants not fulfilling it, and made for the purpose of inducing Plaintiffs to enter into a contract. Again, Plaintiffs argue that Defendants have developed unreasonable and unnecessary

requirements to effectuate a trustee change on an account, all for the purpose of keeping the Plaintiffs' and other customers' money longer.  These facts do not allege detrimental reliance on the part of Plaintiffs.  Plaintiffs also do not and cannot allege that Defendants made a promise to Plaintiffs with no intention of fulfilling it, for the sole purpose of getting Plaintiffs to enter into a contract.  This is because no promise is mentioned and no contract is identified.

Finally, Plaintiffs have not identified any circumstances or facts that would suggest that Defendants consciously implemented their documentation requirements for the purpose of defrauding their customers.  Moreover, the mere presence of fees is not sufficient to allow for a proper inference of scienter.  *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) ("Accepting the plaintiffs' allegations of motive—basically that the defendant officers and directors were motivated by incentive compensation—would effectively eliminate the state of mind requirements as to all corporate officers and defendants."); *Tuchman*, 14 F.3d at 1068 ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated.").  The only evidence that Plaintiffs offer in support of their allegation that Defendants engaged in fraud results from Defendants' revenue as a result of its ordinary business fees and commissions.  Pet. ¶¶18, 21, 22.  Thus, Plaintiffs have not adequately pled that Defendants had fraudulent intent.

From the face of the Petition, Plaintiffs have not even attempted to allege the elements of the "fraud in stock transactions" claim.  As such, they have failed to state a claim and this count should also be dismissed.

### 6.    Plaintiffs' Civil Conspiracy Claim Also Fails As A Matter of Law.

A civil conspiracy consists of "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  The elements of a civil conspiracy include: (1) two or

more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *RTLC AG Products, Inc. v. Treatment Equip. Co.* 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.) (*citing Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 272 (Tex. App.—Dallas 2005, no pet.)).

Civil conspiracy claims cannot have as their foundation a breach of contract allegation. *See Grizzle v. Tex. Commerce Bank, N.A.,* 38 S.W.3d 265, 284-85 (Tex. App.—Dallas 2001), *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002) (One party to a contract may not sue another party to the contract for conspiracy to breach that contract); *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 760-61 (Tex. App.—Texarkana 1996), *rev'd on other grounds*, 939 S.W.2d 146 (Tex. 1997). Moreover, civil conspiracy requires specific intent since, for a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the combination or agreement. *Firestone Steel Prods. Co v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). Consequently, there can also be no civil conspiracy to commit negligence. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex. 1995). Therefore, Plaintiffs' conspiracy claim must stem from the intentional torts Plaintiffs allege. Moreover, to overcome a motion to dismiss conspiracy claims, plaintiffs are required to allege more than conclusory allegations of conspiracy, and must show specific facts that would support a meeting of the minds between defendants. *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (dismissing claim based on conclusory allegations of conspiracy); *Hale v. Harney*, 786 F.2d 688,

689 (5th Cir. 1986) (holding conclusory allegations cannot support conspiracy claim); *see also Spurlock v. Johnson*, 94 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.) (conclusory statements suggesting conspiracy are not enough to provide arguable basis in law for claim); *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 463 (Tex. App.—Tyler 1999, pet. denied).

As with its other claims, Plaintiffs have failed to allege any facts that would support a conspiracy claim. Plaintiffs have merely alleged, in vague and conclusory fashion, that "[e]ach of the defendants [have] conspired with the other defendants to accomplish illegal, improper and immoral purposes through illegal, improper and immoral means." Pet. ¶ 27. In addition, Plaintiffs have not pled any damages proximately caused by Defendants' alleged acts. Therefore, Plaintiffs' claim of civil conspiracy is insufficient as a matter of law, and should be dismissed.

