IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE DOGWOOD INSTITUTE, TRUSTEE OF THE DOGWOOD TRUST, individually and on behalf of classes similarly situated, and ROBERT J. FULLER, | § § § § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. 3-06CV1454-K ECF |
| A.G. EDWARDS & SONS, INC., EATON VANCE GROUP OF FUNDS, PHOENIX INVESTMENT PARTNERS, LTD., VAN KAMPEN INVESTOR SERVICES, INC., CARLA ULRICHHERRING, DENNIS CAPRIGLIONE, JAMES WOODROW FULLER, JR., individually and as Trustee of the Red River Trust, and MELISSA FULLER, | § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS A.G. EDWARDS & SONS, INC.'S, EATON VANCE GROUP OF FUNDS', AND PHOENIX INVESTMENT PARTNERS, LTD.'S, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ........................................................................................................1

STATEMENT OF Alleged FACTS............................................................................1

ARGUMENT AND AUTHORITIES...........................................................................4

    I.   Applicable legal standard.................................................................................4

    II.  Plaintiffs' Causes of Action Fail to State a Valid Claim ...............................5

        A.  Plaintiffs Lack Standing.............................................................................5

            1.  Plaintiff Fuller Has Suffered No Injury And Cannot Act As Trustee..........6

            2.  The Dogwood Institute Cannot Act As Trustee............................................6

        B.  Limitations Bars Each Of Plaintiffs' Causes Of Action ...................................7

        C.  Defendants' Alleged Demands For Documentation Were Reasonable As A Matter Of Law.............................................................................................8

            1.  Requiring A Signed Copy Of The Resignation Was Reasonable...............9

            2.  Requesting a Medallion Signature Guarantee Was Reasonable. ................9

            3.  Plaintiffs Are Attempting To Engage In Regulatory Rulemaking............11

        D.  Plaintiffs Have Failed to State Any Viable Claims .........................................12

            1.  Negligence, Gross Negligence, and Breach of Fiduciary Duty.................12

                a.  Plaintiffs Have Failed To Allege That Defendants Breached Any Duty They Owed To Plaintiffs.............................................................12

                b.  Plaintiffs Have Failed To Allege Facts To Support A Causal Link To Any Damages They Allegedly Suffered........................................14

            2.  Conversion ................................................................................................15

            3.  Breach Of Contract. ..................................................................................16

            4.  Civil Conspiracy. ......................................................................................17

5.   Declaratory and Injunctive Relief, and Punitive Damages ........................19

E.   SLUSA Preempts Institute's State Law Claims On Behalf Of The Putative Class...................................................................................................................19

1.   The Putative Class Claims Constitute A "Covered Class Action". ...........20

a.   More Than Fifty Class Members Exist ...............................................20

b.   The Complaint attempts to selectively omit damages ........................21

c.   Common questions of law or fact predominate ..................................22

2.   The Complaint Alleges State Law Claims...................................................23

3.   The Complaint Involves A "Covered Security". ........................................23

4.   Defendants Allegedly Made Misrepresentations And Used Manipulative Or Deceptive Devices Or Contrivances..............................23

CONCLUSION ......................................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Clark v. Amoco Prod. Co.*,
   794 F.2d 967 (5th Cir. 1986) .........................................................................................7

*Collin County, Texas v. Homeowners Assoc. for Values Essential to Neighborhoods*,
   915 F.2d 167, 170 (5th Cir. 1990)) .............................................................................19

*Conley v. Gibson*,
   355 U.S. 41 (1957)........................................................................................................4

*Cordova v. Lehman Bros., Inc.*,
   413 F. Supp. 2d 1309 (S.D. Fla. 2006) ......................................................................23

*De Kwiatkowski v. Bear Stearns & Co.*,
   306 F.3d 1293 (2d Cir. 2002).....................................................................................23

*In re Enron Corp. Sec. Litig.*,
   No. MDL-1446, 2003 U.S. Dist. LEXIS 25038 (S.D. Tex. Dec. 11, 2003).....................13

*Florida Dept. of Ins. v. Chase Bank of Texas*,
   274 F.3d 924 (5th Cir. 2001) .......................................................................................5

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D. N.J. 2005) ...........................................................................23

*Gibson v. Group Holdings, Inc.*,
   No. 00-CV-0372, 2000 WL 777818 (S.D. Cal. June 14, 2000).....................................21

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) .....................................................................................12

*Greaves v. McAuley*,
   264 F. Supp. 2d 1078 (N.D. Ga. 2003) ......................................................................23

*Hale v. Harney*,
   786 F.2d 688 (5th Cir. 1986) .....................................................................................17

*Horne v. Time Warner Operations, Inc.*,
   119 F. Supp. 2d 624 (S.D. Miss. 1999), *aff'd*, 228 F.3d 408 (5th Cir. 2000)..............19

*Hosein v. Gonzales*,
   452 F.3d 401 (5th Cir. 2006) .......................................................................................5

*Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Texas,*
   20 F.3d 1362 (5th Cir. 1994) ........................................................................7

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ........................................................23

*Lanier v. Sallas,*
   777 F.2d 321 (5th Cir. 1985) ......................................................................19

*Lovelace v. Software Spectrum, Inc.,*
   78 F.3d 1015 (5th Cir. 1996) ........................................................................4

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)......................................................................................5

*Martinez Tapia v. Chase Manhattan Bank,*
   149 F.3d 404 (5th Cir. 1998) ......................................................................13

*Meritage Corp. v. Clarendon Nat'l Ins. Co., No. Civ. A. 3:03-CV-1439,*
   2004 WL 2254215 (N.D. Tex. Oct. 6, 2004)..............................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
   126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)....................................................24

*Miller v. Nationwide Life Ins. Co.,*
   391 F.3d 698 (5th Cir. 2004) ......................................................................20

*Ozee v. Am. Council on Gift Annuities,*
   888 F. Supp. 1318 (N.D. Tex. 1995) .............................................................7

*Powers v. Am. Express Fin. Advisors, Inc.,*
   82 F. Supp. 2d 448 (D. Md.), *aff'd*, 238 F.3d 414 (4th Cir. 2000) ..................10

*Rolf v. City of San Antonio,*
   77 F.3d 823 (5th Cir. 1996) ..........................................................................4

*Southland Sec. Corp. v. Inspire Ins. Solutions,*
   365 F.3d 353 (5th Cir. 2004) ....................................................................4, 5

*Tex. Carpenters Health Benefit Fund v. Phillip Morris, Inc.,*
   21 F. Supp. 2d 664 (E.D. Tex. 1998)..........................................................17

*White v. ARCO/Polymers, Inc.,*
   720 F.2d 1391 (5th Cir. 1983) ......................................................................2

*Wilson v. Budney,*
    976 F.2d 957 (5th Cir. 1992) ...........................................................................17

## FEDERAL STATUTES

15 U.S.C. §§ 77p(b) ...................................................................................................20, 23

15 U.S.C. § 77p(f)(2) .......................................................................................................20

15 U.S.C. § 77r(b) ......................................................................................................20, 23

15 U.S.C. 78a, *et. seq* ....................................................................................................11

15 U.S.C. § 78bb(f)(2)..............................................................................................20

15 U.S.C. § 78bb(f)(5)(b) ................................................................................................20

15 U.S.C. § 78bb(f)(5)(e)..........................................................................................23

17 C.F.R. § 201.192 (2004) .............................................................................................1

17 C.F.R. § 240.17Ad-15 (2004) .....................................................................................9

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)...................................................1,4