### 7.     The Petition Does Not Allege The Requisite Culpability To Recover Punitive Damages.

The claim for punitive damages should be dismissed because the Petition fails to allege facts that would support their recovery. The only claims Plaintiffs allege that could possibly support the imposition of punitive damages are "gross negligence and intentional conduct," conversion and breach of fiduciary duty. Plaintiffs, however, have failed to plead facts that would support punitive damages under any of those theories.

To establish gross negligence, Plaintiffs must plead and prove that Defendants' conduct was extremely risky and that they had actual, subjective awareness of the risk but acted anyway. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 315 (5th Cir. 2002). For conversion, Plaintiffs must allege that Defendants acted with malice. *Green Int'l v. Solis*, 620 S.W.2d 384, 391 (Tex. 1997). For breach of fiduciary duty, Plaintiffs must allege that the alleged breach was intentional. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584

(Tex. 1963); *Brosseau v. Ranzau*, 81 S.W.3d 381, 396 (Tex. App.—Beaumont 2002, pet. denied).

The Petition's vague and conclusory allegations satisfy none of these standards. Therefore, Plaintiffs' claims for exemplary damages must be dismissed.

### D.   SLUSA Preempts Institute's State Law Claims On Behalf Of The Putative Class.

Institute purports to state claims on behalf of four classes of plaintiffs alleging state law causes of action. Because, however, these claims (1) involve a "covered class action"; (2) allege state law claims; (3) involve a "covered security"; and (4) allege that in connection with the purchase or sale of the covered security, untrue statements or omissions were made, or the defendant used deceptive or manipulative devices, they are preempted by The Securities Litigation Uniform Standards Act ("SLUSA") and must be dismissed. *Miller v. Nationwide Life Ins. Co*., 391 F.3d 698, 702 (5th Cir. 2004) (dismissing plaintiff's state law "breach of contract" claims holding the claim was preempted by SLUSA); 15 U.S.C. §§ 77p(b) & 78bb(f)(2); *see Miller v. Waste Mgmt., Inc. (In re Waste Mgmt., Inc.)*, 194 F. Supp. 2d 590, 594 (S.D. Tex. 2002).

### 1.   The Putative Class Claims Constitute A "Covered Class Action".

The putative class at issue qualifies as a "covered class action" under SLUSA, which is defined as:

(i)     any single lawsuit in which —

(I)   damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those person or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II)  one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and

questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77p(f)(2)(A); *see* 15 U.S.C. § 78bb(f)(5)(B). Institute is seeking declaratory and injunctive relief[20] "on behalf of each of the four classes" for which it seeks certification. Pet. ¶ 42. These "four classes" allegedly consist of those customers of Defendants who "have requested within the past four years that [Defendants] change [their] records to reflect a new responsible party or person authorized to act with respect to the account and from whom [Defendants have] requested documentation other than, or in addition to, a sworn, notarized statement of the change." *Id.* at ¶¶ 37-40. Additionally, the Petition alleges that the "four classes" are "so numerous that joinder of all putative class members as individual parties herein would be impractical." *Id.* at ¶ 35. Finally, questions of law or fact common to prospective classes exist given Plaintiffs' allegation that each of the Defendants has requested "documentation other than, or in addition to, a sworn, notarized" document in connection with their accounts. *Id.* at ¶¶ 37-40.

### 2.    The Petition Alleges State Law Claims.

The Petition raises counts for declaratory relief and injunctive relief under Texas state law. Therefore, this action is "based upon the . . . common law of any State." *See* 15 U.S.C. §§ 77p(b) & 78bb(f)(1); *see also Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1082 (N.D. Ga. 2003).

### 3.    The Petition Involves A "Covered Security".

According to SLUSA, a "covered security" is, among other things, a mutual fund maintained by investment companies as defined by the Investment Company Act of 1940. *See*

---

[20] Plaintiff Institute seeks damages in excess of $10 million and a permanent injunction on behalf of Class Members "[r]equiring each Defendant to send a notice to each of its present [and past four year] account holders . . . informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and of the possibility that they may have a claim for damages against the defendant ... and explaining how the class member can bring suit against the Defendant for damages. *See* Pet. ¶¶ 42A and 42B; Ex. D to Pet. at 3.