## STATE CASES

*Anderson v. Cocheu,*
    176 S.W.3d 685 (Tex. App.—Dallas 2005, no pet.)...................................................8

*Blanche v. First Nationwide Mortgage Co.,*
    74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.).................................................15

*D. Houston, Inc. v. Love,*
    92 S.W.3d 450 (Tex. 2002)......................................................................................14

*Dearing, Inc. v. Spiller,*
    824 S.W.2d 728 (Tex. App.—Fort Worth 1992, writ denied).................................12

*Denson v. T.D.C.J.-I.D.,*
    63 S.W.3d 454 (Tex. App.—Tyler 1999, pet. denied).............................................17

*Ebner v. First State Bank of Smithville,*
    27 S.W.3d 287 (Tex. App.—Austin 2000, pet. denied)...........................................16

*Excel Corp. v. Apodaca,*
    81 S.W.3d 817 (Tex. 2002)........................................................................14

*Frost Nat'l Bank v. Burge,*
    29 S.W.3d 580 (Tex. App.—Houston [14th Dist.] 2000, no pet.)....................16

*General Motors Corp. v. Bloyed,*
    916 S.W.2d 949 (Tex. 1996).......................................................................15

*Graff v. Beard,*
    858 S.W.2d 918 (Tex. 1993).......................................................................12

*Greater Houston Transp. Co. v. Phillips,*
    801 S.W.2d 523 (Tex. 1991).......................................................................12

*Green Int'l v. Solis,*
    951 S.W.2d 384 (Tex. 1997).......................................................................15

*Grinnell v. Munson,*
    137 S.W.3d 706 (Tex. App.—San Antonio 2004, no pet.)...............................6

*Hand v. Dean Witter Reynolds, Inc.,*
    889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied)..........13

*Hawthorne v. Guenther,*
    917 S.W.2d 924 (Tex. App.—Beaumont 1996, writ denied) ...........................12

*Interfirst Bank-Houston v. Quintana Petroleum Corp.,*
    699 S.W.2d 864 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)........6

*Massey v. Armco Steel Co.,*
    652 S.W.2d 932 (Tex. 1983).......................................................................17

*Mellon Serv. Co. v. Touche Ross & Co.,*
    17 S.W.3d 432 (Tex. App.—Houston [1st Dist.] 1990, no writ).......................8

*Meyer v. Cathey,*
    167 S.W.3d 327 (Tex. 2005).......................................................................12

*Ogle v. Craig,*
    464 S.W.2d 95 (Tex. 1971).........................................................................16

*Ojeda v. Wal-Mart Stores,*
    956 S.W.2d 704 (Tex. App.—San Antonio 1997, pet. denied) .......................15

*Port Arthur Trust Co. v. Muldrow,*
  291 S.W.2d 312 (Tex. 1956)........................................................................7

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd,*
  896 S.W.2d 156 (Tex. 1995)......................................................................14

*RTLC AG Products, Inc. v. Treatment Equip. Co.,*
  195 S.W.3d 824 (Tex. App.—Dallas 2006, no pet.).................................17

*Schlumberger Tech. Corp. v. Swanson,*
  959 S.W.2d 171 (Tex. 1997)................................................................12, 13

*Spurlock v. Johnson,*
  94 S.W.3d 655 (Tex. App.—San Antonio 2002, no pet.)..........................17

*Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.,*
  65 S.W.3d 281 (Tex. App.—Dallas 2001, pet. denied)............................16

*Tilton v. Marshall,*
  925 S.W.2d 672 (Tex. 1996)......................................................................17

*Trans-Gulf Corp. v. Performance Aircraft Serv., Inc.,*
  82 S.W.3d 691 (Tex. App.—Eastland 2002, no pet.)................................15

*Tri v. J.T.T.,*
  162 S.W.3d 552 (Tex. 2005)......................................................................17

*Twin City Fire Ins. Co. v. Davis,*
  904 S.W.2d 663 (Tex. 1995)......................................................................19

*United Mobile Networks v. Deaton,*
  939 S.W.3d 146 (Tex. 1997)......................................................................15

*Zapata v. Torres,*
  464 S.W.2d 926 (Tex. Civ. App.—Dallas 1971, no writ)...........................6

## TEXAS STATUTES

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986)........................................8

TEX. PROP. CODE ANN. § 112.008(a) (Vernon 1984) ................................................6,7

TEX. PROP. CODE ANN. § 112.009(c) (Vernon 1984) ...................................................7

TEX. BUS. & COMM. CODE § 8.507(a) (Vernon 1987)................................................19

TEX. BUS. & COMM. CODE ANN. § 8.306 (Vernon 1987) .........................................................9, 10

TEX. BUS. ORG. CODE ANN. § 2.106(a) (Vernon 2006)……………………………………………..7

## MISCELLANEOUS

RESTATEMENT (SECOND) OF TRUSTS §§ 281-82……………………………………………………..6

G. Bogert, *The Law of Trusts and Trustees* § 869 (Rev. 2d Ed. 1982).........................................6

National Association of Securities Dealers Rule 11870 ...............................................................10

NYSE Regulation, Moving Financial Assets,
        What Every Customer Should Know (2006)……………………………………………10

Defendants A.G. Edwards & Sons, Inc. ("A.G. Edwards"), Eaton Vance Group of Funds ("Eaton"), and Phoenix Investment Partners Ltd. ("Phoenix"), collectively referred to herein as "Defendants," hereby move to dismiss Plaintiffs' First Amended Complaint (the "Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:[1]

## INTRODUCTION

This dispute concerns assets the Dogwood Trust (the "Trust") owns and holds in an account at A.G. Edwards. These assets are—or in some cases, were—invested in several mutual funds that Eaton, Phoenix and Van Kampen Investor Services, Inc. ("Van Kampen") manage. Although Plaintiffs make the conclusory allegation that Defendants have unreasonably and unnecessarily requested documentation in connection with the alleged resignation and subsequent appointment of trustees for the Trust, the pleaded facts and the undisputed documents establish that Defendants acted appropriately.

Plaintiffs' claims have no validity because (1) Plaintiffs have no standing to assert them; (2) each of the causes of action are barred by the applicable statute of limitations; (3) each of the causes of action fails to state a valid claim because each is premised upon allegations that are legally and factually insufficient; and (4) the class claims are preempted. Consequently, all Plaintiffs' claims should be dismissed.

## STATEMENT OF ALLEGED FACTS

Robert J. Fuller ("Plaintiff Fuller"), a licensed Texas attorney, brought this case on behalf of himself and the Dogwood Institute ("Institute"), the Trust's alleged trustee. Plaintiff Fuller created the Trust in 1997 as an "absolute[] and irrevocable[]" trust for the benefit of several of

---

[1] Defendants make this Motion subject to, and without waiver of, their rights to compel Plaintiffs' claims to arbitration.