15 U.S.C. §§ 77r(b), 78bb(f)(5)(E).  Plaintiffs allege that the Trust's assets were invested in mutual funds that Eaton, Phoenix and Van Kampen maintained.  *See* Pet. ¶¶ 21, 23, 24. Therefore, the Petition involves a "covered security."  *See Cordova v. Lehman Bros., Inc.*, 413 F. Supp. 2d 1309, 1316-17 (S.D. Fla. 2006); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 472 (D. N.J. 2005); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000 (C.D. Cal. 2002).

### 4.   Institute Alleges That Defendants Made Misrepresentations And Used Manipulative Or Deceptive Devices Or Contrivances.

Finally, the Petition alleges that Defendants defrauded customers by unreasonably and unnecessarily requiring documentation in connection with changes to the ownership of their accounts.  Pet. ¶¶ 21, 23, 32.  This satisfies SLUSA's requirement for allegations of: "(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b); see 15 U.S.C. § 78bb(f)(1).

Because each of the elements is met for SLUSA preemption, the action must be dismissed.

## CONCLUSION

Plaintiffs' claims have no validity because (1) Plaintiffs have no standing to assert them; (2) each of the causes of action are barred by the applicable statute of limitation; (3) each of the causes of action fails to state a valid claim because each claim is premised upon allegations that are legally insufficient; and (4) the class claims are preempted.  Consequently, Plaintiffs' claims should all be dismissed.

Respectfully submitted,

JENKENS & GILCHRIST,
*A Professional Corporation*
By: _____/s/ Ellen B. Sessions_____
    Ellen B. Sessions
    Texas Bar No. 00796282
    Rodney Acker
    Texas Bar No. 00830700
    Alison McCormack
    Texas Bar No. 24032717
1445 Ross Avenue, Suite 3700
Dallas, TX  75202
Telephone:  (214) 855-4500
Telecopy:   (214) 855-4300
ATTORNEYS FOR A.G. EDWARDS & SONS,
INC. and CARLA ULRICHHERRING


KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP
By: _____/s/ Michael D. Napoli_____
    Michael D. Napoli
    Texas Bar No. 14803400
2828 North Harwood Street, Suite 1800
Dallas, TX  75201-2139
Telephone:    (214) 939-4900
Telecopy:     (214) 939-4949
ATTORNEYS FOR EATON VANCE GROUP OF
FUNDS


THOMPSON & KNIGHT LLP
By: _____/s/ Greg W. Curry_____
    Greg W. Curry
    Texas Bar No. 05270300
    Katharine B. Richter
    Texas Bar No. 24046712
1700 Pacific Avenue, Suite 3300
Dallas, TX  75201
Telephone:    (214) 969-1251
Telecopy:     (214) 880-3228
ATTORNEYS FOR PHOENIX INVESTMENT
PARTNERS, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically upon its filing, in accordance with the Federal Rules of Civil Procedure and Rule 9 of this Court's Miscellaneous Order No. 61 on this 21st day of August, 2006 to the counsel denoted on the below Electronic Mail Notice List and I certify that I have mailed the foregoing document via United State Postal Service to the non-CM/ECF participants on the list below.

**Non-CM/ECF Participants**:

Robert J. Fuller
8587 Southwestern Blvd. #2429
Dallas, TX  75206

**Electronic Mail Notice List:**

Michael D. Napoli
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
2828 North Harwood Street, Suite 1800
Dallas, TX  75201-2139

Greg W. Curry
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX  75201

Mike Stenglein
DEWEY BALLANTINE LLP
401 Congress Avenue, Suite 3200
Austin, Texas  78701-3788

Brian W. Clark
KANE RUSSELL COLEMAN & LOGAN PC
1601 Elm Street, Suite 3700
Dallas, TX  75201

                                              /s/ Ellen B. Sessions