**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**    **Page 1**

his family members.  Compl. ¶¶2, 25; Pet. Ex. A.[2]  The Trust designated Michael Ginsberg as the Trustee but granted Plaintiff Fuller's brother (and named-defendant in this lawsuit) James Fuller ("Jim") the "power to remove the Trustee and to designate a successor Trustee (other than the Grantor [Plaintiff Fuller])."  Compl. ¶2; Pet. Ex. A ¶2.1.  The Trust also vested in "any Trustee serving" the "power to resign, and . . . designate successor Trustee (other than the Grantor [Plaintiff Fuller])."  *Id.*  The Trust was funded and it opened a non-discretionary account at A.G. Edwards in September of 1998 into which it deposited cash to invest in securities.  Defendant Carla Ulrichherring ("Ms. Ulrichherring"), an A.G. Edwards employee, was the broker of record on the Trust's account.[3]

On or about October 21, 1998, Jim replaced Mr. Ginsberg as the Trust's trustee. Compl. ¶26.  In the summer of 1999, Jim and Plaintiff Fuller allegedly had a dispute about Jim's handling of the Trust's assets.  Compl. ¶¶14-15.  That dispute was allegedly resolved, in part, by Jim's signing a document in which he purportedly resigned as Trustee of the Trust and irrevocably assigned to Plaintiff Fuller all of his rights and powers under the Trust, including the power to appoint a new Trustee (the "Resignation").  Compl. ¶15; App.[4] at 16.  On June 25 2001, Plaintiff Fuller contends he accepted Jim's resignation and appointed Lileth Company—a Texas corporation owned by the Trust and of which Plaintiff Fuller was the president, sole officer, and director—as successor trustee.  Compl. ¶ 16, 22; App. at 17, 20.

---

[2] Plaintiffs removed from the Complaint all of the exhibits it had attached to Plaintiffs' Original Petition (the "Petition"), and only incorporated by reference Exhibit A (the Trust agreement) and Exhibit E (letter from Dennis Capriglione to Jan Kamei) to the Petition.  *See* Compl. ¶¶2, 32.  The exhibits Plaintiffs attached to the Petition are considered admitted by Plaintiffs for evidentiary purposes.  *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).  Thus, Plaintiffs cannot escape the effects of previously-pleaded (and admitted) evidence that they now have determined not to be helpful to their case.

[3] Defendant Carla Ulrichherring has filed her own Motion to Dismiss the Complaint.

[4] "App." refers to the Appendix In Support of Defendants A.G. Edwards & Sons, Inc.'s, Eaton Vance Group of Funds', and Phoenix Investment Partners, Ltd.'s, Motion to Dismiss Plaintiffs' First Amended Complaint.

In August of 2001, Plaintiff Fuller faxed a copy of the Resignation to Ms. Ulrichherring and asked her to change A.G. Edwards's records to reflect Lileth Company as the new trustee. *Id.* The copy of the Resignation that Ms. Ulrichherring received from Plaintiff Fuller, however, did not contain Jim's signature. App. at 1-6, which is a true and correct copy of the Resignation. Instead, it was signed by Plaintiff Fuller, who claimed to have the original Jim executed. App. at 6. Consequently, Ms. Ulrichherring declined to change A.G. Edwards's records without an originally signed copy of the Resignation. Compl. ¶16-17; App. at 17. Plaintiff Fuller promised to provide the original, executed Resignation but never did. Compl. ¶17-18; App. at 17.

In fact, Plaintiff Fuller did not have an original, executed Resignation. In a letter written later to Ms. Ulrichherring, Plaintiff Fuller admitted:

> I thought at the time that Jim had also mailed an original of [the Resignation] to me and told you that I would look for it. In the meantime, the Trust's remaining assets were in your hands and I saw no urgency to supplying the original document.

App. at 17. He "never found the original document," which contained Jim's signature. *Id.* Nor did he bother to ask his brother Jim for the original executed Resignation in 2001. *Id.;* Compl. ¶17.

True to his perceived lack of urgency, Plaintiff Fuller waited nearly five years to contact Ms. Ulrichherring about the Trust or to request the original, executed Resignation from Jim. Compl. ¶21; App. at 17, 20. In April of 2006, Plaintiff Fuller wrote to Ms. Ulrichherring again demanding that A.G. Edwards recognize Jim's resignation and the appointment of Lileth Company as successor trustee. *Id.*; Compl. ¶22. She again declined because she still did not have the original, executed Resignation that Plaintiff Fuller had promised years ago. *Id.*

On June 6, 2006, still without providing documentation of Jim's alleged resignation as Trustee, Plaintiff Fuller purported to once again designate a new trustee. This time he purported

to appoint the named-Plaintiff Institute, allegedly a Texas non-profit corporation, as trustee. Compl. ¶24-9.[5]   Between April and July 2006, Institute made demands on Defendants A.G. Edwards, Eaton, Phoenix and Van Kampen to deliver the Trust's assets.  Plaintiffs alleged that at the time they filed this lawsuit, none of the Defendants had delivered the Trust's assets to Institute.  Compl. ¶24-9.

## ARGUMENT AND AUTHORITIES

The Complaint purports to allege causes of action against Defendants for civil conspiracy, conversion, breach of fiduciary duties, breach of contract, negligence, and "gross negligence and intentional conduct."   In addition, Plaintiffs seek damages, including punitive damages and declaratory and injunctive relief.   Because these claims are all fatally deficient, however, they should be dismissed.

## I.   APPLICABLE LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if it appears that a plaintiff cannot prove a set of facts in support of its claims that would entitle it to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996).  When considering a motion to dismiss, the court may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice.   *Lovelace v. Software Spectrum, Inc.* 78 F.3d 1015, 1017-1018 (5th Cir. 1996).  While the Court must accept as true the well-pleaded factual allegations in the complaint, "conclusory allegations, unwarranted deductions and legal conclusions" will not survive a motion.  *Southland Sec. Corp. v. Inspire Ins.*

---

[5] The Complaint contains two paragraphs numbered as paragraph 24.  In this Motion, the paragraph 24 that starts on page 9 of the Complaint and continues to page 10 is referred to as "24-9," and the paragraph 24 that appears, in its entirety, on page 10 of the Complaint is referred to as "24-10."

*Solutions*, 365 F.3d 353, 361 (5th Cir. 2004).   Further, the Court should not "strain to find inferences favorable to the Plaintiff."  *Id.*

## II.    PLAINTIFFS' CAUSES OF ACTION FAIL TO STATE A VALID CLAIM

### A.    Plaintiffs Lack Standing.

Plaintiffs must have standing to pursue any of their claims.  *Florida Dept. of Ins. v. Chase Bank of Texas*, 274 F.3d 924, 928-29 (5th Cir. 2001).   They must, therefore, allege facts sufficient to establish that they have suffered an "injury in fact" because of Defendants' actions. *Hosein v. Gonzales*, 452 F.3d 401, 403-04 (5th Cir. 2006).   An "injury in fact" requires the "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   Moreover, to have standing, Plaintiffs must actually possess the rights that they claim Defendants invaded.  *Lujan*, 504 U.S. at 563; *Hosein*, 452. F.3d at 404.   Thus, the Court must "carefully examine whose injury is at issue and to whom the recovery will go."  *Florida Dept. of Ins.*, 274 F.3d at 929.  If the plaintiff is not the party who sustained the injury for which a remedy is provided, then he or she lacks standing.  *Id.*

Here, the only party who has allegedly suffered an injury is the Trust.  The Trust, not Plaintiff Fuller or Institute, owns the account at issue.  Compl. ¶2 ("Defendants [A.G.] Edwards, Eaton, Phoenix and [Van] Kampen hold and have held for several years the assets of the Trust in a fiduciary capacity with respect to the Trust.").   Plaintiffs' claims arise solely out of the relationship between the Trust and Defendants.

Even if Plaintiffs' claims were valid, which they are not, it is the Trust whose interests were allegedly damaged.  And the Trust's valid trustee is the only individual who may assert any such claims:

> The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct.

G. BOGERT, *The Law of Trusts and Trustees* § 869 (Rev. 2d Ed. 1982) ("BOGERT"). Consequently, only the valid trustee has standing to assert the Trust's claims against third-parties such as Defendants. *Interfirst Bank-Houston v. Quintana Petroleum Corp.*, 699 S.W.2d 864, 874 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (*citing* BOGERT, § 869); RESTATEMENT (SECOND) OF TRUSTS, §§ 281-82.

### 1.    Plaintiff Fuller Has Suffered No Injury And Cannot Act As Trustee.

Plaintiff Fuller is the grantor of the Trust, not its trustee.  Compl. ¶2.  In fact, the Trust agreement specifically prohibits Plaintiff Fuller from serving as the trustee of the Trust.  *See* Compl. ¶2; Pet. Ex. A ¶ 2.1.  Nor does Plaintiff Fuller's claimed status as the alleged assignee of the rights of certain of the beneficiaries of the Trust grant him standing.  Compl. ¶25.  That Plaintiff Fuller has no greater rights than the beneficiaries whose claims he allegedly received is axiomatic.  *See Zapata v. Torres*, 464 S.W.2d 926, 929 (Tex. Civ. App.—Dallas 1971, no writ). Since the beneficiaries themselves lacked standing to assert the Trust's claims, so does Plaintiff Fuller.  *Grinnell v. Munson*, 137 S.W.3d 706, 714 (Tex. App.—San Antonio 2004, no pet.). Therefore, he has no individual claim and no standing, and cannot assert the Trust's claims or rights.

### 2.    The Dogwood Institute Cannot Act As Trustee.[6]

For a corporation to serve as a trustee, it "must have the power to act as a trustee in this state."  TEX. PROP. CODE ANN. § 112.008(a) (Vernon 1984).  A corporation has the power to act

---

[6] Phoenix does not join in the standing argument relating to Institute.

as a trustee only if it is chartered under a statute that permits it to do so, and only to the extent that is permitted by the statute. *Ozee v. Am. Council on Gift Annuities*, 888 F. Supp. 1318, 1327 (N.D. Tex. 1995) (*citing Port Arthur Trust Co. v. Muldrow*, 291 S.W.2d 312, 314 (Tex. 1956)). This is true for both for-profit and non-profit corporations. *Id.*

According to the Complaint, Institute is a Texas non-profit corporation. Compl. ¶ 2. A non-profit corporation is allowed to serve as trustee only if it or another non-profit or charitable organization is the beneficiary of the trust. TEX. BUS. ORG. CODE ANN. § 2.106(a) (Vernon 2006). Here, the beneficiaries of the Trust are individual members of Plaintiff Fuller's family. Compl. ¶25. Neither Institute nor any other non-profit and/or charitable organization is a beneficiary. *Id.* Because Institute lacks the capacity to serve as a trustee, Plaintiff Fuller's attempted appointment of Institute is a nullity, and it has no standing to assert the Trust's alleged claims.[7] TEX. PROP. CODE ANN. § 112.008(a) (Vernon 1984); *Ozee*, 888 F. Supp. at 1325-26.

### B.     Limitations Bars Each Of Plaintiffs' Causes Of Action

Each of Plaintiffs' claims must be dismissed because, on the face of the Complaint, it is barred by the applicable statutes of limitations. When a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) is appropriate. *Kansa Reins. Co., Ltd. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) (*citing Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

All of the causes of action Plaintiffs have asserted center around their allegation that Defendants required "unnecessary and unreasonable" account documentation to effectuate a

---

[7] Where the selected trustee lacks capacity to act as trustee, an alternative trustee named in the trust agreement or selected in accordance with its terms may accept the trust. TEX. PROP. CODE ANN. § 112.009(c) (Vernon 1984). The Trust agreement provides that "[i]n the event of a vacancy in the trusteeship, [Jim] shall be the successor Trustee" and that "[i]n the event of a vacancy in the trusteeship of [Jim], [Plaintiff Fuller's] sister, Virginia Louise Johnson, shall be the successor Trustee." Compl. ¶2; Pet. Ex. A ¶2.1. Thus, either Jim or Ms. Johnson is the current Trustee. If no alternative trustee exists, then a court must appoint a trustee on the petition of an interested person.

trustee change, effectively "freezing" the account at issue to generate more "float," fee, and commission income.   Compl. ¶30.   Defendants allegedly asked for the "unreasonable and unnecessary" documentation between April and July 2001, and Plaintiffs knew about it at that time.   Compl. ¶¶24-9, 24-10.   Yet, Plaintiffs did not sue until July 24, 2006, almost five years later.

Because the alleged wrongdoing occurred almost five years ago, Plaintiffs are barred from bringing claims for negligence, "gross negligence and intentional conduct,"[8] civil conspiracy,[9] and conversion because each of those claims carry a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986).   Similarly, Plaintiffs' claims for breach of contract[10] and breach of fiduciary duty are barred because those claims carry a four-year statute of limitations.   *Id.* at §§ 16.004 and 16.051.

### C.   Defendants' Alleged Demands For Documentation Were Reasonable As A Matter Of Law.

Plaintiffs' fundamental complaint is that Defendants made unreasonable demands for documentation of Jim's resignation as trustee and for the subsequent appointment of Lileth Company, Jan Kamei and Institute as successor trustees.   Compl. ¶24-9.   Plaintiffs allege these unreasonable demands allowed Defendants to "freeze" the account at issue, thereby generating more "float," fee, and commission income for themselves, and allegedly breached the contractual and tort duties Plaintiffs claim that Defendants owed them.   Compl. ¶30.   Because Defendants' requests for documentation were reasonable as a matter of law, however, Plaintiffs' claims must fail.

---

[8] *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 n.1 (Tex. App.—Houston [1st Dist.] 1990, no writ).
[9] *Id.*
[10] *Anderson v. Cocheu*, 176 S.W.3d 685, 689 (Tex. App.—Dallas 2005, no pet.).

### 1.      Requiring A Signed Copy Of The Resignation Was Reasonable.

When Plaintiff Fuller asked A.G. Edwards to change the Trustee on the account from Jim to Lileth Company, the only document that Plaintiff Fuller provided was the Resignation,[11] which did not contain Jim's signature.  App. at 6.  Instead, it contained only Plaintiff Fuller's hand-written statement that the "[e]xecuted original" was in his possession."  App. at 6.  Plaintiffs' suggestion that A.G. Edwards should have changed the name of the trustee on the Trust's account—an action that would have effectively resulted in a change of ownership since the trustee, not the trust, holds title to trust property—on the basis of an unsigned copy of the Resignation strains credulity.  Simply put, A.G. Edwards's request for a copy of the Resignation that Jim had signed was reasonable, and Plaintiffs cannot cite any authority to the contrary.

### 2.      Requesting A Medallion Signature Guarantee Was Reasonable.

Although the Complaint seeks to enjoin Defendants from requiring documentation other than or in excess of a Medallion signature guarantee from the party requesting a change in responsible party (Compl. ¶¶46-49), the Complaint also alleges that Eaton, Phoenix, and Van Kampen unreasonably demanded Medallion Guarantees of unspecified individuals' signatures.  Compl. ¶¶12, 24-9.  Eaton is specifically alleged to have required "a Medallion Signature Guarantee by Jim regarding his 2001 resignation and assignment." *Id.*  As with the request for Jim's signature, Plaintiffs' signature guarantee argument is untenable.

A signature guarantee is a financial institution's or participating broker-dealer's warranty that (a) the signature at issue is genuine, (b) the signer is authorized to sign, and (c) the signer has legal capacity to sign.  *See* 17 C.F.R. § 240.17Ad–15 (2004); TEX. BUS. & COMM. CODE

---

[11] The Resignation is the only document Edwards is specifically alleged to have required.  Compl. ¶¶16, 24-9.

ANN. § 8.306 (Vernon 1987).[12]  Requiring customers to provide a signature guaranty is perfectly

reasonable, as evidenced by the fact that the regulations governing SROs such as the National

Association of Securities Dealers and the New York Stock Exchange specifically contemplate

them.[13]  In fact, in a recent publication, the NYSE specifically cautioned customers that they may

be required to obtain signature guarantees when transferring accounts.

> The firm to which you will be transferring the assets, known as the "receiving
> firm," will supply you with a Transfer Initiation Form. … Some firms will use a
> form requiring your manual signature and may also require a signature guarantee
> (a stamp confirming your identity that is available at most member organizations
> and at many banks).

NYSE Regulation, *Moving Financial Assets, What Every Customer Should Know* (2006), at 1,

*available at* http://www.nyse.com/pdfs/moving_financial_assets.pdf.   Consequently, they are

now a routine part of the securities business.

When presented with instructions like Plaintiffs alleged that they gave Defendants—to

change the trustee for an account and thereby transfer the ownership of the account from one

trustee to another—Defendants are entitled, as a matter of law, to a "reasonable opportunity to

assure [themselves] " that the instruction is "genuine and authorized." TEX. BUS. & COMM.

CODE ANN. § 8.507 (Vernon 1987).  This is especially true in light of cases where brokerage

firms have been held liable for forged signatures even where they obtained a notarized signature.

*See*, *e.g.*, *Powers v. Am. Express Fin. Advisors, Inc.*, 82 F. Supp. 2d 448, 452-53 (D. Md.), *aff'd*,

238 F.3d 414 (4th Cir. 2000) (firm held liable to one joint account holder for balance of account

---

[12] The major signature guarantee programs in the United States are the Securities Transfer Agents
Medallion Program, Stock Exchanges Medallion Program and the New York Stock Exchange Medallion Signature
Program.  U.S. Securities and Exchange Commission, *Signature Guarantees: Preventing the Unauthorized Transfer
of Securities, available at* http://www.sec.gov/answers/sigguar.htm (last visited Sept. 14, 2005).  As the SEC notes,
requiring a signature guarantee protects consumers by making it more difficult to forge signatures.  *Id.*

[13] NASD Rule 11870, which governs the transfer of accounts from one institution to another, is illustrative.
Under Rule 11870, a customer may initiate a transfer by providing his current broker/dealer with a transfer request
in the form specified by the rule.  NASD Rule 11870(b)(1).  The model form provided by the NASD for transfers of
interests in mutual funds specifically includes a signature guarantee.  *See* NASD Rule 11870 at IM11870(c).

liquidated upon the purported instruction of both accountholders where one account holder's signature was forged).   Therefore, Plaintiffs' argument that Defendants made unreasonable requests for Medallion guarantees of Jim's or other individuals' signatures were unreasonable fails as a matter of law.

### 3.        Plaintiffs Are Attempting To Engage In Regulatory Rulemaking.

By asking the Court to mandate what types of documentation Defendants can request, Plaintiffs are inviting the Court to engage impermissibly in regulatory rulemaking.  The proper forum for seeking a change in the types of documentation Defendants can request is before the Securities and Exchange Commission ("SEC").  Congress created the SEC through the Securities Exchange Act of 1934 and empowered it with broad authority over all aspects of the securities industry, including the power to register, regulate, and oversee brokerage firms, transfer agents, and clearing agencies as well as the nation's securities self regulatory organizations (SROs).  *See* 15 U.S.C. 78a, *et. seq.*  The SEC has a specific regulatory process by which interested persons can seek to change the rules applicable to brokerage firms and SROs:

> any person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefore with the Secretary.  Such Petition shall include a statement setting forth the text or the substance of any proposed rule or amendment desired or specifying the rule the repeal of which is desired, and stating the nature of his or her interest and his or her reasons for seeking the issuance, amendment or repeal of the rule.

17 C.F.R. § 201.192 (2004).  This process, rather than the class action litigation mechanism Plaintiffs have chosen, is the means by which rules such as the one Plaintiffs propose are vetted and, if appropriate, adopted.

Furthermore, Plaintiffs have not identified any rule, regulation or law that precludes Defendants from requiring "documentation other than, or in addition to, a statement of the change by the new responsible party or person authorized to act with respect to the account with

a Medallion signature guarantee" when they are asked to change the ownership of, or those who are authorized to give instructions concerning, an account.  For example, financial institutions are often required to obtain a signature from the former responsible party, in addition to a signature guarantee of the "new responsible party," when changing the responsible party on an account.  This requirement is to protect their customers.  Therefore, Plaintiffs' demand that Defendants be so restricted as to require nothing more than a Medallion signature guarantee from the new responsible party is unreasonable as a matter of law.

### D.     Plaintiffs Have Failed to State Any Viable Claims

Plaintiffs allege a variety of legal theories in an attempt to impose liability upon the Defendants.  None of these claims, however, are facially sufficient to state a claim.

### 1.     Negligence, Gross Negligence, and Breach of Fiduciary Duty

### a.     Defendants Did Not Breach Any Duty They Owed To Plaintiffs

The existence of a legally cognizable duty is a prerequisite to all tort liability.  *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993) (*citing Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991)).  Consequently, Plaintiffs' claims for negligence,[14] "gross negligence and intentional conduct,"[15] and breach of fiduciary duty[16] must first establish that

---

[14]Negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314-15 (5th Cir. 2002).

[15] Gross negligence has two requirements: "(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others."  *Great Plains Trust* 313 F. 3d at 315.

[16] To establish a claim for breach of fiduciary duty, the plaintiff must establish: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach proximately caused in injury to the plaintiff or benefit to the defendant.  *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied); *Dearing, Inc. v. Spiller*, 824 S.W.2d 728, 733-34 (Tex. App.—Fort Worth 1992, writ denied).  Further, to prove a fiduciary relationship in a business transaction, the fiduciary relationship must exist before and apart from the agreement that is the basis of the suit.  *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997).

Defendants owed them a duty and that the duty was breached.[17]  Plaintiffs, have failed to allege facts to support any of these claimed duties.

Because the Trust's account was non-discretionary, Defendants' duties were limited. *See*, *e.g.*, *De Kwiatkowski v. Bear Stearns & Co.*, 306 F.3d 1293, 1306 (2d Cir. 2002) (as to a nondiscretionary account, "broker has narrowly defined duties that begin and end with each transaction"); *In re Enron Corp. Sec. Litig.*, No. MDL-1446, 2003 U.S. Dist. LEXIS 25038, at *31-33 (S.D. Tex. Dec. 11, 2003) (noting lack of fiduciary duties owed by stockbroker to nondiscretionary client). Specifically, a broker's only duties with respect to such clients are to execute orders as instructed by the client and to refrain from making unauthorized trades.  *See Martinez Tapia v. Chase Manhattan Bank*, 149 F.3d 404, 412 (5th Cir. 1998); *De Kwiatkowski*, 306 F.3d at 1302; *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 493 n.5 (Tex. App.— Houston [14th Dist.] 1994, writ denied).

In the Complaint, Plaintiffs have merely alleged, in vague and conclusory fashion, that they "have suffered direct and consequential damages as a proximate result of defendants' negligence, gross negligence and intentional conduct," and that Defendants "breached their respective fiduciary duties to the Trust."  Compl. ¶¶37, 41.  Although Plaintiffs allege that Defendants required unnecessary documentation from Plaintiff Fuller, including an originally-signed copy of the Resignation, Plaintiffs have failed to plead any facts specifically delineating the nature of Defendants' alleged duty to them, how that duty rose to a fiduciary one,[18] or how

---

[17] One or more account documents executed at A.G. Edwards by the original trustee, which are binding on all successor trustees, contained choice of law provisions requiring the application of New York law to any dispute arising under the terms of those agreements.  Although A.G. Edwards has cited Texas law for purposes of this Motion, it does not waive their right to assert the argument that New York law governs all of Plaintiffs' claims pursuant to those agreements.

[18] For instance, there is no allegation that there was any fiduciary relationship between any of the Defendants prior to their relationship with the Trust, which is a prerequisite for turning what would otherwise be an arms-length relationship into a fiduciary one. *See Schlumberger*, 959 S.W.2d at 176.; *Meritage Corp. v. Clarendon Nat'l Ins. Co.*, No. Civ. A. 3:03-CV-1439, 2004 WL 2254215, at *7 (N.D. Tex. Oct. 6, 2004) (Plaintiff's breach of

Defendants allegedly breached any such duties.[19]   In addition, Plaintiffs have not pleaded any allegations of "conscious indifference" that would support their allegation that Defendants were "grossly negligent."

### b.      There Is No Causal Link To Any Damages Plaintiffs Allegedly Suffered

Plaintiffs also have failed to allege that Defendants' breaches of duty proximately caused them any damages.   Proximate cause requires both cause-in-fact and foreseeability.   *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).   Foreseeability exists when "the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others." *Id.*   To show cause-in-fact (which is also described by the courts as "'but for cause'" or "'substantial factor' causation"), a plaintiff must prove that an act or omission was a substantial factor in bringing about an injury that would not have occurred without the act or omission. *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd*, 896 S.W.2d 156, 161 (Tex. 1995).

The Complaint repeatedly recites the conclusory statement that "Plaintiffs have suffered direct and consequential damages."   Compl. ¶¶ 35-40.   However, nowhere in the Complaint do Plaintiffs provide any indication of what these damages are, how they were incurred, or which of Defendants' alleged acts gave rise to the damages.   The only harm Plaintiffs identify is that Defendants' additional documentation request deprived the Trust (and putative class members) of access to its funds and the possibility of lost investment value, both of which are insufficient. Compl. ¶30.

---

fiduciary duty claim dismissed because the facts alleged by the plaintiff were "not sufficient to transform [an] arms-length dealing into a fiduciary relationship to support a breach of fiduciary duty claim" because there was no relationship that existed "prior to and apart from the agreement on which the suit [was] based.").

[19] At the same time, Plaintiffs admit that Plaintiff Fuller did not want to approach Jim for the documents Defendants requested because the two men were not on good terms. Compl. ¶¶17, 19.   Thus, the only failure to act was Plaintiff Fuller's; he admittedly chose to make no effort to provide the original document.

This is especially true with regard to Plaintiffs' negligence claim since, to the extent they have even properly pleaded any damages at all (which Defendants deny), they have pleaded only damages for economic loss. Under Texas law, the economic loss doctrine bars negligence claims where the only alleged injury is economic loss. *Trans-Gulf Corp. v. Performance Aircraft Serv., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.); *Blanche v. First Nationwide Mortgage Co.*, 74 S.W.3d 444, 452-53 (Tex. App.—Dallas 2002, no pet.). Diminution in market value is an "economic loss." *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949 (Tex. 1996) (describing diminished market value as economic damages). Thus, to maintain a cause of action for negligence, a plaintiff must plead and prove either a personal injury or property damage. As explained above, however, the Complaint alleges neither. Because Plaintiffs have failed to establish the existence of a duty and proximate cause, their negligence claim should be dismissed.

### 2. Conversion

To state a claim for conversion, the plaintiff must establish that (1) the plaintiff owned, possessed, or had the right to immediate possession of the property; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. *Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997); *United Mobile Networks v. Deaton*, 939 S.W.3d 146, 148 (Tex. 1997); *Ojeda v. Wal-Mart Stores*, 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied). To establish malicious conversion (the requisite for recovery of exemplary damages), a plaintiff must show more than bad faith and wrongful conduct; the plaintiff must show the wrongful act was of a "wanton and malicious nature." *Green*, 951 S.W.2d at 391; *Ogle v. Craig*, 464 S.W.2d 95, 97 (Tex. 1971).

Plaintiffs' allegations do not support a conversion claim as a matter of law.   As demonstrated above, neither of the Plaintiffs owned, possessed, or had the right of immediate possession of the assets in the Trust's account because those assets belong to the Trust, and neither of the Plaintiffs are the proper parties to bring the Trust's claims.   In addition, Defendants' requests for documentation under these circumstances were reasonable as a matter of law.   Consequently, Defendants did not wrongfully exercise dominion or control over the assets in the Account.

### 3.   Breach Of Contract.

Likewise, Plaintiffs' claim for breach of contract must fail because Plaintiffs have not properly pled the existence of any contractual provision that Defendants allegedly breached.  To establish a breach of contract claim, a plaintiff must plead (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach.  *Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.*, 65 S.W.3d 281, 285 (Tex. App.—Dallas 2001, pet. denied); *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Fundamental is the concept that to prevail on a breach-of-contract claim the plaintiff must establish that a contract existed that the defendant breached.  *Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 304 (Tex. App.—Austin 2000, pet. denied).

Here, Plaintiffs have merely alleged, in vague and conclusory fashion, that Defendants "have breached their respective contractual duties to the Trust, which has suffered direct and consequently damages as a result of those breaches." Compl. ¶40.  Nowhere in the Complaint, do Plaintiffs identify the source of these alleged "contractual duties," how the alleged breaches occurred, or what damages resulted from these alleged breaches.   As a result, Plaintiffs' conclusory allegations, unsupported by any factual assertions, should be dismissed.

4.      **Civil Conspiracy.**

A civil conspiracy consists of "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  The elements of a civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

Civil conspiracy is a derivative tort and a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.  *Tex. Carpenters Health Benefit Fund v. Phillip Morris, Inc.*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998); *RTLC AG Products, Inc. v. Treatment Equip. Co.* 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.) (*citing Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).  To overcome a motion to dismiss conspiracy claims, plaintiffs are required to allege more than conclusory allegations of conspiracy, and must show specific facts that would support a meeting of the minds between defendants.  *See Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (dismissing claim based on conclusory allegations of conspiracy); *Hale v. Harney*, 786 F.2d 688, 689 (5th Cir. 1986) (holding conclusory allegations cannot support conspiracy claim); *see also Spurlock v. Johnson*, 94 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.) (conclusory statements suggesting conspiracy are not enough to provide arguable basis in law for claim); *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 463 (Tex. App.—Tyler 1999, pet. denied).

As with their other claims, Plaintiffs have failed to allege any facts that would support a conspiracy claim.  The Complaint asserts in conclusory fashion that "[e]ach of the defendants ... has conspired with the other defendants to accomplish illegal, improper and immoral purposes

through illegal, improper and immoral means." Compl. ¶35. The Complaint fails to allege facts demonstrating any "meeting of the minds;" instead, the Complaint merely states that a "meeting of the minds of the conspirators can be *inferred* from their coordinated actions." *Id.* (emphasis added). Yet, the Complaint fails to contain any facts that would allow such an inference, such as an identification of what coordinated actions Defendants allegedly took or how Defendants supposedly coordinated those actions. At best, the Complaint alleges that Defendants each asked for documentation to validate Plaintiffs' requests to change the Trust's trustee. Such independent decisions are evidence not of a conspiracy but of standard industry custom and practice financial institution follow to protect their clients.

The Complaint also fails to assert any facts to support Plaintiffs' contention that Defendants engaged in overt, unlawful acts other than their conclusory allegation "that they breached or abetted the breach of Jim's fiduciary duties to the Trust and to Bob and prevented the rightful trustees from obtaining possession of the Trust's assets and from effectively managing its investment." *Id.*

Plaintiffs have failed to plead any facts specifically delineating the nature of Jim's alleged duty to them, or how Jim allegedly breached any such duties, nor have Plaintiffs explained how Defendants allegedly "abetted" Jim in breaching such duties. Compl. ¶¶20-21. In fact, the only act Plaintiffs allege any of the Defendants took with Jim—at a time when Plaintiffs admit Jim was the Trust's trustee—was Ms. Ulrichherring's alleged participation in Jim's transfer of the Trust's assets from A.G. Edwards to another brokerage firm. Compl. ¶¶14. Nowhere in the Complaint, however, do Plaintiffs articulate how or why this act was allegedly unlawful. Plaintiffs do not allege that Ms. Ulrichherring or A.G. Edwards transferred the assets without Jim's authorization, nor do they offer any explanation of how Ms. Ulrichherring or A.G.

Edwards could or should have declined Jim's instruction to transfer the assets. *See* TEX. BUS. & COMM. CODE § 8.507(a) (Vernon 1987).[20]

### 5. Declaratory and Injunctive Relief, and Punitive Damages

Plaintiffs' requests for declaratory and injunctive relief and for punitive damages must also be dismissed. Claims for both declaratory and injunctive relief "do not stand alone, but require a viable underlying legal claim." *Horne v. Time Warner Operations, Inc.*, 119 F. Supp. 2d 624, 630 (S.D. Miss. 1999), *aff'd*, 228 F.3d 408 (5th Cir. 2000) (*citing Collin County, Texas v. Homeowners Assoc. for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990)). Similarly, a recovery of punitive damages under Texas law is contingent upon a finding of an independent tort with accompanying actual damages. *Lanier v. Sallas*, 777 F.2d 321 (5th Cir. 1985) (punitive damages); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663 (Tex. 1995). Because Plaintiffs have stated no viable underlying legal claims, their claims for declaratory, injunctive and punitive relief must also be dismissed.

### E. SLUSA Preempts Institute's Putative Class Claims

Institute purports to state claims on behalf of four classes of plaintiffs alleging state law causes of action. These claims, however, (1) involve a "covered class action"; (2) allege state law claims; (3) involve a "covered security"; and (4) allege that in connection with the purchase or sale of the covered security, Defendants made untrue statements or omissions, or used deceptive or manipulative devices. Therefore, the purported class claims are preempted by t he Securities Litigation Uniform Standards Act ("SLUSA") and must be dismissed. 15

---

[20] Section 8.507(a) provides that "[a] securities intermediary shall comply with an entitlement order if the entitlement order is originated by the appropriate person, the securities intermediary has had reasonable opportunity to assure itself that the entitlement order is genuine and authorized, and the securities intermediary has had reasonable opportunity to comply with the entitlement order."

U.S.C. §§ 77p(b) & 78bb(f)(2); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) (SLUSA preempted plaintiff's state law claim resulting in its dismissal).

### 1.    The Putative Class Claims Constitute A "Covered Class Action"

The putative class claims at issue qualify as a "covered class action" under SLUSA. SLUSA defines a "covered class action" as:

(i)    any single lawsuit in which —

(I)   damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those person or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II)  one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77p(f)(2)(A); *see* 15 U.S.C. § 78bb(f)(5)(B).

### a.    More Than Fifty Class Members Exist

Institute is seeking declaratory and injunctive relief[21] "on behalf of each of the four classes" for which it seeks certification.  Compl. ¶43.  These "four classes" allegedly consist of those customers of Defendants who "have requested within the past four years that [Defendants] change [their] records to reflect a new responsible party or person authorized to act with respect to the account and from whom [Defendants have] requested documentation other than, or in addition to, a statement of the change by the new responsible party or person authorized to act with respect to the account with a Medallion signature guarantee."  *Id.* at ¶¶46-49.  Although

---

[21] Plaintiff Institute seeks a permanent injunction on behalf of Class Members "[r]equiring each Defendant to send a notice to each of its present [and past four year] account holders . . . informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and of the possibility that they may have a claim for damages against the defendant . . . and explaining how the class member can bring suit against the Defendant for damages.  *See* Compl. ¶¶51A and 51B.

Defendants do not believe that sufficient numerosity exists to support the certification of any classes, the number of Institute's proposed class members, in the aggregate, exceeds SLUSA's 50 class member requirement. *See* App. at 9 and 14. Additionally, the Complaint alleges that the "four classes" are "so numerous that joinder of all putative class members as individual parties herein would be impractical." Compl. ¶44.

### b.   The Complaint Attempts To Selectively Omit Damages

SLUSA's legislative history makes clear Congress' intent to preclude a party from avoiding SLUSA's application through artful pleading:

> "[W]hile the Committee believes that it has effectively reached those actions that could be used to circumvent reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition."

S.Rep. No. 105-182, at *8 (1998), reprinted in 1998 WL 226714 (Leg. Hist.). Consequently, a plaintiff may not selectively omit damages in order to circumvent SLUSA. *Gibson v. Group Holdings, Inc.*, No. 00-CV-0372, 2000 WL 777818, at *3 (S.D. Cal. June 14, 2000) (holding complaint alleging only injunctive and declaratory relief can constitute a covered class action). By the Complaint, Institute really seeks damages in the guise of an injunction:

> requiring each defendant to send a notice to each of its present account holders . . . informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and of the *possibility that they may have a claim for damages* against the defendant…

Compl. at 23, ¶51A (emphasis added). Similarly, Institute has requested an injunction on behalf of the classes,

> requiring each defendant to send a notice to each member of the class… informing them of the existence and contents of the declaratory judgment rendered in favor of the classes herein and *explaining how the class member can bring suit against the defendant for damages.*

Compl. at 24, ¶51B (emphasis added).  By stating at the outset that the classes do not seek any damages while at the same time asking the court for injunctive relief that includes sending a notice to each class member explaining how they may bring their individual actions for damages, Institute has clearly attempted to circumvent SLUSA.

Even more revealing is that Plaintiffs state that the total exposure in the Action "could exceed $10 million."  App. at 23.  According to Plaintiffs, the value of the Trust's assets was approximately $300,000 "at its zenith in 1999, before Jim's expropriations and mismanagement."  Compl. ¶15.  Assuming that the named Plaintiffs are entitled to damages in the amount of the full value of the Account at its peak, which they are not, the remaining $9.7 million Plaintiffs referenced must be attributable to the putative classes.

**c.      Common Questions Of Law Or Fact Predominate**

Similarly, the Complaint omits any allegations that the predominance of common questions of law or fact exist.  Given the factual allegations in the Petition and Complaint as a whole, however, Plaintiffs' artful omission of a predominance allegation is insufficient to defeat SLUSA's application to Plaintiffs' claims.  Questions of law or fact common to prospective classes exist given Plaintiffs' allegation that each of the Defendants has requested "documentation other than, or in addition to, a Medallion signature guarantee" from the "new responsible party or person" in connection with their accounts.  *Id.* at ¶¶46-49.  Therefore, what is essential to this lawsuit, and what would predominate were it to be adjudicated, is that all of the putative class members were allegedly required to provide unreasonable and unnecessary documentation to effectuate a change to their accounts.  That central allegation is common to every putative plaintiffs' claim, and is sufficient to cause common questions of law or fact to predominate despite Plaintiffs having omitted a specific allegation that predomination exists.

2.      **The Complaint Alleges State Law Claims**

The Complaint raises counts for declaratory relief and injunctive relief under Texas state

law.  Therefore, this action is "based upon the . . . common law of any State."  *See* 15 U.S.C. §§

77p(b) & 78bb(f)(1); *see also Greaves v. McAuley*, 264 F. Supp. 2d 1078, 1082 (N.D. Ga. 2003).

3.      **The Complaint Involves A "Covered Security"**

According to SLUSA, a "covered security" is, among other things, a mutual fund

maintained by investment companies as defined by the Investment Company Act of 1940.  *See*

15 U.S.C. §§ 77r(b), 78bb(f)(5)(E).  Plaintiffs allege that the Trust's assets were invested in

mutual funds that Eaton, Phoenix and Van Kampen maintained.  *See* Pet. ¶¶21, 23, 24.

Therefore, the Complaint involves a "covered security."  *See Cordova v. Lehman Bros., Inc.*, 413

F. Supp. 2d 1309, 1316-17 (S.D. Fla. 2006); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp.

2d 451, 472 (D. N.J. 2005); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.

Supp. 2d 993, 1000 (C.D. Cal. 2002).

4.      **Defendants Allegedly Made Misrepresentations And Used**
        **Manipulative Or Deceptive Devices Or Contrivances.**

Finally, the Complaint alleges that Defendants unreasonably and unnecessarily required

documentation in connection with changes to the ownership or persons authorized to act in

connection with their accounts.  Compl. ¶¶24-9, 30.  As a result, Defendants allegedly refused to

honor their customers' instructions to "liquidate and deliver their assets," resulting in

"consequential damages of varying types and amounts."  Compl. ¶30.  Specifically, the

Complaint alleges that the alleged refusal "arise[s] out of a common core of corporate greed and

subterfuge" and forms part of an "unspoken" scheme to delay the release of clients' money in

order to increase their income from commissions and fees at the expense of the client.  *Id.*

(incorporated by reference into the class allegations).  These allegations fit snugly within

SLUSA's requirement that the allegations involve "a misrepresentation or omission of a material fact" or that Defendants "used or employed any manipulative or deceptive device or contrivance" in connection with the "purchase or sale of a covered security."   15 U.S.C. § 78bb(f)(1).

Furthermore, according to Plaintiffs' allegations, the purported class members' requests to liquidate their assets would necessarily have involved a sale of covered securities.   At the very least, Institute has alleged holding claims on behalf of the putative classes, to which SLUSA also applies.   *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006).

## CONCLUSION

For all of the reasons articulated herein, Plaintiffs' claims should be dismissed.

Respectfully submitted,

JENKENS & GILCHRIST,                    THOMPSON & KNIGHT LLP
*A Professional Corporation*

                                        By: _____
By:    /s/ Jeffrey L. Crouch                 Greg W. Curry
       Jeffrey L. Crouch                     Texas Bar No. 05270300
       Texas Bar No. 00787306                Katharine Richter
                                             Texas Bar No. 24046712
1445 Ross Avenue, Suite 3700
Dallas, TX  75202                       1700 Pacific Avenue, Suite 3300
Telephone:  (214) 855-4500              Dallas, TX  75201
Telecopy:   (214) 855-4300              Telephone:     (214) 969-1251
                                        Telecopy:      (214) 880-3228
ATTORNEYS FOR A.G. EDWARDS &
SONS, INC., DENNIS CAPRIGLIONE, and     ATTORNEYS FOR PHOENIX INVESTMENT
CARLA ULRICHHERRING                     PARTNERS, LTD.

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP

By: _____
      Michael Napoli
      Texas Bar No. 14803400

2828 North Harwood Street, Suite 1800
Dallas, TX  75201-2139
Telephone: (214) 939-4900
Telecopy:  (214) 939-4949

ATTORNEYS FOR EATON VANCE GROUP
OF FUNDS

Respectfully submitted,

JENKENS & GILCHRIST,
*A Professional Corporation*

By: _____/s/_____
    Jeffrey L. Crouch
    Texas Bar No. 00787306

1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 855-4500
Telecopy:   (214) 855-4300

ATTORNEYS FOR A.G. EDWARDS &
SONS, INC., DENNIS CAPRIGLIONE, and
CARLA ULRICHHERRING

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP

By: _____
    Michael Napoli
    Texas Bar No. 14803400

2828 North Harwood Street, Suite 1800
Dallas, TX 75201-2139
Telephone: (214) 939-4900
Telecopy:   (214) 939-4949

ATTORNEYS FOR EATON VANCE GROUP
OF FUNDS

THOMPSON & KNIGHT LLP

By: _____
    Greg W. Curry
    Texas Bar No. 05270300
    Katharine Richter
    Texas Bar No. 24046712

1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Telephone:   (214) 969-1251
Telecopy:     (214) 880-3228

ATTORNEYS FOR PHOENIX INVESTMENT
PARTNERS, LTD.

Respectfully submitted,

JENKENS & GILCHRIST,
*A Professional Corporation*

By: _____/s/_____
      Jeffrey L. Crouch
      Texas Bar No. 00787306

1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 855-4500
Telecopy:  (214) 855-4300

ATTORNEYS FOR A.G. EDWARDS &
SONS, INC., DENNIS CAPRIGLIONE, and
CARLA ULRICHHERRING

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP

By: _____
    Michael Napoli
    Texas Bar No. 14803400

2828 North Harwood Street, Suite 1800
Dallas, TX 75201-2139
Telephone: (214) 939-4900
Telecopy:  (214) 939-4949

ATTORNEYS FOR EATON VANCE GROUP
OF FUNDS

THOMPSON & KNIGHT LLP

By: _____
    Greg W. Curry
    Texas Bar No. 05270300
    Katharine Richter
    Texas Bar No. 24046712

1700 Pacific Avenue, Suite 3300
Dallas, TX 75201
Telephone:    (214) 969-1251
Telecopy:    (214) 880-3228

ATTORNEYS FOR PHOENIX INVESTMENT
PARTNERS, LTD.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically upon its filing, in accordance with the Federal Rules of Civil Procedure and Rule 9 of this Court's Miscellaneous Order No. 61 on this 3rd day of November, 2006 to the counsel denoted on the below Electronic Mail Notice List.

**Electronic Mail Notice List:**

Robert J. Fuller
8587 Southwestern Blvd. #2429
Dallas, TX  75206

Michael D. Napoli
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
2828 North Harwood Street, Suite 1800
Dallas, TX  75201-2139

Greg W. Curry
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX  75201

Mike Stenglein
DEWEY BALLANTINE LLP
401 Congress Avenue, Suite 3200
Austin, Texas  78701-3788

Brian W. Clark
KANE RUSSELL COLEMAN & LOGAN PC
1601 Elm Street, Suite 3700
Dallas, TX  75201

/s/      Jeffrey L. Crouch
Jeffrey L. Crouch